WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300
James N. Lawlor

Proposed Attorneys for Word World, LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re: | Case No: 11-_____( ) |
|---|---|
| WORD WORLD, LLC, | Chapter 11 |
| Debtor and Debtor-in-Possession. | |

APPLICATION OF THE DEBTOR FOR AN ORDER
AUTHORIZING THE EMPLOYMENT AND RETENTION OF BDO
CAPITAL ADVISORS, LLC AS FINANCIAL ADVISOR AND
INVESTMENT BANKER FOR THE DEBTOR AND DEBTOR-IN-
POSSESSION PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a)

Word World, LLC, a New York limited liability company and debtor and debtor-in-possession (the "*Debtor*" or the "*Company*"), hereby submits this Application (the "*Application*") for entry of an order (the "*Order*"), in substantially the form attached hereto as Exhibit "A", authorizing the Debtor to employ and retain BDO Capital Advisors, LLC ("*BDO Capital*") as financial advisor and exclusive investment banker for the Debtor, pursuant to sections 327(a), 328(a) and 1107 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "*Bankruptcy Code*"), and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"). The Debtor seeks to employ and retain BDO Capital pursuant to the terms of the Engagement Letter between BDO Capital and the Debtor, a copy of which is incorporated herein by reference and

attached hereto as Exhibit "B" (the "*Engagement Letter*"). In support of this Application, the Debtor submits the Affidavit of Don Moody in Support of Debtor's Chapter 11 Petition and Request for First Day Relief (the "*First Day Affidavit*"), filed contemporaneously herewith, and the Declaration of Jeffrey R. Manning, attached hereto as Exhibit "C" (the "*Manning Declaration*"), and respectfully states as follows:

## JURISDICTION

1. The Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief sought herein are sections 327(a), 328(a) and 1107 of title 11 of the Bankruptcy Code, and Bankruptcy Rule 2014(a).

## BACKGROUND

3. On February 10, 2011 (the "*Petition Date*"), the Debtor filed with the Clerk of the Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor plans to continue to operate its business and manage its property pursuant to sections 1107(a) and 1108 of the Bankruptcy Code as debtors-in-possession.

4. A detailed description of the Debtor's businesses and facts precipitating the filing of the Debtor's Chapter 11 proceedings is set forth in the First Day Affidavit. Those facts are incorporated herein by reference.

## REQUESTED RELIEF

5. By this Application, the Debtor seeks authority to retain BDO Capital as its financial advisor and exclusive investment banker pursuant to the terms of the Engagement Letter, pursuant to sections 327(a), 328(a) and 1107 of the Bankruptcy Code, and Bankruptcy Rule 2014(a). The Engagement Letter describes (a) the various services that BDO Capital anticipates performing for the Debtor in this Chapter 11 case and (b) the terms and conditions of BDO Capital's engagement, including BDO Capital's

compensation. BDO Capital's provision of services to the Debtor is contingent upon the Court's approval of the terms and conditions of the Engagement Letter. BDO Capital's compensation, except for the initial retainer of $50,000, is subject to Court approval.

6. The Debtor selected BDO Capital as their investment banker because, among other things: (a) the Debtor needs to retain a FINRA licensedinvestment banking firm to assist in the expedited marketing and sale of all of the Debtor's assets, and (b) BDO Capital's extensive experience and reputation in providing financial advisory and investment banking services in complex chapter 11 cases. BDO Capital has extensive experience as an investment banker for debtors and other financially-distressed companies. It therefore has the requisite expertise and credibility to work with the Debtor's management as well as the primary creditor constituencies to evaluate, structure, negotiate and consummate a strategic transaction or other restructuring strategy which has broad support among the Debtor's stakeholders. BDO Capital is well-positioned to reassure prospective acquirers and other potential parties to a strategic transaction, many of whom have very limited experience with chapter 11 cases and transactions involving distressed companies.

## SERVICES TO BE RENDERED

7. As further set forth in the Engagement Letter,[1] the Debtor has requested that BDO Capital serve as financial advisor and exclusive investment banker during this Chapter 11 case to perform a broad range of services (the "*Services*") on behalf of the Debtor. BDO Capital will provide financial services and advice primarily to explore strategic alternatives, including but not limited to arranging: i) an expedited sale of essentially all of the Debtor's assets under section §363 of the U.S. Bankruptcy Code; or

---

[1] All terms set forth herein are subject in their entirety to the Engagement Letter. Except as explicitly stated herein, to the extent anything set forth in this Application conflicts with the Engagement Letter, the Engagement Letter shall control.

ii) a private placement of securities, issued by the Company and any of its subsidiaries or affiliates, in the form of senior debt, mezzanine capital, or any other equity or equity-linked securities. BDO Capital will not perform any financial advisory services that would be duplicative of any other professional retained by the Debtor.

8. The Services include, to the extent requested by the Debtor:[2]
- preparing it for an expedited sale of assets under §363 of the Code;

- assisting the Company in establishing criteria for potential qualified purchasers and bidding procedures;

- preparing certain information to support disclosure for purchasers, and coordinating the distribution of that material;

- identifying, screening and ranking prospective qualified purchasers;

- evaluating proposals received from potential purchasers;

- advising the Company as to strategy and tactics to achieve the highest and best alternatives from a sale;

- organizing and conducting an auction, as directed by procedures approved by the bankruptcy court;

- recommending to the Company "highest or best" alternative for submission to the bankruptcy court;

- testifying in bankruptcy court as may be required to fulfill its other duties under this agreement;

- assisting the Company and its advisors through the closing process; and

- supporting the Company in such matters as the Company shall request from time to time, specifically including negotiating Debtor-In-Possession financing agreement(s) and structuring a plan of reorganization or liquidation.

---

[2] Capitalized terms not defined in this section shall have the meaning set forth in the Engagement Letter.

## BDO CAPITAL'S QUALIFICATIONS

9. In light of the size and complexity of this Chapter 11 case, the Debtor requires the services of seasoned and experienced investment bankers that are intimately familiar with (i) the Debtor's business and operations, and (ii) the Chapter 11 process (and how to sell companies, restructure indebtedness and raise new capital in connection with the Chapter 11 process). Additionally, the Debtor believes that by having a FINRA licensed investment banker provide these services in this Chapter 11 case, other professionals in this case - and the Debtor's officers who might otherwise handle complex financial and financing matters - will be able to focus better on their respective competencies and their core tasks: namely, to efficiently and effectively manage the Debtor's business and operations and to facilitate a successful Chapter 11 process.

10. BDO Capital is a leading financial advisory firm, specializing in providing investment banking and restructuring advisory services to companies throughout many industries. In addition, certain BDO Capital professionals who will be working on this matter have significant experience serving as restructuring advisors to financially troubled companies in chapter 11.

11. BDO Capital has become familiar with the Debtor's business operations, capital structure, financing documents and other material information, and is able to assist the Debtor in its restructuring efforts. The Debtor believes that BDO Capital is well-qualified to provide its services to the Debtor in a cost-effective, efficient and timely manner. BDO Capital has indicated a willingness to act on behalf of the Debtor and subject itself to the jurisdiction and supervision of the Court. Additionally, the Debtor will coordinate with BDO Capital and the other retained professionals in this Chapter 11 case to eliminate unnecessary duplication or overlap of work. The Debtor submits that the employment and retention of BDO Capital is in the best interest of the Debtor, its estate and creditors.

## BDO CAPITAL'S DISINTERESTEDNESS

12. As set forth in more detail in the Manning Declaration and subject to the disclosures made therein, BDO Capital has informed the Debtor that BDO Capital is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b), and that it does not hold or represent an interest adverse to the Debtor's estate.

13. Furthermore, BDO Capital has indicated that to the best of its knowledge, neither BDO Capital, nor any employee thereof, has any connection with the Debtor, their respective attorneys and accountants, parties-in-interest (as reasonably known to BDO Capital), the United States Trustee for the Southern District of New York, or any person employed in the office of the United States Trustee, which would in any way disqualify it from representing the Debtor as its financial advisor and exclusive investment banker.

14. BDO Capital has indicated that if it discovers any information that is contrary to or pertinent to the statements made in the Manning Declaration, BDO Capital will promptly disclose such information to this Court and the creditors of the Debtor.

## PROFESSIONAL COMPENSATION

15. Investment bankers such as BDO Capital do not charge for their services on an hourly basis. Instead, they customarily charge a retainer fee and a fee that is contingent upon the occurrence of a specified type of transaction. The Engagement Letter follows this custom in the investment banking industry, and sets forth the retainer and transaction-based fees that are to be payable to BDO Capital.

16. As set forth more fully in the Engagement Letter, and subject in its entirety to the terms set forth in the Engagement Letter, BDO Capital will be compensated for the Services in the following manner (the "*Fee Structure*")[3]:

---

[3] Capitalized terms not defined in this section shall have the meaning set forth in the Engagement Letter.

(a) Retainer Fee. For services hereunder, the Company will pay BDO Capital a retainer of $50,000.00 (the "**Retainer Fee**"), payable upon execution of the Engagement Letter and earned in full upon payment. In the event that there is no Transaction, the Retainer Fee represents BDO Capital's entire fee for this case.

(b) Transaction Fee. Provided that the Sales Process results in a sale Transaction whereby the gross aggregate consideration received exceeds the sum of the initial Stalking Horse Bid (as defined in the Engagement Letter) plus, as approved by the Bankruptcy Court, any break-up fee (the "Break Up Fee") and expense reimbursement (the "Expense Reimbursement") due to the Stalking Horse, plus $150,000, BDO Capital shall receive a cash fee equal to $100,000, plus five percent (5%) of the gross consideration in excess of the sum of the Stalking Horse Bid plus the Break-Up Fee, the Expense Reimbursement and $150,000 upon entry of the order of the Bankruptcy Court approving such transaction, regardless of whether the purchaser is the Stalking Horse or any other third party, including any insider, creditor of the Debtor or any other party-in-interest in this Case (the "***Transaction Fee***").

17. In addition to any of the foregoing fees for professional services, the Debtor will pay as requested from time to time BDO Capital's direct and reasonable out-of-pocket expenses (including document and presentation material expenses) incurred in carrying out its duties under this engagement. Direct expenses in the aggregate above $5,000, excluding any costs associated with an online data room, must be approved in advance by the Debtor, and all reimbursed expenses are subject to Court review and approval.

18. Although BDO Capital's fee is not based upon time and materials, as a part of the fee application process, as an accommodation to the Court, BDO Capital will collect and submit time according to the Court's procedures in quarter-hour increments.

19. The Debtor believes that the Fee Structure is comparable to those generally charged by investment banking firms of similar stature to BDO Capital and for comparable engagements, both in and out of bankruptcy proceedings. The hours worked, the results achieved and the ultimate benefit to the Debtor of the work performed by BDO

Capital in connection with this engagement may vary and the Debtor has taken this into account in setting the above fees.

20. BDO Capital's restructuring experience, capital markets knowledge and financing skills, some or all of which may be required by the Debtor during the term of BDO Capital's engagement hereunder, were important factors to the Debtor in determining the Fee Structure and the Debtor believes that the ultimate benefit to the Debtor of BDO Capital's services hereunder cannot be measured merely by reference to the number of hours to be expended by BDO Capital's professionals in the performance of such services.

21. The Debtor also acknowledges and agrees that the Fee Structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort has been and will continue to be required of BDO Capital and its professionals, and in light of the fact that such commitment may foreclose other opportunities for BDO Capital and that the actual time and commitment required of BDO Capital and its professionals to perform the Services may vary substantially from week to week or month to month.

22. In light of the foregoing, the Debtor believe that the Fee Structure is market-based and both fair and reasonable under the standards set forth in § 328(a) of the Bankruptcy Code.

## APPROVAL PURSUANT TO SECTION 328(a)

23. The Debtor seeks approval of the Fee Structure under the Engagement Letter pursuant to section 328(a) of the Bankruptcy Code, as incorporated in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules and the rules and orders of the Court. Section 328(a) provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 ... on any reasonable terms and conditions of employment, including a retainer, on an hourly basis, or on a contingency fee basis." 11 U.S.C. § 328(a).

24. The Debtor respectfully submits that the Fee Structure, which is similar to fee arrangements which have been authorized in other Chapter 11 cases, is reasonable in light of industry practice, market rates both in and out of chapter 11 proceedings, BDO Capital's experience in restructurings, and the scope of work to be performed. Similar fixed and contingency fee arrangements have been approved and implemented in many other Chapter 11 cases.

25. BDO Capital intends to apply to the Court for payment of compensation and reimbursement of fees and expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and any of this Court's applicable orders, and pursuant to any additional procedures that may be or have already been established by the Court in this Chapter 11 case.

## PRIOR COMPENSATION

26. BDO Capital did not receive any compensation from the Debtor prior to the Petition Date.

27. In accordance with section 504 of the Bankruptcy Code, BDO Capital has informed the Debtor that there is no agreement or understanding between BDO Capital and any other entity, other than employees of BDO Capital, for the sharing of compensation received or to be received for services rendered in connection with this case.

## INDEMNIFICATION

28. Financial advisors rely heavily on information provided by debtors in making contacts with potential lenders, investors, buyers or other parties to potential transactions. It is customary, for this reason, that financial advisors receive indemnification from the entities for which they work. The Engagement Letter includes an indemnification provision (the "*Indemnity Provision*") that is customary in scope. The terms and conditions of the Engagement Letter, including the Indemnity Provision,

were negotiated by the Debtor and BDO Capital at arm's length and in good faith. BDO Capital is not seeking to be indemnified for losses or liability judicially determined to have arisen as a result of gross negligence or willful misconduct.

29. The Debtor believes the Indemnity Provision is a reasonable term and condition of BDO Capital's engagement. Unlike the market for other professionals that the Debtor may retain, indemnification is a standard market term for investment bankers. BDO Capital and the Debtor believe that the Indemnity Provision is comparable to those generally obtained by investment banking firms of similar stature to BDO Capital and for comparable engagements, both in and out of court. See, e.g., In re Lyondell Chemical Company, Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Feb. 25, 2009); In re Calpine Corp., Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. May 2, 2006); In re United Artists Theatre Company, 315 F.3d 217 (3d Cir. 2003) (holding that indemnification provision in retention application of investment professional which excluded gross negligence and willful misconduct was consistent with professional's fiduciary duty to the estate under the Bankruptcy Code); In re PWS Holding Corp., 228 F.3d 224, 246 (3d Cir. 2000) (holding that release in plan of committee's professionals from liability for acts other than gross negligence or willful misconduct is consistent with the Bankruptcy Code).

## NOTICE, PRIOR APPLICATIONS AND WAIVER OF RELIEF

30. No trustee, examiner or creditors' committee has been appointed in this case. Notice of this Application has been given by email, facsimile and/or hand delivery on the Petition Date to (i) the United States Trustee, (ii) the Debtor's 20 largest unsecured creditors, and (iii) all secured creditors known to the Debtor (collectively, the "*Notice Parties*"). In light of the emergent nature of the relief requested herein, the Debtor submits no other or further notice need be given.

31. The Debtor submits that the Application does not present novel issues of law requiring the citation to any authority other than the authority cited herein and, accordingly, no brief is necessary.

32. No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE the Debtor respectfully request that the Court enter the proposed Order substantially in the form attached hereto as Exhibit A, (i) authorizing the Debtor to employ and retain BDO Capital as financial advisor and exclusive investment banker for the Debtor, and (ii) granting such other and further relief as the Court deems appropriate.

Dated: February 6th, 2011  Respectfully Submitted,
New York, New York

Word World, LLC

By: _____
Name: Don Moody
Title: Chief Executive Officer and Manager

11