IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

In re:

WORD WORLD, LLC,

Debtor.

Case No. 11-10543 (SHL)

Chapter 11

INTERIM ORDER AUTHORIZING DEBTOR-IN-POSSESSION
FINANCING FROM STANDARD GENERAL FUND L.P. AND SCHEDULING FURTHER
<u>HEARING FOR FINAL APPROVAL</u>

Upon the motion (the "**Motion**") of Word World, LLC, as debtor and debtor-in-possession (the "**Debtor**"), for the entry of an Order pursuant to sections 105, 361, 362, 364, 503 and 507 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Bankruptcy Rule 4001-2 authorizing the Debtor to (i) enter into a Secured Super-Priority Debtor in-Possession Loan Agreement, a copy of which is attached as Exhibit B to the Motion (the "**DIP Loan Agreement**"), with Standard General Fund L.P. (the "**DIP Lender**"), for financing in the aggregate amount of up to $1,400,000 (the "**DIP Loan**") and (ii) subject to the Carve Out[1], grant first priority security interests and other liens and superpriority claims to the DIP Lender in all of the Collateral (as defined below) as provided for herein (including a superpriority claim pursuant to section 364(c)(1) of the Bankruptcy Code, and priming and security interests pursuant to sections 364(c)(2) and 364(d) of the Bankruptcy Code), to secure the Debtor's obligations under the DIP Loan Agreement and the Loan Documents; and notice of the Motion having been given to (a) the United States Trustee for this region, and (b) those creditors identified on the List of Creditors Holding 20 Largest Unsecured Claims filed simultaneously with the Debtor's

---

[1] Capitalized terms used but not defined herein are used as defined in the DIP Loan Agreement.

Voluntary Petition; and such notice being good and sufficient notice under the circumstances; and upon consideration of the Motion; and an interim hearing on the Motion having been held on February 15, 2011 (the "**Interim Hearing**"); and upon the entire record made at the Interim Hearing; and good and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7002, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.  On February 10, 2011 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code, which case is presently pending before this Court (the "**Chapter 11 Case**").

D.  This Court has jurisdiction over the Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion is a core proceeding as defined in 28 U.S.C. §157(b)(2). Venue of the Chapter 11 Case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

E.  The Debtor is continuing to manage its assets and affairs as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

F. Contemporaneous with the filing of the Motion, the Debtor has filed or will be filing shortly a motion for authority to sell substantially all of the Debtor's assets pursuant to section 363 of the Bankruptcy Code.

G. The Debtor does not have sufficient available sources of working capital and financing to preserve and maintain its assets pending the contemplated sale of the Debtor's assets. Without the DIP Loan, irreparable harm to the Debtor and its estate would occur. Thus, the financing contemplated in the Motion is essential to the preservation, maintenance, and enhancement of the value of the Debtor's assets and its estate.

H. Given the Debtor's current financial condition, the Debtor is unable to obtain the required funds in the form of unsecured credit or unsecured debt allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, unsecured debt having the priority afforded by section 364(c)(1) or debt secured as described in section 364(c)(2) or 364(c)(3) except as set forth herein.

I. The Debtor is unable to obtain the post-petition financing that it needs on terms more favorable than those provided in the DIP Loan Agreement. Without limiting the foregoing, necessary post-petition financing is not available to the Debtor without the Debtor granting the liens provided under the DIP Loan Agreement and this Interim Order.

J. Based on the record before this Court, it appears that the DIP Loan has been negotiated at arm's length and in good faith between the Debtor and the DIP Lender. Any credit extended and loans made to the Debtor pursuant to the DIP Loan Agreement will be deemed (and are found) to have been extended, issued, or made, as the case may be, in good faith as

required by, and within the meaning of section 364(e) of the Bankruptcy Code. Consequently, the DIP Lender is entitled to the protections of section 364(e) of the Bankruptcy Code.

K. Based on the record before this Court, it appears that the terms of the DIP Loan are fair and reasonable and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and that the liens, security interest, and superpriority claim status granted to the DIP Lender in conjunction with the DIP Loan, are supported by reasonably equivalent value and fair consideration.

L. Based on the record before this Court, the Debtor seeks to borrow funds in the amount of up to $390,000 from the DIP Lender from the date of this Interim Order through the date of a final hearing to be held on March 2, 2011 (the "**Interim Period**").

M. This Court concludes that entry of this Interim Order is in the best interests of the Debtor's estate and creditors because its implementation, among other things, will make available to the Debtor working capital that is necessary to maximize the value of the Debtor's assets.

N. Based on the record before this Court, this Court finds that, under the circumstances of the Interim Hearing and the relief requested in the Motion, sufficient notice has been given pursuant to sections 102(1) and 364(c) of the Bankruptcy Code, and Bankruptcy Rules 2002 and 4001(c).

O. For purposes of this Interim Order, the term "DIP Loan" (as herein defined) shall include the principal of, and all interest, fees, expenses and other charges owing in respect of, such loan, indebtedness, or financial accommodations (including, without limitation, any

contingent obligations, those obligations set forth, referenced, contained in, or evidenced by, among other things, the Loan Documents, any promissory notes, advance agreements, indemnity agreements, lines of credit, mortgage deeds, security agreements, pledge agreements, hypothecation agreements, instruments, and acceptance financing agreements), including any reasonable attorneys', accountants', and financial advisors' fees that are chargeable or reimbursable under the relevant agreements relating to the DIP Loan.

THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT:

1. The Motion is hereby granted on an interim basis in all respects and any objections not heretofore resolved or withdrawn are overruled. The terms and provisions of the DIP Loan Agreement are hereby approved on an interim basis and subject to entry of a Final Order.

2. Pursuant to sections 364(c) and 364(d) of the Bankruptcy Code, the Debtor shall be, and hereby is, authorized to execute and deliver to the DIP Lender the DIP Loan Agreement and any other document of any kind required to be executed and delivered in connection with the DIP Loan Agreement. Upon execution and delivery of the DIP Loan Agreement, the Debtor is authorized and directed to comply with and perform all of the terms and conditions contained in the DIP Loan Agreement and other documents contemplated therein, and the Debtor is authorized and directed to repay any and all amounts owing, with interest and any other charges, to the DIP Lender in accordance with and subject to the terms and conditions set forth in the DIP Loan Agreement and this Interim Order.

3. During the Interim Period, the Debtor is expressly authorized to borrow from the DIP Lender, on the terms and subject to the conditions and limitations set forth in the Loan

Documents, a total of up $390,000. During the Interim Period, the Debtor is authorized to use the proceeds of the DIP Loan for payment of budgeted expenses and to pay to the DIP Lender the commitment fee (per paragraph 1.4(a) of the DIP Loan Agreement) and to reimburse the DIP Lender for its professional fees (per paragraph 8.13 of the DIP Loan Agreement and paragraph 24 of this Interim Order), on the terms and subject to the conditions and limitations set forth in the Loan Documents, up to an aggregate outstanding principal amount not to exceed $390,000 for the expenses set forth in the budget attached to the DIP Loan Agreement as Exhibit A, as it may be amended from time to time with the consent of the DIP Lender (the "Budget"), subject to a cumulative variance of no more than 10% as provided in the DIP Loan Agreement. Notwithstanding anything contained herein, the Debtor shall not (i) borrow funds or use the proceeds of such borrowed funds except as provided for in the then existing Budget and the DIP Loan Agreement or (ii) pay any prepetition debt of greater than $50,000 to any single creditor without the DIP Lender's prior written consent and the approval of the Court.

4. Notwithstanding any other provision of this Interim Order or the DIP Loan Agreement, the DIP Lender shall not have any obligations or commitments to make advances under the DIP Loan pursuant to this Interim Order until the conditions precedent provided for herein and in the Loan Documents have been satisfied.

5. Subject and subordinate only to the Carve Out[2] and the lien of Michael Parness (the "**Factor**") in certain pre-petition accounts receivable in the face amount of approximately $47,000 (to the extent such lien is valid, perfected, enforceable, and unavoidable), as security for

---

[2] The $10,000 in additional professional fees in the Carve Out, which is available upon a Termination Date pursuant to paragraph 2.3(b) of the DIP Loan Agreement, may also be used by a Chapter 7 trustee for burial fees and expenses pursuant to section 726(b) of the Bankruptcy Code.

855684v11  013113.0101

all of the Obligations of the Debtor under the DIP Loan Agreement, the DIP Lender shall be, and hereby is, granted pursuant to sections 364(c)(2) and 364(d) of the Bankruptcy Code first priority perfected liens and security interests (the "**Liens**") in all currently owned or hereafter acquired property and assets of the Debtor of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising and all proceeds, products, rents and profits thereof, including, without limitation all cash, goods, accounts receivable, inventory, cash-in advance deposits, general intangibles, goodwill, investment property (including without limitation, ownership interests in corporations, partnerships, and limited liability companies), deposit accounts, real estate, intellectual property, machinery, leasehold interests, equipment, vehicles, trademarks, copyrights, patents, trade names, licenses, causes of action (including bankruptcy avoidance actions), tax refund claims, commercial tort claims and insurance proceeds, and the proceeds, products, rents, and profits of all of the foregoing (all of the foregoing, the "**Collateral**"); provided, however, that the Debtor's claims and causes of action arising under sections 544, 545, 547, 548, and 549 of the Bankruptcy Code shall be excluded from the Collateral pending the Final Hearing (as defined below).

6. Except as expressly set forth in this Interim Order, the Liens are not, and shall not, be: (a) subject to any lien which is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code; or (b) subordinated to or made *pari passu* with any other lien under section 364 of the Bankruptcy Code or otherwise.

7. EACH OF THE SECURITY INTERESTS AND OTHER LIENS GRANTED BY THE DEBTOR TO THE DIP LENDER AS SET FORTH IN THE DIP LOAN AGREEMENT AND LOAN DOCUMENTS SHALL CONCLUSIVELY BE DEEMED TO BE VALID, PERFECTED, AND ENFORCEABLE, WITHOUT ANY NECESSITY OF THE DIP LENDER

COMPLYING WITH ANY PERFECTION OR OTHER REQUIREMENTS UNDER ANY OTHERWISE APPLICABLE STATE, FEDERAL OR OTHER NON-BANKRUPTCY LAW. To the extent that any non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the security interests and other Liens authorized or created hereby, or otherwise would impose filing or registration requirements with respect thereto, such law is hereby preempted to the maximum extent permitted by the United States Constitution, the Bankruptcy Code, otherwise applicable federal law, and the judicial power of the Bankruptcy Court (provided that the DIP Lender may still take such steps as it may wish to perfect its security interests and other Liens under otherwise applicable non-bankruptcy law without waiving the benefits of this provision of this Interim Order). The Debtor shall be and is hereby authorized and directed to take all actions that the DIP Lender may reasonably request as a matter of non bankruptcy law to perfect and protect the DIP Lender's Liens upon the Collateral and for such Liens to obtain the priority therefor contemplated by the DIP Loan Agreement including, without limitation, executing and delivering such financing statements, providing such notices and assents of third parties, obtaining such governmental approvals and providing such other instruments and documents in recordable form as the DIP Lender may reasonably request. Relief from the automatic stay in section 362(a) of the Bankruptcy Code is hereby granted for any actions taken by the DIP Lender to file financing statements and to take any other steps to perfect the Liens under otherwise applicable non-bankruptcy law and all such financing statements or similar documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

8.  Subject and subordinate only to the Carve Out, pursuant to sections 364(c)(2) and 364(d) of the Bankruptcy Code, (i) the Obligations shall at all times constitute a claim pursuant

to Bankruptcy Code section 364(c)(1) (a "**Super-Priority Claim**") and (ii) the Obligations shall at all times be secured by a first priority perfected Lien upon the Collateral, senior to all existing liens and encumbrances, if any.

9. Except for the Carve Out, (i) no costs or administrative expenses which have been or may be incurred in the Chapter 11 Case, including any claims under sections 105, 326, 328, 330, 331, 503, 506, 507, 546, 1113, or 1114 of the Bankruptcy Code, (ii) to the extent permissible, no costs or administrative expenses incurred in any chapter 7 case after conversion of the Chapter 11 Case pursuant to section 1112 of the Bankruptcy Code (or any other proceeding related thereto), and (iii) no claims of entities other than the DIP Lender, including, without limitation, any other Super-Priority Claims, are or will be prior to or on a parity with the Super-Priority Claim arising out of the DIP Loan, or any provision of the DIP Loan Agreement or this Interim Order.

10. All Obligations shall be due on the Maturity Date.

11. The Obligations shall not be discharged by the entry of an order confirming a chapter 11 plan and the Super-Priority Claim and the Liens granted to the DIP Lender pursuant to this Interim Order and the Loan Documents shall not be affected in any manner by the entry of an order confirming a chapter 11 plan.

12. The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Lender, the Debtor, and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in these cases as a legal representative of the Debtor or its estate; provided, however, that the Debtor may not assign its rights or obligations under the DIP Loan Agreement without the DIP Lender's written consent.

13.     Any and all payments or proceeds remitted, or deemed to be remitted, to the DIP Lender pursuant to the Loan Documents shall be received, or deemed received, by the DIP Lender free and clear of any claim, charge, assessment or other liability including, without limitation, any such claim or charge arising out of or based on the rights under sections 105, 506(c), 510 and 552(b) of the Bankruptcy Code, whether directly or indirectly, all of which are hereby waived by the Debtor; provided, however, that the waiver of the Debtor's surcharge rights under section 506(c) of the Bankruptcy Code shall be subject to and effective only upon entry of a Final Order that so provides.

14.     The Carve-Out shall not include the fees and expenses, if any, of any professional persons retained by the Creditors' Committee or by the Debtor incurred, directly or indirectly, in respect of, arising from, or relating to the initiation or prosecution (but not the investigation) of: (i) any action contesting the validity, priority, or extent of any claims or liens asserted by the DIP Lender or any of its affiliates (or any of their respective managers, members, officers, agents, attorneys, consultants, and representatives); (ii) any action for preferences, fraudulent conveyances, and other avoidance power claims against the DIP Lender or any of its affiliates (or any of their respective managers, members, officers, agents, attorneys, consultants, and representatives); (iii) any action seeking relief, which, if granted, would cause the occurrence of a Default or an Event of Default under the DIP Loan Agreement; or (iv) any other cause of action of the Debtor or its estate against the DIP Lender (or any of their respective managers, members, officers, agents, attorneys, consultants, and representatives), provided further, however, that the Carve-Out shall include a maximum of $5,000 to be allocated to the investigation of any of the actions set forth in subsections (i) through (iv) of this Paragraph 14. The fees and expenses of any professional retained by the Debtor or the Creditors' Committee

under section 327 of the Bankruptcy Code shall not be surcharged against the Collateral under section 506(c) of the Bankruptcy Code.

15. The Debtor and the DIP Lender are authorized to enter into non-material modifications and amendments to the Loan Documents without further order of this Court.

16. Except for the Carveout, no costs or expenses of administration or other costs or expenses of the Debtor or any other party that have been or may be incurred in this Chapter 11 Case, or in any subsequent Chapter 7 Case or other proceedings or matters related hereto, shall be charged either against the Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise, without prior written consent of the DIP Lender. No consent by the DIP Lender to any administrative claims, including fees and expenses of professionals, sought to be assessed against or attributed to the DIP Lender or its respective interests in the Collateral pursuant to the provisions of section 506(c) of the Bankruptcy Code or otherwise by, through, or on behalf of the Debtor, shall be implied from any action, inaction, or acquiescence by the DIP Lender or otherwise.

17. Upon the occurrence and during the continuance of an Event of Default and following the giving of five (5) Business Days' notice to Borrower, the Creditors' Committee, if any, and the United States Trustee, the DIP Lender shall have relief from the automatic stay of section 362 of the Bankruptcy Code, without further order of or application to the Court, and may foreclose on all or any portion of the Collateral, collect accounts receivable and apply the proceeds thereof to the obligations, occupy the Debtor's premises to sell Collateral, or otherwise exercise remedies against the Collateral permitted by applicable nonbankruptcy law. During such five (5) Business Day notice period, the Debtor and the Committee shall be entitled to request,

subject to the availability of the Court, an emergency hearing with the Court for the sole purpose of contesting whether an Event of Default has occurred and is continuing. Unless during such period the Court determines that an Event of Default has not occurred or is no longer continuing, the automatic stay, as to the DIP Lender, shall be automatically terminated at the end of such notice period and without further notice or order. In no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral or otherwise.

18. Notwithstanding anything herein, no amounts under the Carve Out (except as provided in Paragraph 14 of this Interim Order), or the proceeds of the DIP Loan, or the proceeds of the Collateral (prior to payment in full of the DIP Loan) shall be used for the purpose of: (a) paying expenses not authorized by the Budget, (b) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, perfection, priority, or enforceability of the DIP Loan, the Liens, the Super-Priority Claim, or any other rights or interest of the DIP Lender; (c) asserting or prosecuting any claims or causes of action, including any actions under Chapter 5 of the Bankruptcy Code, against the DIP Lender or any of its affiliates (or any of their respective managers, members, officers, agents, attorneys, consultants, and representatives); (d) preventing, hindering, or delaying the DIP Lender's enforcement or realization upon any of the Collateral, provided, however, that nothing contained in this Paragraph 18(d) prohibits any party in interest from contesting the DIP Lender's determination that an Event of Default under the DIP Loan Agreement has occurred pursuant to Paragraph 17 of this Interim Order; (e) selling any Collateral except as specifically permitted in the DIP Loan Agreement and this Interim Order; (f) incurring indebtedness except as permitted by the DIP Loan Agreement and this Interim Order; (g) pursuing any relief from the Court, which if granted would give rise to or result in the

occurrence of a Default or Event of Default; or (h) modifying the DIP Lender's rights hereunder without the DIP Lender's consent.

19. The Debtor shall execute and deliver to the DIP Lender all such agreements, financing statements, instruments and other documents as the DIP Lender may reasonably request to evidence, confirm, validate or perfect the liens and security interests granted pursuant hereto.

20. The Debtor shall permit representatives, agents and/or employees of the DIP Lender to have reasonable access to its premises, personnel, and their records during normal business hours (without unreasonable interference with the proper operation of the Debtor's affairs) and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request. The Debtor shall provide reasonable access to its management to the DIP Lender.

21. Solely by virtue of its decisions to advance moneys or extend financial accommodations of any nature under this Interim Order or the Loan Documents, in making any advances, loans, or financial accommodations of any sort under this Interim Order or the Loan Documents, or in taking any other action related to or in connection with any of the foregoing, the DIP Lender shall have no liability, and shall not be deemed to be in control of the operation of the Debtor, an "employer" of any of the Debtor's employees, or to be acting as a "responsible person" or managing agent with respect to the operation or management of the Debtor.

22. The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Lender, the Debtor, and their respective successors and assigns, including any trustees or other fiduciaries hereafter appointed as legal representative of the Debtor or with respect to

property of the estate of the Debtor whether under the Chapter 11 Case or any subsequent Chapter 7 Case. The terms and provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order: (i) converting to Chapter 7 or dismissing the Chapter 11 Case; or (ii) confirming or consummating any Chapter 11 plan of the Debtor. The terms and provisions of this Interim Order as well as the priorities in payment, liens and security interests granted pursuant to this Interim Order shall continue in this or any superseding case under the Bankruptcy Code of the Debtor, and such priorities in payment, liens, and security interests shall maintain their priority as provided by this Interim Order until the DIP Loan is indefeasibly satisfied in full by its terms and discharged and the DIP Lender shall have no further obligations or financial accommodations to the Debtor.

23. Based on the record presented, this Court has found that the DIP Lender is extending credit and making the DIP Loan to the Debtor in good faith. Accordingly, the DIP Lender is entitled to the full protection of section 364(e) of the Bankruptcy Code with respect to the Obligations and the Liens authorized, created, and adjudicated by this Interim Order if this Interim Order or any finding, authorization, or adjudication contained herein is vacated, reversed, or modified on appeal. Any modification, reversal, or vacation of this Interim Order (by this or any other court) shall not affect the validity and enforceability of the Obligations of the Debtor to the DIP Lender incurred pursuant to this Interim Order, or the validity, priority, and enforceability of the DIP Lender's Liens under this Interim Order. Notwithstanding any modification, reversal or vacation of this Interim Order, the DIP Loan made by the DIP Lender under the DIP Loan Agreement and all Obligations incurred by the Debtor pursuant hereto prior to the effective date of any stay, modification, reversal, or vacation of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender

shall be entitled to all of the rights and benefits granted herein with respect to the Obligations and the DIP Lender's Lien on Collateral securing the Obligations.

24. The Debtor shall reimburse DIP Lender for its reasonable professional fees, costs, and expenses as and to the extent provided in the DIP Loan Agreement, whether incurred pre-petition or post-petition. None of such costs and expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of such payment shall be required to file with respect thereto any interim or final fee application with this Court; provided, however, the Debtor, the U.S. Trustee, and the Committee, if one is appointed, shall be provided with a summary of such fees and expenses 10 days prior to their payment. The Debtor, the Committee, or the U.S. Trustee may object to such fees; provided, however, that if no such objection is filed within such 10 day period, then such fees shall be allowed and the Debtor shall be authorized and directed to pay the same.

25. Notwithstanding anything to the contrary herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, (a) any of the rights of the DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) relief from or modification of the automatic stay extant under section 362 of the Bankruptcy Code, (ii) request conversion of the Chapter 11 Case to Chapter 7, and (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Lender.

26. In the event of any inconsistency between the provisions of this Interim Order and the provisions of the Loan Documents, the provisions of this Interim Order shall control.

27. This Interim Order shall be effective as of the date that it is signed by the Court.

28. The Court shall retain exclusive jurisdiction for the purposes of enforcing this Interim Order, the Loan Documents, and any and all rights granted thereunder.

29. Within three (3) Business Days after this Court's entry of this Interim Order, the Debtor shall serve a copy of this Interim Order and the proposed form of Final Order to (a) the United States Trustee for this region; (b) the Factor; (c) the Bankruptcy Rule 2002 Service List; (d) those creditors identified on the List of Creditors Holding 20 Largest Unsecured Claims filed simultaneously with the Debtor's Voluntary Petition; and (e) Moses & Singer LLP, The Chrysler Building, 405 Lexington Avenue, New York, New York 10174-1299, Attn: James M. Sullivan, Esq.

30. Any party-in-interest objecting to the Court's entry of a Final Order as requested by the Debtor in the Motion shall file a written objection with the United States Bankruptcy Court for the Southern District of New York no later than 12.00 p.m. (Eastern time) on February 25, 2011; and any such objection shall be served so that the same is received on or before such date and time upon (i) by the Court, (ii) the United States Trustee, (iii) counsel for the Debtor, at Wollmuth Maher & Deutsch LLP, One Gateway Center, 9th Floor, Newark, New Jersey 07102, Attn: James L. Lawlor, Esq., Fax: (973) 733-9292, Email: jlawlor@wmd-law.com, and (iv) counsel to the DIP Lender, at Moses & Singer LLP, The Chrysler Building, 405 Lexington Avenue, New York, New York 10174-1299, Attn: James M. Sullivan, Esq.; Fax: (212) 377-6053, Email: jsullivan@mosessinger.com.

31. A final hearing (the "<u>Final Hearing</u>") to consider the Motion will be held before the Court on March 2, 2011, at 2:00 p.m. (Eastern). Such date may be adjourned or continued by the Court without further notice other than that given in open court.

32. The notice provisions approved by this Court by entry of this Interim Order shall constitute sufficient notice of the Final Hearing.

New York, New York
Dated: **February 18, 2011**

***/s/ Sean H. Lane***
HON. SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE
