KLESTADT & WINTERS, LLP
Tracy L. Klestadt
Fred Stevens
Carrie V. Hardman
570 Seventh Avenue, 17th Floor
New York, New York 10018
(212) 972-3000

*Proposed Counsel to the Official Committee of
  Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                              :
                                                   :      Chapter 11
WORD WORLD, LLC,                                   :
                                                   :      Case No. 11-10543 (SHL)
                          Debtor.                  :
------------------------------------------------------------x

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO THE DEBTOR'S MOTION FOR ENTRY OF AN ORDER
AUTHORIZING DEBTOR TO PAY PREPETITION CLAIMS OF
CERTAIN CRITICAL VENDORS**

**TO:   THE HONORABLE SEAN H. LANE,
       UNITED STATES BANKRUPTCY JUDGE:**

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") for Word World, LLC, the above-captioned debtor (the "<u>Debtor</u>"), by its proposed counsel, Klestadt & Winters, LLP, as and for its objection (the "<u>Objection</u>") to the Debtor's motion, filed February 11, 2011 [DE 7] (the "<u>Critical Vendor Motion</u>"), for an order authorizing the Debtor to pay prepetition claims of certain critical vendors, respectfully sets forth and alleges as follows:

**PRELIMINARY STATEMENT**

1.      By the Critical Vendor Motion and related requests for relief currently before the Court, the Debtor proposes to borrow funds, encumber currently unencumbered assets in order to do so, pay borrowed funds to preferred unsecured creditors, and leave nothing or

virtually nothing for disfavored unsecured creditors who are not fortunate enough to be deemed "critical" to the Debtor's business. The relief sought by the Critical Vendor Motion is contrary to the very basic and fundamental absolute priority rule, and accordingly, should only be granted after a significant showing of necessity.

2. As set forth in greater detail below, the Debtor fails, both procedurally and substantively, to demonstrate the necessity of paying the purported "critical" vendors. From the papers submitted and evidence presented, the Committee is hardly able to even identify the "critical" vendors, much less determine why paying them is necessary. For the reasons stated below, the Critical Vendor Motion should be denied pending an adequate demonstration of necessity by the Debtor

## **INTRODUCTION**

3. On February 10, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the or this "Court") [DE 1].

4. The Debtor is currently operating its business and/or managing its property as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. On February 23, 2011, the United States Trustee appointed PCEP II WW Holdings, Inc., Crest Animation Holdings (US), and Bardel Entertainment, Inc., to the Committee [DE 32]. On February 24, 2011, the Committee retained Klestadt & Winters, LLP as its general counsel, subject to the approval of this Court.

# BACKGROUND

6.   The Debtor is a privately held limited liability company formed under the laws of the State of New York, and is the owner of the Word World children's animated television series and of all intellectual property associated with the Word World brand.[1] On the Petition Date, the Debtor's assets (collectively, the "Property"), were essentially unencumbered.[2]

# OBJECTION

7.   In light of the applicable authority regarding the scrutiny of critical vendor motions, the Critical Vendor Motion fails to adequately set forth why it could not be filed on at least 21 days' notice pursuant to Fed. R. Bankr. P. 6003(b), the identity of the purported "critical" vendors, and why paying the purported "critical" vendors is/was necessary.

**Procedural Objection**

8.   Rule 6003(b) states, in pertinent part,

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following:
> (b) a motion to … otherwise incur an obligation regarding property of the estate, *including a motion to pay all or part of a claim that arose before the filing of the petition*, … .

Fed. R. Bankr. P. 6003(b)(2011) (emphasis added).

9.   Thus, pursuant to Rule 6003(b), "critical vendor motions should not be considered until 21 days after the filing. It should be the very rare case that a vendor needs payment so critically and so immediately that it could not wait 21 days for that payment."

---

[1] Critical Vendor Motion, ¶3.
[2] In paragraph 7 of the affidavit of Don Moody (the "Moody Affidavit") [DE 5], CEO and manager of the Debtor, in support of the Critical Vendor Motion among others, he stated that "the Debtor has less than approximately $0.1 million of secured notes payable, of which approximately $47,000 is owed under certain prepetition accounts receivable factoring agreement." However, there is no further detail with respect to the alleged secured obligations, who the lender(s) is/are, exactly what assets of the Debtor are secured, and whether the obligations are properly perfected.

COLLIER ON BANKRUPTCY ¶ 6003.02 [3][c][ii] (2010) (citing, *inter alia*, FED. R. BANKR. P. 6003).

10. The Debtor fails to demonstrate immediate and irreparable harm necessary to seek relief before the 21-days after the Petition Date. In fact, the Debtor fails to provide much description at all.

11. From the Critical Vendor Motion, we learn only that the Debtor depends on the purported "critical" vendors and service providers to run its daily business and that they will be difficult or impossible to replace. *See* Critical Vendor Motion, ¶10 & 11.

12. There is no specificity whatsoever as to who the "critical" vendors or service providers are, how or in what way each vendor or service provider is critical, and specifically how non-payment would result in immediate or irreparable harm.

13. As a result of this lacking specificity, the Debtor fails to demonstrate that the relief it seeks in the Critical Vendor Motion "is necessary to avoid immediate and irreparable harm."

**Substantive Objection**

14. Relating generally to the relief sought by the Critical Vendor Motion, the Debtor failed to adequately demonstrate the requirements to demonstrate necessity for the relief sought.

15. The Debtor cites the doctrine of necessity, as applied via section 105(a), and sections 363 and 364, to provide the requisite authority to pay the prepetition debts of the alleged "critical vendors and service providers." *See* Critical Vendor Motion, ¶¶14-17.

16. The primary case guiding the adjudication of the Critical Vendor Motion is *In re Kmart Corp.*, 359 F.3d 866 (7th Cir. 2004). In *Kmart*, the Seventh Circuit held that the

language of section 105(a), "does not create discretion to set aside the Code's rules about priority and distribution; the power conferred by §105(a) is one to implement rather than override." Id. at 871.

17. Furthermore, with respect to attempts to invoke the doctrine of necessity to seek payment of such critical vendors, the *Kmart* Court determined that, except for section 363(b), nowhere else in the Bankruptcy Code grants the authority for debtors to prefer some vendors over others. Id. at 872. To invoke such power under section 363(b), a debtor must show "that the disfavored creditors *will* be as well off with reorganization as with liquidation" and "that the supposedly critical vendors would have ceased deliveries if old debts were left unpaid while the litigation continued." Id. at 873.

18. Neither showing was made by the Debtor. The Critical Vendor Motion lacks any reference whatsoever to an analysis relating to the treatment of disfavored creditors. Further, given the lack of specificity relating to who the critical vendors are and their relation to the Debtor's business, the Debtor also failed to further evidence that these vendors would actually cease deliveries if old debts were left unpaid.

19. The Committee would be remiss to take the Debtor's word that unidentified critical vendors are, in fact, critical to the business and that they will certainly cease performance upon non-payment of prepetition debt. Furthermore, the Committee would be also be remiss to assume, without any showing from the Debtor, that the disfavored creditors will be as well off with reorganization of the Debtor as they would a liquidation. As set forth in the Committee's objection to the Debtor's motion to enter into a debtor in possession lending agreement filed concurrently herewith, disfavored creditors are likely to get nothing under the Debtor's proposed sale and lending transactions.

5

20. Thus, based on guiding principles relating to critical vendor motions, the Debtor failed to sufficiently demonstrate the necessity of paying critical vendors.

## CONCLUSION

21. For the foregoing reasons, the relief sought in the Critical Vendor Motion should be denied pending the submission of significant, competent evidence by the Debtor demonstrating the necessity of any proposed payments to "critical" vendors.

**WHEREFORE**, the Committee respectfully requests that the Critical Vendor Motion be denied, and that it be granted such other and further relief as is just.

Dated: New York, New York
February 28, 2011

KLESTADT & WINTERS, LLP

By: *s/ Fred Stevens*
Tracy L. Klestadt
Fred Stevens
Carrie V. Hardman
570 Seventh Avenue, 17th Floor
New York, New York 10018
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: fstevens@klestadt.com

*Proposed Counsel to The Official Committee of Unsecured Creditors*