IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 11-10543 (SHL) |
| WORD WORLD, LLC, | Chapter 11 |
| Debtor and Debtor-in-Possession. | |

**ORDER PURSUANT TO SECTIONS 105, 363, 365, AND 1146 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004 AND 6006
(I) AUTHORIZING AND APPROVING (A) EXECUTION OF AMENDED ASSET
PURCHASE AGREEMENT WITH STANDARD GENERAL FUND L.P. FOR (1) SALE
OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR, FREE AND CLEAR OF ALL
LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND (2)
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES, (B) BIDDING PROCEDURES (INCLUDING A BREAK-UP
FEE AND OTHER BID PROTECTIONS), AND (C) FORM AND MANNER OF NOTICE,
AND (II) SCHEDULING SALE APPROVAL HEARING**

Upon consideration of the motion, dated February 11, 2011 (the "**Sale Motion**"), of

Word World, LLC, as debtor in possession (the "**Debtor**"), pursuant to sections 105, 363, 365,

and 1146 of title 11 of chapter 11 of the United States Code (the "**Bankruptcy Code**") and Rules

2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

for entry of an order (I) authorizing and approving (A) the Debtor's execution of the amended

asset purchase agreement, in a form attached hereto as **Exhibit A** (the "**Agreement**"), by and

between the Debtor and Standard General Fund L.P., a Delaware limited partnership

("**Purchaser**") for (1) the sale of substantially all of the Debtor's assets, free and clear of all

liens, claims, encumbrances and other interests, and (2) the assumption and assignment of certain

executory contracts and unexpired leases, (B) the bidding procedures for submission and

acceptance of competing bids and conduct at the Auction[1] (including a break-up fee and other bid protections), which are set forth in Paragraph 6 hereto (the "**Bidding Procedures**"), (C) the form and manner of notice of the sale of such assets (the "**Procedures Relief**"), and (D) scheduling a sale approval hearing (the "**Sale Hearing**"), and an order (II) authorizing and approving (A) the sale of substantially all of the Debtor's assets, free and clear of all liens, claims, encumbrances and other interests, (B) the assumption and assignment of certain executory contracts and unexpired leases, (C) the Debtor's consummation of the transactions contemplated in the Agreement, and (D) an exemption from transfer taxes pursuant to section 1146(a) of the Bankruptcy Code; and it appearing that due and proper notice of the hearing to approve the Sale Motion as it relates to the Procedures Relief (the "**Procedures Hearing**") has been provided pursuant to Bankruptcy Rules 2002, 6004 and 6006; and it appearing that such notice constitutes good and sufficient notice of the requested Procedures Relief and the Procedures Hearing and that no other or further notice need be provided; and it further appearing that this Court has jurisdiction to consider the Procedures Relief pursuant to 28 U.S.C. §§ 157 and 1334; and after considering all objections, if any, to the Procedures Relief (the "**Objections**"); and the Procedures Hearing having been held on March 7, 2011, to consider the Procedures Relief requested in the Sale Motion; and upon the Sale Motion and the record of the Procedures Hearing and all other proceedings had before the Court; and it further appearing that the Procedures Relief requested in the Sale Motion is reasonable and necessary under the circumstances to protect the interests of the Debtor, its estate and creditors in connection with the proposed sale of substantially all of the Debtor's assets pursuant to the Agreement; and it appearing that an order establishing bidding procedures, fixing and approving the notice and

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Motion.

scheduling the Sale Hearing and the Auction is in the best interests of the Debtor and parties in interest; and after due deliberation and sufficient cause appearing therefor, it is hereby

FOUND AND DETERMINED THAT:

A.      The Debtor has shown good and sufficient reasons for approving the Sale Notice and the Bidding Procedures in connection with the sale of the Purchased Assets, the assumption and assignment of the Assumed Contracts and the related Auction.

B.      The Bidding Procedures are reasonable and appropriate and are designed to maximize the recovery on the Purchased Assets and the assumption and assignment of the Assumed Contracts.

C.      The Sale Notice provides due, adequate and timely notice of the sale and assignment transactions described in the Agreement (the "**Sale Transaction**") in accordance with Bankruptcy Rules 2002, 6004 and 6006 and the applicable provisions of the Bankruptcy Code.

D.      The notice proposed to be provided by the Debtor of the Sale Motion and the Auction constitutes due, sufficient and adequate notice to parties in interest of the sale of the Purchased Assets and the assumption and assignment of the Assumed Contracts.

E.      The selection of Purchaser as the Stalking Horse and the process by which that selection was accomplished were fair and reasonable, and such selection is in the best interest of the Debtor's estate, creditors and other parties in interest.

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1.      The Procedures Relief, as requested in the Sale Motion, and as may be amended herein, is granted.

2.      To the extent not withdrawn or rendered moot by the provisions contained herein, all Objections, if any, are overruled.

3.      The Debtor is authorized to sell the Purchased Assets by conducting the Auction in accordance with the Bidding Procedures, which procedures are hereby approved in their entirety.

4.      The Debtor shall hold the Auction in accordance with the Bidding Procedures at Wollmuth Maher & Deutsch LLP, 500 Fifth Avenue, New York, New York on April 12, 2011, at 10:00 a.m. (EST).

5.      The Sale Hearing shall be held in the Courtroom of the Honorable Sean H. Lane, United States Bankruptcy Court for the Southern District of New York, 1 Bowling Green, New York, NY 10004 on **April 13, 2011, at 11:00** a.m. (EST).

6.      Any party desiring to submit a competing bid for the Purchased Assets at the Auction shall submit such bid in accordance with the following Bidding Procedures:

> 1.      Parties wishing to conduct due diligence with the Debtor for purposes of participating at the Auction must first execute a confidentiality agreement in form reasonably satisfactory to the Debtor and provide the Debtor with sufficient and adequate information to demonstrate, to the satisfaction of the Debtor, that such competing bidder is a legitimate potential bidder. Only Purchaser and any other party having satisfied the above conditions shall be permitted to conduct due diligence with the Debtor.
>
> 2.      Parties wishing to bid at the Auction must first become qualified in accordance with the following procedures. A party shall become a "Qualified Bidder" by submitting the following to those parties set forth in paragraph "3"

hereof: (i) a good faith deposit in the amount of $200,000, in the form of a wire or a certified or cashier's check made payable to "Word World, LLC" ("**Bidder Deposit**"); (ii) a written bid in an amount at least $200,000 greater than the cash consideration set forth in the Agreement under a contract on terms at least as favorable and otherwise substantially identical to such Agreement, except as to any favorable waivers of conditions or representations; (iii) a black-line copy of the Agreement marked to show any and all changes requested by such bidder to the Agreement; and (iv) sufficient and adequate written information to demonstrate that such competing bidder (a) has the financial wherewithal and ability to consummate the Sale Transaction, including, but not limited to evidence of adequate financing by commitment letter and financial guaranty, if appropriate, and (b) can provide all non-debtor contracting parties to the Assumed Contracts with adequate assurance of future performance as contemplated by section 365 of the Bankruptcy Code (the "**Bid Packages**"). No bid may contain a financing or due diligence contingency.

3.      Parties shall submit their completed Bid Packages, as outlined in the preceding paragraph to (i) the Debtors' investment bank, BDO Capital, Attn: Jeffrey R. Manning, 100 Park Avenue, 10th fl, New York, New York 10017, email jrmanning@bdocap.com, (ii) counsel to the Debtor, at Wollmuth Maher & Deutsch LLP, One Gateway Center, 9th Floor, Newark, New Jersey 07102, Attn: James N. Lawlor, Esq., Fax: (973) 733-9292, Email: jlawlor@wmd-law.com, (iii) counsel to the Committee, Klestadt & Winters LLP, Attn: Tracy Klestadt, Esq. and Fred Stevens, Esq., 570 Seventh Avenue, 17th Floor, New York, New York, 10018, Fax: (212) 972-2245, Email: fstevens@klestadt.com, and (iv) counsel to the Purchaser, at Moses & Singer LLP, The Chrysler Building, 405 Lexington Avenue, New York, New York 10174-1299, Attn: James M. Sullivan, Esq.; Fax: (212) 377-6053, Email: jsullivan@mosessinger.com, so as to be received by such parties **on or before April 4, 2011, at 4:00 p.m. (EST) (the "Qualified Bid Deadline"). Parties not submitting Bid Packages by the Qualified Bid Deadline shall not be permitted to participate at the Auction.**

4.      The Debtor, in consultation with the Committee, shall determine which, if any, of the parties submitting Bid Packages before the Qualified Bid Deadline are Qualified Bidders and such parties shall be notified before April 11, 2011 at 4:00 p.m. Only Qualified Bidders may participate at the Auction.

5.      All Bidder Deposits of Qualified Bidders shall be retained by the Debtor (but any certified or cashier's checks will not be cashed) pending the Sale Hearing and shall be returned within 5 business days after the close of the Sale Transaction, except that the deposit of the prevailing bidder (as determined by the Debtor and as approved by the Court) (the "**Prevailing Bidder**"), which deposit shall within 5 business days following the Auction be increased to an amount sufficient to reflect 10% of the cash portion of the Purchase Price of such Prevailing bid, shall be retained by the Debtor. Notwithstanding the preceding sentence, the terms and conditions governing any deposit given by the Purchaser shall be in accordance with the Agreement. The Debtor shall deposit such

certified or cashier's check(s) in a segregated account and hold and apply such amount to the Purchase Price at closing pursuant to the terms of the Agreement. Bidder Deposits from any bidder who is not deemed a Qualified Bidder shall be returned to such bidder within 5 business days after the Sale Hearing.

6.      The Debtor shall, in consultation with the Committee, after the Qualified Bid Deadline and prior to the Auction, evaluate the Qualified Bids received, and determine which of such bids reflects the highest and best offer for the Purchased Assets at that time. The Debtor shall announce such determination as the opening bid value at the commencement of the Auction and the Court shall conduct the Auction among the Qualified Bidders and Purchaser to determine if any higher and better offer may be obtained. Any further bids made at the Auction shall be in increments of at least $50,000 greater than the opening bid and any bid made thereafter.

7.      At the conclusion of the Auction, the Debtor shall, in consultation with the Committee, and determine which of such bids reflects the highest and best offer for the Purchased Assets  and shall move for approval of such bid at the Sale Hearing.

8.      In the event that a Qualified Bidder is the Prevailing Bidder for the Purchased Assets, such bidder shall be bound by all of the terms and conditions of the Agreement with appropriate modifications for (i) the identity of the successful bidder; (ii) the purchase price, as the same shall have been increased at the Auction; and (iii) any modifications to the Agreement as may be agreed to between the Debtor, in consultation with the Committee, and the Prevailing Bidder.

9.      In the event that Purchaser is not the Prevailing Bidder, then Purchaser shall be entitled to the Break-Up Fee (i.e., $20,000) plus payment of reasonable out-of-pocket expenses incurred by Purchaser up to $25,000 through the day of the Auction, including, but not limited to any financing commitment fees (which detail of actual expenses shall be provided to the Debtor within 10 business days after the Auction) (the "**Expense Reimbursement**"). Such Break-Up Fee and Expense Reimbursement shall be entitled to administrative expense claim treatment in the Debtor's bankruptcy case. Should overbidding take place at the Auction, Purchaser shall have the right, but not the obligation, to participate in the overbidding and to be approved as the Prevailing Bidder at the Sale Hearing based upon any such overbid, provided, however, that Purchaser shall receive a credit against any additional incremental bid in an amount equal to any amounts due under the DIP Loan, but such credit bid shall not include the Break-Up Fee and Expense Reimbursement.

10.      All bids of Qualified Bidders are irrevocable until the closing of the Sale Transaction.

11.     In the event that the Prevailing Bidder fails to consummate the Sale Transaction in accordance with the terms of the Agreement by the Closing Date, such bidder's deposit shall be forfeited to the Debtor (as minimum damages for such breach, but shall not be considered to be liquidated damages, the Debtor reserving the right to pursue any and all remedies that may be available to the Debtor, except with regard to Purchaser, in which case the Debtor's and Purchaser's rights and remedies shall be governed by the Agreement) and the Debtor shall be free to consummate the proposed transaction with the next highest bidder at the final price bid by such bidder at the Auction (or, if that bidder is unable to consummate the transaction at that price, the Debtor may consummate the Sale Transaction with the next higher bidder, and so forth) without the need for an additional hearing or order of the Court.

12.     All bids for the purchase of the Purchased Assets shall be subject to approval of the Court.

13.     Only bids by Qualified Bidders and Purchaser shall be considered by the Debtor at the Auction. The Debtor, in its discretion, may reject any Bid Package prior to the Auction or any subsequent bid at the Auction as not in conformity with the requirements of the Bidding Procedures, the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court, or contrary to the best interests of the Debtor and other parties in interest.

14.     The Debtor, in consultation with the Committee and Purchaser, may adopt rules for the Auction at the Auction that, in its reasonable judgment, will better promote the goals of the Auction and that are not inconsistent with any of the material provisions of the Bidding Procedures Order or the Agreement.

7.     Purchaser is hereby approved as the Stalking Horse bidder.

8.     The Break-Up Fee and Expense Reimbursement are hereby approved and the Debtor shall be, and hereby is, authorized and directed to pay Purchaser (as an administrative expense claim) the Break-Up Fee and the Expense Reimbursement in the event that they are not the Prevailing Bidder at the Sale Hearing in accordance with the terms of the Agreement and this Order.

9.     If Purchaser is not the Prevailing Bidder, Purchaser shall submit detail of actual expenses (the "**Expense Detail**") to the Debtor and the United States Trustee within 10 business days after the Auction.

10.	After receipt of the Expense Detail by the Debtor, payment of the Expense Reimbursement shall be made without further order of the Court (unless the Debtor or the United States Trustee serves Purchaser with a written objection (an "**Expense Objection**") within 10 days of receiving the Expense Detail) concurrently with the receipt by Debtor of any proceeds of the sale of the Purchased Assets and any other assets of the Debtor (including the proceeds of a deposit in the event of a default by a third party purchaser in connection with a third party sale), the effective date of any chapter 11 plan, the dismissal of the Debtor's chapter 11 case, or the conversion of the Debtor's chapter 11 case to chapter 7, whichever occurs first. If an Expense Objection is timely served upon Purchaser, then payment of the Expense Reimbursement will not be made unless and until the Expense Objection is withdrawn, resolved, or overruled by an order of the Court.

11.	Should overbidding take place at the Auction, Purchaser shall have the right, but not the obligation, to participate in the overbidding and to be approved at the Sale Hearing as the Prevailing Bidder based upon any such overbids, provided, however, that Purchaser shall receive a credit against any additional incremental bid in an amount equal to any amounts due under the DIP Loan.

12.	The Debtor is authorized to conduct the sale of the Purchased Assets without the necessity of complying with any state or local bulk transfer laws or requirements and any such compliance is waived.

13.	Pursuant to Bankruptcy Rules 2002, 6004 and 6006, (a) on or before March 15, 2011, the Debtor shall serve a copy of the notice (the "**Sale Notice**") of the Sale Motion, the Auction and the Sale Hearing, substantially in the form annexed hereto as **Exhibit B** (which

form is hereby approved) together with a copy of this Order and the Cure Notice (as defined herein), by (a) e-mail service (if consented to) and/or first class U S mail upon (i) counsel for the Purchaser, (ii) any party who, in the past twelve months, expressed in writing to the Debtor an interest in acquiring some or all of the Debtor's assets, (iii) all parties who are known to claim interests in or liens upon the Purchased Assets, (iv) all nondebtor parties to an Assumed Contract, (v) all applicable federal, state and local taxing authorities, (vi) the U.S. Trustee, (vii) the Office of the U.S. Attorney for the Southern District of New York, and (viii) those persons who have requested service pursuant to Bankruptcy Rule 2002; (b) on or before March 15, 2011, the Court shall provide notice by electronically filing this Bidding Procedures Order and approved Sale Notice on the Court's ECF system located at ecf.nysb.uscourts.gov; and (c) on or before March 21, 2011, the Debtor shall publish the Sale Notice once in U.S.A. Today.

14.    Such service as provided in the previous paragraph is hereby deemed due, timely, good and sufficient notice of the entry of this Bidding Procedures Order, the Auction, the Sale Motion, the Sale Hearing and all proceedings to be held thereon and matters related thereto.

15.    Responses or objections, if any, to the relief requested in the Sale Motion (other than objections based upon cure claims discussed below) must be in writing, must state the name of the objecting party, must state with particularity the reasons and bases for the objection, and be filed with the Court and served upon (a) counsel to the Debtor, at (i) Wollmuth Maher & Deutsch LLP, One Gateway Center, 9th Floor, Newark, New Jersey 07102, Attn: James N. Lawlor, Esq., Fax: (973) 733-9292, Email: jlawlor@wmd-law.com, and (ii) counsel to the Purchaser, at Moses & Singer LLP, The Chrysler Building, 405 Lexington Avenue, New York, New York 10174-1299, Attn: James M. Sullivan, Esq.; Fax: (212) 377-6053, Email:

jsullivan@mosessinger.com, so as to be actually received by such persons no later than April 6, 2011, at 4:00 p.m. (EST).

16.     The Cure Notice, substantially in the form annexed hereto as **Exhibit C** (which form is hereby approved), shall be filed with this Court on the same date that the Sale Notice is served.  Any and all objections to the Cure Obligations, ("**Cure Objection(s)**") must be in writing, filed with the Court, and <u>actually received</u> by (a) counsel to the Debtor, at (i) Wollmuth Maher & Deutsch LLP, One Gateway Center, 9th Floor, Newark, New Jersey  07102, Attn: James N. Lawlor, Esq., Fax: (973) 733-9292, Email: jlawlor@wmd-law.com, and (ii) counsel to the Purchaser,  at Moses & Singer LLP, The Chrysler Building, 405 Lexington Avenue, New York, New York 10174-1299, Attn: James M. Sullivan, Esq.; Fax: (212) 377-6053, Email: jsullivan@mosessinger.com, no later than  April 6, 2011, at 4:00 p.m. (Eastern Time) (the "**Cure Objection Deadline**").

17.     The Cure Objections shall set forth the cure amounts or obligations that the objecting party asserts have accrued and/or are due, the specific types and dates of the alleged cure amounts, obligations, defaults, pecuniary losses, and conditions to assignment, and the support therefor.

18.     Unless a Cure Objection is filed and served by a party to an Assumed Contract or a party interested in an Assumed Contract by the Cure Objection Deadline, all interested parties who have received actual or constructive notice hereof shall be deemed to have waived and released any right to assert a Cure Objection and to have otherwise consented to the assignment of the Assumed Contracts and shall be forever barred and estopped from asserting or claiming against the Debtor, Purchaser or such other Prevailing Bidder or any other assignee of the

relevant Assumed Contract that any additional amounts are due or defaults exist, or conditions to assignment must be satisfied, under such Assumed Contracts for any period prior to the date of the Closing.

19.     Hearings with respect to Cure Objections may be held: (a) at the Sale Hearing; or (b) at such other date as the Court may designate, provided that if the subject Assumed Contract is assumed and assigned, the Debtor shall deposit the cure amount asserted by the objecting party (or such lower amount as may be fixed by the Court) in a segregated account held by the Debtor and or such other person as the Court may direct pending further order of the Court or mutual agreement of the parties.

20.     A properly filed and served Cure Objection shall reserve such party's rights against the Debtor (but not against Purchaser or any other purchaser of the Purchased Assets and the Assumed Contracts) respecting the Cure Obligation, but shall not constitute an objection to the remaining relief generally requested in the Sale Motion.

21.     The inclusion by the Debtor of any contract or lease on the list of Assumed Contracts to be filed with this Court does not indicate that such contract or lease has been or will be assumed by the Debtor and assigned to the Purchaser and no counterparty to such contract or lease shall be entitled to any greater rights or remedies solely as a result of being included on such list.

22.     The Debtor and/or Purchaser may add or remove contracts or leases from the list of Assumed Contracts up to the closing of the Sale Transaction and in the event one or more of the Assumed Contracts are added or removed on or before the closing of the Sale Transaction, the Debtor shall file an amended list of Assumed Contracts and serve notice of change of the

Assumed Contracts ("**Notice of Change**"), substantially in the form attached hereto as **Exhibit D**, which form is hereby approved, as applicable, on the nondebtor parties to such affected contracts or leases.

23.     To the extent any executory contracts or unexpired leases are added to the Assumed Contracts list, such affected nondebtor parties shall have thirteen (13) days from the date of service of a Notice of Change to file and serve an objection to the assumption and assignment and/or the Cure Obligation stated therein, unless such period is shortened by the Court; provided further, that the failure by such nondebtor party to object to the assumption and assignment and/or the Cure Obligation within such period shall be deemed a waiver of any objection to the stated Cure Obligation.

24.     To the extent any executory contracts or unexpired leases are removed from the list of Assumed Contracts, such executory contracts and unexpired leases shall have not been assumed by the Debtor nor assigned to Purchaser and the rights under such agreements with respect to the Debtor shall remain unaltered.

25.     This Order shall become effective immediately upon its entry.

26.     The Court shall retain exclusive jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Dated: New York, New York

**March 10, 2011**

*/s/ Sean H. Lane*
HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

## Exhibits to Bidding Procedures Order

**Exhibit A — Amended Asset Purchase Agreement**
**Exhibit B — Sale Notice**
**Exhibit C — Cure Notice**
**Exhibit D — Notice of Change**

Amended Asset Purchase Agreement

# AMENDED ASSET PURCHASE AGREEMENT


dated as of

March 8, 2011

by and between


## WORD WORLD, LLC


and


## STANDARD GENERAL FUND L.P.

# AMENDED ASSET PURCHASE AGREEMENT

This AMENDED ASSET PURCHASE AGREEMENT ("**Agreement**") is entered into as of March 8, 2011 by and between Standard General Fund L.P., a Delaware limited partnership having a place of business at 650 Madison Avenue, 23rd Floor, New York, NY 10022 (the "***Purchaser***"), and Word World, LLC, a New York limited liability company having a place of business at 40 W. 23rd Street, 6th Floor, New York, NY 10010 ("***Seller***") as debtor and debtor-in-possession in the chapter 11 case (the "**Bankruptcy Case**") pending in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

## BACKGROUND

WHEREAS, Seller is in the business of developing television programming, books, and other media content for young children (the "***Business***");

WHEREAS, on February 10, 2011 (the "**Filing Date**"), Seller filed a voluntary petition with the Bankruptcy Court under chapter 11 of title 11 of the United States Code, Section 101, *et seq.* (the "**Bankruptcy Code**");

WHEREAS, Seller wishes to sell to Purchaser and Purchaser wishes to acquire from Seller certain assets related to the Business as set forth in this Agreement; and

NOW, THEREFORE, in consideration of the mutual promises in this Agreement and for other good and valuable consideration, the parties hereby agree as follows.

## AGREEMENT

1. **DEFINITIONS**

    1.1    "**Affiliate**" of a Person means any other Person that directly or indirectly through one or more intermediaries controls, is controlled by, or is under common control with such Person.

    1.2    "**Agreement**" means this agreement among the parties set forth on the first page hereof, including, without limitation, all Exhibits and Schedules hereto, as the same may be amended from time to time.

    1.3    "**Ancillary Agreements**" means any agreement, instrument or other document to be executed and delivered in connection with the consummation of the transactions contemplated by this Agreement and shall include, without limitation, any agreement, instrument, or other document that is set forth in **Sections 2.6** hereof.

    1.4    "**Apportioned Obligations**" has the meaning set forth in **Section 5.6** hereof.

    1.5    "**Assumed Contracts**" has the meaning set forth in **Section 2.1(c)** hereof.

    1.6    "**Assumed Liabilities**" has the meaning set forth in **Section 2.3(a)** hereof.

**1.7** "**Auction**" has the meaning set forth in **Section 5.5(c)** hereof.

**1.8** "**Bankruptcy Case**" has the meaning given to it in the recitals hereto.

**1.9** "**Bankruptcy Code**" has the meaning given to it in the recitals hereto.

**1.10** "**Bankruptcy Court**" has the meaning given to it in the recitals hereto.

**1.11** "**Bidding Procedures Order**" has the meaning set forth in **Section 5.5(c)** hereof.

**1.12** "**Break-up Fee**" has the meaning set forth in **Section 5.5(c)** hereof.

**1.13** "**Business**" has the meaning given to it in the recitals hereto.

**1.14** "**Business Day**" means any day other than a Saturday, Sunday or other day on which commercial banks in New York City are required or authorized by law to be closed.

**1.15** "**Cash Payment**" has the meaning set forth in **Section 2.5(a)** hereof.

**1.16** "**Closing**" means the closing of the transactions contemplated by this Agreement.

**1.17** "**Closing Date**" means the date in which the conditions set forth in Article VII are satisfied or waived, or such other date as the parties may mutually agree, upon which the Closing takes place.

**1.18** "**Consent**" means any consent, approval, authorization, license or order of, registration, declaration or filing with, or notice to, or waiver from, any federal, state, local, foreign or other Governmental Entity or any Person, including, without limitation, any security holder or creditor which is necessary to be obtained, made or given in connection with the execution and delivery of this Agreement and/or any Ancillary Agreement, the performance by a Person of its obligations hereunder and/or thereunder and the consummation of the transactions contemplated hereby and/or thereby.

**1.19** "**Contract Assumption Order**" has the meaning set forth in **Section 5.5(e)** hereof.

**1.20** "**Contract Designation Deadline**" has the meaning set forth in **Section 5.5(e)** hereof.

**1.21** "**Copyright Rights**" has the meaning set forth in **Section 2.1(a)(v)** hereof.

**1.22** "**Deposit**" has the meaning set forth in **Section 2.5(d)** hereof.

**1.23** "**DIP Loan**" means the proposed $1,400,000 Senior Secured Super Priority Debtor in Possession Facility to be made available to Seller by Purchaser to finance the administrative costs of the Bankruptcy Case pursuant to that certain Amended Secured Super Priority Debtor in Possession Credit Agreement dated as of March 8, 2011 between Seller, as

Borrower, and Purchaser, as Lender, as approved by an interim and/or Final Order of the Bankruptcy Court.

**1.24** "**Disclosure Schedules**" means the disclosure schedules attached to this Agreement as **Exhibit A**, and includes but is not limited to each of the Schedules expressly referred to in **Section 3** of this Agreement

**1.25** "**Documentation**" has the meaning set forth in **Section 2.1(a)(iii)** hereof.

**1.26** "**Domain Names**" has the meaning set forth in **Section 2.1(a)(vii)** hereof.

**1.27** "**Encumbrances**" means collectively, any and all security interests, liens, pledges, claims, defenses, setoffs, rights of recoupment, leases, levies, charges, escrows, encumbrances, options, rights of first refusal, transfer restrictions, conditional sale contracts, title retention contracts, mortgages, hypothecations, indentures, security agreements or other agreements, arrangements, contracts, commitments, understandings or obligations of any kind whatsoever, whether written or oral.

**1.28** "**Entertainment Properties**" means all films, motion pictures, television programs, Videograms, animated productions, DVDs and other interactive and/or multimedia products, songs, sounds, musical compositions, recordings, and other physical media embodying any of the Copyrights and/or distributed under any of the Trademark Rights and any such projects or products in development.

**1.29** "**Environment**" means any surface or subsurface physical medium or natural resource, including, air, land, soil, surface waters, ground waters, stream and river sediments.

**1.30** "**Environmental Laws**" means any federal, state, local or common law, rule, regulation, ordinance, code, order or judgment (including the common law and any judicial or administrative interpretations, guidances, directives, policy statements or opinions) relating to the injury to, or the pollution or protection of, human health and safety or the Environment.

**1.31** "**Environmental Liabilities**" means any claims, judgments, damages (including punitive damages), losses, penalties, fines, liabilities, encumbrances, liens, violations, costs and expenses (including attorneys' and consultants' fees) of investigation, assessment, remediation or defense of any matter relating to human health, safety or the Environment of whatever kind or nature by any Person or Governmental Entity, (A) which are incurred as a result of (i) the existence of Hazardous Substances in, on, under, at or emanating from any Real Property, (ii) the off-site transportation, treatment, storage or disposal of Hazardous Substances generated by Seller, or (iii) the violation of any Environmental Laws, or (B) which arise under the Environmental Laws.

**1.32** "**Excluded Assets**" has the meaning set forth in **Section 2.2** hereof.

**1.33** "**Excluded Liabilities**" has the meaning set forth in **Section 2.3(b)** hereof.

**1.34** "**Expense Reimbursement**" has the meaning set forth in **Section 5.5(c)** hereof.

**1.35** "**Filing Date**" has the meaning given to it in the recitals hereto.

**1.36** "**Final Order**" means an order, judgment or other decree, the operation or effect of which has not been reversed, stayed, modified or amended and any and all appeal periods with respect to such order, judgment or other decree have expired.

**1.37** "**GAAP**" means United States generally accepted accounting principles, applied on a consistent basis.

**1.38** "**Governmental Entity**" means any federal, state, local or foreign government, political subdivision, legislature, court, agency, department, bureau, commission or other governmental regulatory authority, body or instrumentality, including any industry or other non-governmental self-regulatory organizations.

**1.39** "**Hazardous Substance**" means petroleum, petroleum products, petroleum-derived substances, radioactive materials, hazardous wastes, polychlorinated biphenyls, lead based paint, radon, urea formaldehyde, asbestos or any materials containing asbestos, and any materials or substances regulated or defined as or included in the definition of "hazardous substances," "hazardous materials," "hazardous constituents," "toxic substances," "pollutants," "contaminants" or any similar denomination intended to classify or regulate substances by reason of toxicity, carcinogenicity, ignitability, corrosivity or reactivity under any Environmental Law.

**1.40** "**Intellectual Property Rights**" means all proprietary rights and privileges of any kind or nature, however known or denominated, whether arising by operation of law, contractual obligation, or other means, throughout the world, including the right to distribute, exhibit, broadcast, and market by all means now known or hereafter devised (including over the Internet, World Wide Web, or other computer network), copyrights, patent rights, rights in service marks, trademarks, trade names, trade dress, trade secret rights, rights of privacy, publicity and biography, moral rights, and all other similar rights and collateral, ancillary and subsidiary rights of every kind and nature, together with the goodwill associated therewith, all remedies against infringements thereof and rights to protect any interest therein.

**1.41** "**Laws**" has the meaning as set forth in **Section 2.8(a)** hereof.

**1.42** "**Material Adverse Effect**" means a material adverse effect (financial or otherwise) on (a) the Business or on the results of operations, condition or prospects of the Business, taken as a whole, or the ability of Buyer to succeed to or exercise rights or interests of Seller that are necessary to operate the Business, taken as a whole, or (b) the ability of Seller to consummate the transactions contemplated by this Agreement, taken as a whole, including material delays of the Closing, other than effects directly arising as a result of (i) the performance of this Agreement or (ii) events, changes or developments relating to the financial, banking or capital markets or the economy in general or industry-wide developments affecting Persons in businesses similar to the Business.

**1.43** "**Patents**" has the meaning set forth in **Section 2.1(a)(v)** hereof.

**1.44** "**Patent Rights**" has the meaning set forth in **Section 2.1(a)(v)** hereof.

**1.45** "**Person**" means an individual, corporation, partnership, limited liability company, firm, joint venture, association, joint stock company, trust, unincorporated organization or other entity, or any Governmental Entity or quasi-governmental body or regulatory authority.

**1.46** "**Permits**" means all licenses, certificates of authority, permits, orders, consents, approvals, registrations, local siting approvals, authorizations, qualifications and filings under any federal, state or local laws or with any Governmental Entities or other private Persons.

**1.47** "**Post-Closing Tax Period**" shall mean (i) any Tax period beginning the day after the Closing Date and (ii) with respect to a Tax period that commences before but ends after the Closing Date, the portion of such period beginning the day after the Closing Date.

**1.48** "**Pre-Closing Tax Period**" shall mean (i) any Tax period ending on or before the Closing Date and (ii) with respect to a Tax period that commences before but ends after the Closing Date, the portion of such period up to and including the Closing Date.

**1.49** "**Publishing Properties**" means all literary, dramatic, or other works and properties (whether published or unpublished), screenplays, books, publications, teleplays, stories, adaptations, scripts, treatments, scenarios, and any and all other literary or dramatic materials of any kind embodying any of the Copyright Rights and/or distributed under any of the Trademark Rights.

**1.50** "**Purchased Assets**" has the meaning set forth in **Section 2.1** hereof.

**1.51** "**Purchase Price**" has the meaning set forth in **Section 2.5** hereof.

**1.52** "**Purchaser**" has the meaning given to it in the recitals hereto.

**1.53** "**Sale Approval Order**" has the meaning set forth in **Section 5.5(d)** hereof.

**1.54** "**Sale Hearing**" has the meaning set forth in **Section 5.5(c)** hereof.

**1.55** "**Seller**" has the meaning given to it in the recitals hereto.

**1.56** "**Seller's Representative**" has the meaning set forth in **Section 7.16** hereof.

**1.57** "**Software**" has the meaning set forth in **Section 2.1(a)(i)** hereof.

**1.58** "**Taxes**" (or "**Tax**" where the context requires) shall mean all federal, state, county, provincial, local, foreign and other taxes (including, without limitation, income, profits, premium, estimated, excise, sales, use, occupancy, gross receipts, franchise, ad valorem, severance, capital levy, production, transfer, withholding, employment and payroll related and property taxes and other governmental charges and assessments), whether attributable to statutory or nonstatutory rules and whether or not measured in whole or in part by net income,

and including, without limitation, interest, additions to tax or interest, charges and penalties with respect thereto, and expenses associated with contesting any proposed adjustment related to any of the foregoing.

**1.59** "**Trademark Rights**" has the meaning set forth in **Section 2.1(a)(iv)** hereof.

**1.60** "**Trade Secrets**" means any information which (i) is used in a business, (ii) is not generally known to the public or to Persons who can obtain economic value from its disclosure, and (iii) is subject to reasonable efforts to maintain its secrecy or confidentiality; the term may include but is not limited to inventions, processes, know-how, formulas, computer software, and mask works which are not patented and are not protected by registration (e.g., under copyright, patent, or mask work laws); lists of customers, suppliers, and employees, and data related thereto; business plans and analyses; and financial data.

**1.61** "**Trade Secret Rights**" has the meaning set forth in **Section 2.1(a)(vii)** hereof.

**1.62** "**Videogram**" means any and all forms of videocassette, videodisc, video cartridge, tape, phonogram or other similar device now known or hereafter devised and designed for use in conjunction with a reproduction apparatus which causes a visual image (whether or not synchronized with sound) to appear on the screen of a television or any comparable device now known or hereafter devised.

**1.63** "**Works**" has the meaning set forth in **Section 2.1(a)(i)** hereof.

## 2. PURCHASE AND SALE OF ASSETS

**2.1** <u>Purchase and Sale of Assets.</u>  Subject to the terms and conditions of this Agreement, Seller shall cause to be sold, assigned, transferred, conveyed and delivered to Purchaser at the Closing, and Purchaser shall purchase and acquire at the Closing, free and clear of all Encumbrances, all of Seller's right, title and interest in and to all of the assets, properties and rights of Seller (such assets, properties and rights are hereinafter collectively referred to as the "**Purchased Assets**"), including, but not limited to, the following assets:

**(a)**  All Intellectual Property Rights, including, without limitation:

**(i)**  all rights of the Borrower in and to the Entertainment Properties and Publishing Properties held or used by the Borrower (collectively, the "**Works**"), including those set forth on **Schedule 2.1(a)(i)**, and including further all Intellectual Property Rights of the Borrower in and to such materials and all proprietary aspects of such materials, including all literary, musical, dramatic, pictorial, graphic, sculptural, audiovisual, and recorded aspects of such materials, and all physical embodiments or versions of such materials, however stored or recorded in all media formats;

(ii)     all rights of the Borrower in and to the copyrights, copyright registrations and applications held or used by the Borrower, including those set forth on **Schedule 2.1(a)(ii)** (collectively, the "*Copyright Rights*");

(iii)     all proprietary computer software (including software programs, objects, modules, routines, algorithms and any other software code) in both source code and object code form used in or with regard to the Business (the "*Software*"), including but not limited to those set forth on **Schedule 2.1(a)(iii)**;

(iv)     all registered and common law trademarks, trademark registrations and applications therefor, trade dress rights, trade names, registered and common law service marks, service mark registrations and applications therefor, including, but not limited to those set forth in **Schedule 2.1(a)(iv)** hereto (the "*Trademark Rights*");

(v)     all patent applications and patents (the "*Patents*"), including but not limited to those set forth on **Schedule 2.1(a)(v),** all invention disclosures and utility models related thereto and ideas and inventions disclosed and claimed therein, all patent applications claiming the benefit of the filing date of any such patent or patent application, all continuations, divisionals, renewals, substitutes, extensions, conversions, continuations-in-part, reissues, provisionals, reexaminations or other equivalents thereof, and all patents issuing in respect of any of the foregoing) (the "*Patent Rights*");

(vi)     all documentation (whether in tangible or intangible format), files, and original documents owned or controlled by Seller that are in Seller's possession and which, in each case, directly or indirectly relate to the other Purchased Assets (collectively, the "*Documentation*"), including, but not limited to, (i) artists' notes or logs, layouts, and any other designs, plans, drawings, documentation, notebooks, materials, supplier lists, net lists, photographs, blueprints, media, memoranda and white papers (ii) business plans, presentations and market research developed by Borrower and (iii) those relating to Borrower's Intellectual Property Rights, including all applications and patents included in the Patent Rights and Patents, all applications and trademarks included in the Trademark Rights, and all applications for copyright registration and copyright registrations included in the Copyright Rights, and (iv) those set forth on **Schedule 2.1(a)(vi)**;

(vii)     all rights of the Borrower in and to all data and information held by or used by the Borrower, however stored or recorded, arising from or related to the Works, the Copyright Rights, the Trademark Rights, the Patents, the Patent Rights, the Licenses, or otherwise, that is maintained confidentially by the Borrower and which provides the Borrower with a competitive advantage through its confidential status, including any and all trade secrets, know how, proprietary processes and formula, and other proprietary information and technologies incorporated or embodied in, or related to, the Borrower's business (collectively, the "*Trade Secret Rights*") and those set forth on **Schedule 2.1(a)(vii)**; and

(viii)     all domain name registrations, IP addresses, network addresses and the like and the applications therefor listed on **Schedule 2.1(a)(viii)** (the "*Domain Names*");

(b)     Except as specifically excluded under **Section 2.2**, all causes of action, rights of recovery and rights of set-off owned by Seller, including but, not limited to any and all enforcement rights to pursue damages, injunctive relief and other remedies, whether currently pending, filed, or otherwise, for the Intellectual Property Rights, and all rights to profits and damages due or accrued, arising out of or in connection with, any and all past, present or future infringement, misappropriation or other violation of the Intellectual Property Rights, including all rights to pursue damages, injunctive relief and other remedies for past, current and future infringement of the Intellectual Property Rights, and all rights of Seller to collect royalties under the Intellectual Property Rights and those causes of action and rights of recovery and rights of set-off set forth on **Schedule 2.1(b)**;

(c)     All rights and privileges of Seller under the contracts, agreements, leases and licenses listed on **Schedule 2.1(c)** (the "*Assumed Contracts*");

(d)     All vested rights and privileges of Seller under or relating to any contracts or leases to which Seller is or was a party that are not capable of being assumed and/or assigned under Section 365 of the Bankruptcy Code, including but not limited to those set forth on **Schedule 2.1(d)**;

(e)     All equipment (including, but not limited to, office equipment), computers, servers, workstations, printers, machines, materials, prototypes, tools, supplies, vehicles, furniture, fixtures, and improvements to the foregoing (including, but not limited to, the tangible assets identified on **Schedule 2.1(e)**); provided, however, that, Seller and any successor to Seller, including any trustee appointed in the Bankruptcy Case, shall be provided with reasonable access to any information on Seller's computer system in existence as of the Closing Date for a period of six (6) months;

(f)     All real property and any personal or mixed property, whether tangible or intangible, including but not limited to those set forth on **Schedule 2.1(f)**;

(g)     All deposits and prepaid expenses, including but not limited to those set forth on **Schedule 2.1(g)**;

(h)     All cash, cash equivalents and bank accounts owned by Seller at the Closing Date, including but not limited to those set forth on **Schedule 2.1(h)**;

(i)     All business development, positioning, marketing and sales related material;

(j)     All goodwill and other intangibles owned by Seller;

(k)     All raw materials, work-in-process, finished goods and merchandise, packaging materials and other supplies related thereto that are owned by Seller, including but not limited to those set forth on **Schedule 2.1(k)**;

**(l)** All of Seller's rights, title and interest in and to any and all Permits, licenses, permits, approvals and authorizations by a federal, state, local or foreign governmental or non-governmental board, bureau, agency or regulatory body owned by Seller, to the extent transferable or assignable, including but not limited to those set forth on **Schedule 2.1(l)**;

**(m)** All of Seller's telephone, cell phone, and facsimile numbers, e-mail listings and addresses, web sites, post office boxes, and all listings in all telephone books, directories, and web sites, including but not limited to those set forth on **Schedule 2.1(m)**;

**(n)** All rights of Seller under insurance policies covering the Purchased Assets or the Business, including but not limited to those set forth on **Schedule 2.1(n)**, but expressly excluding all rights of Seller under any director and officers insurance policies;

**(o)** All rights of Seller in and to any subsidiary companies, including those set forth on **Schedule 2.1(o)**;

**(p)** All avoidance actions under Section 547 of the Bankruptcy Code against vendors and suppliers of goods and services (but not, in any event, employees) that are party to Assumed Contracts;

**(q)** All client and customer lists related to the Business; and

**(r)** Any other asset listed on **Schedule 2.1(r)**.

    **2.2** <u>Excluded Assets</u>. Notwithstanding anything to the contrary herein, Seller shall not cause to be sold, assigned, transferred, conveyed or delivered, to Purchaser, and Purchaser shall not purchase, and the Purchased Assets shall not include, any right, title or interest of Seller in, any of the following assets (the "***Excluded Assets***"):

**(a)** All rights of Seller under this Agreement and the Ancillary Agreements;

**(b)** All corporate records, including without limitation, accounting documents, tax returns, audit materials, legal records, board and stockholder minutes and related correspondence, <u>provided</u>, <u>however</u>, Purchaser shall be granted reasonable access to, and the right to make copies of, any such documents;

**(c)** All human resources material including without limitation employment and compensation records and benefits information;

**(d)** All executory contracts and unexpired leases that are not Assumed Contracts, including, but not limited to, those set forth on **Schedule 2.2(d)**;

**(e)** All bankruptcy avoidance claims of Seller, including, without limitation, any claims arising under Sections 544, 545, 547, 548 549, 550 and 551 of the Bankruptcy Code, provided, however, avoidance actions under Section 547 of the Bankruptcy Code against vendors and suppliers of goods and services (but not, in any event, employees) that are party to Assumed Contracts shall constitute Purchased Assets under Section 2.2(p);

**(f)** All causes of action that the Seller may hold against any current or former director, officer, employee, advisor of the Company for breach of fiduciary duty or claims of a similar nature, and

**(g)** Any Hazardous Substances.

**2.3** Assumed and Excluded Liabilities.

**(a)** Subject to the terms and conditions of this Agreement, Purchaser shall, on the Closing Date (or to the extent an executory contract or unexpired lease is designated for assumption and assignment after the Closing Date, the date of such designation), assume, perform and discharge when due the responsibilities, liabilities and obligations of Seller under the Assumed Contracts arising after the Closing Date (or to the extent an executory contract or unexpired lease is designated for assumption and assignment after the Closing Date, the date of such designation) as well as Seller's cure obligations under Section 365 of the Bankruptcy Code (the "*Assumed Liabilities*"); provided, however, Purchaser's obligation to pay any cure obligations related to such Assumed Contracts shall not exceed $500,000, and any cure obligations in excess of $500,00 shall be an Excluded Liability; and provided further, however, Purchaser shall have no obligation to designate any executory contracts or unexpired leases for assumption and assignment or to pay any minimum amount of cure obligations.

**(b)** Seller shall retain, and shall be responsible for paying or performing when due, or discharging, and the Purchaser shall not assume or have any responsibility for, all liabilities of Seller not expressly assumed by Purchaser pursuant to **Section 2.3(a)** of this Agreement (the "*Excluded Liabilities*"). The term Excluded Liabilities shall specifically include, without limitation:

**(i)** the Environmental Liabilities;

**(ii)** Taxes accruing during the Pre-Closing Tax Period;

**(iii)** all liabilities arising out of or relating to the Excluded Assets;

**(iv)** any liabilities of Seller under this Agreement;

**(v)** any and all liabilities and obligations relating to Seller's conduct of the Business prior to the Closing, current and former employees or contractors of Seller, and any and all trade payables or other accounts payable of Seller; and

**(vi)** any liabilities and obligations under contracts or agreements between Seller and any other party (except as set forth in **Section 2.3(a)** above).

**2.4** Closing. Subject to the terms and conditions of this Agreement, the Closing shall take place at the offices of Wollmuth Maher & Deutsch LLP, 500 Fifth Avenue, New York, New York 10110, at 10:00 a.m. on May 2, 2011, or at such other place and time as the parties agree orally or in writing.

**2.5**    Consideration.    The aggregate consideration to be paid by Purchaser for the Purchased Assets (the "***Purchase Price***") shall be the following:

(**a**)    a cash amount equal to $1,750,000, payable by Purchaser to Seller at Closing by wire transfer or immediately available funds (the "***Cash Payment***"); provided, however, that Purchaser shall be entitled to set off against such obligation any of Seller's obligations to Purchaser, as Lender, under the DIP Loan;

(**b**)    assumption of the Assumed Liabilities;

(**c**)    the Purchase Price shall be allocated among the Purchased Assets as set forth on **Schedule 2.5(c)**; and

(**d**)    as of the date hereof, Seller shall be deemed to have received a deposit from Purchaser in the amount of $50,000 (the "**Deposit**") based on amounts advanced to Seller under the DIP Loan.    In the event of a termination of this Agreement by Seller pursuant to Section 7.1(b)(i), the Deposit shall be disbursed to Seller as provided in Section 7.2(b)(iii).

**2.6**    Delivery.    Subject to entry of the Sale Approval Order, at the Closing:

(**a**)    Purchaser shall deliver the Cash Payment to Seller;

(**b**)    Seller shall deliver to Purchaser the Purchased Assets;

(**c**)    Seller shall deliver to Purchaser an executed and notarized original of the Copyright Assignment Agreement in the form attached as **Exhibit B** hereto;

(**d**)    Seller shall deliver to Purchaser an executed and notarized original of the Patent Assignment Agreement in the form attached as **Exhibit C** hereto;

(**e**)    Seller shall deliver to Purchaser an executed and notarized original of the Trademark Assignment Agreement in the form attached as **Exhibit D** hereto;

(**f**)    Seller shall deliver to Purchaser an executed Bill of Sale in the form attached as **Exhibit E** hereto;

(**g**)    Seller and Purchaser shall execute and deliver the Assignment and Assumption Agreement in the form attached as **Exhibit F** hereto;

(**h**)    Seller shall deliver to Purchaser all necessary consents to assignment related to the Assumed Contracts;

(**i**)    Seller shall deliver to Purchaser such other and further documents as Purchaser shall reasonably request to demonstrate the purchase and sale of the Purchased Assets by the Purchaser as contemplated herein;

(**j**)    Seller shall deliver a certified copy of the Sale Approval Order; and

**(k)**     Seller shall deliver a copy of the Bankruptcy Court's docket sheet for the Bankruptcy Case evidencing that there has been no appeal or stay of the Sale Approval Order.

**2.7**     Possession.  Subject to entry of the Sale Approval Order, right to possession of the Purchased Assets shall transfer to Purchaser on the Closing Date.  Seller shall transfer and deliver to Purchaser on the Closing Date such keys, lock and safe combinations and other similar items as Purchaser shall require to obtain immediate and full occupation and control of the Purchased Assets, and shall also make available to Purchaser at Seller's then existing locations all documents in Seller's possession that are required to be transferred to Purchaser by this Agreement.

**2.8**     Non-Assignable Permits.

**(a)**     To the extent that any Permit included among the Purchased Assets is not capable of being assigned to Purchaser at the Closing without the Consent of the issuer thereof, or if such assignment or attempted assignment would constitute a breach thereof, or a violation of any applicable federal, state, local or foreign law, statute, ordinance, rule, regulation, order, judgment or decree, administrative order or decree, administrative or judicial decision, and any other executive or legislative proclamation (collectively "**Laws**"), neither this Agreement nor any instrument of assignment delivered pursuant to this Agreement (including the instruments referred to in Sections 2.6(a) through 2.6(i)) shall constitute an assignment thereof, or an attempted assignment, unless such Consent has been obtained or such violation of Law has been remedied to Purchaser's satisfaction.

**(b)**     In the event that any Consent referred to in **Section 2.8(a)** has not been obtained prior to the Closing, and Purchaser nevertheless determines to effect the Closing, Seller shall use commercially reasonable efforts, and Purchaser shall cooperate with Seller, to obtain each such Consent and to resolve the impracticalities of assignment referred to in Section 2.8(a) after the Closing; provided, however, that each party shall bear its own costs and expenses, and neither Seller nor Purchaser shall be obligated to pay any consideration therefor to the Person from whom the Consent is requested (other than filing and similar fees payable to any Governmental Entity customarily paid in connection with transactions of the type contemplated hereby).

**(c)**     To the extent that Consents referred to in **Section 2.8(a)** have not been obtained by Seller prior to the Closing, and Purchaser nevertheless determines to effect the Closing, until the impracticalities of assignment referred to in **Section 2.8(a)** hereof are resolved, Seller shall use commercially reasonable efforts to (i) provide Purchaser the benefits of any Permit referred to in **Section 2.8(a)**, (ii) cooperate in any reasonable and lawful arrangement designed to provide such benefits to Purchaser, without incurring any financial obligation to Purchaser provided, however, that Seller shall not be obligated to pay any consideration or incur any costs to provide such cooperation, and (iii) enforce for the account and benefit of Purchaser any and all rights of Seller arising from the Permits referred to in **Section 2.8(a)** against such issuer thereof (including the right to elect to terminate in accordance with the terms thereof on the advice of Purchaser), provided, however, that Seller shall not be obligated to pay any consideration or incur any costs to enforce such rights for Purchaser's account and benefit.

**(d)** To the extent that Purchaser is provided the benefits pursuant to Section 2.8(c) of any Permit, Purchaser shall perform, on behalf of Seller, for the benefit of the issuer thereof, and/or all other parties thereto, the obligations of Seller thereunder or in connection therewith, but only to the extent that (i) such action by Purchaser would not result in any material default thereunder or in connection therewith and (ii) such obligation would have been an Assumed Liability but for the non-assignability or non-transferability thereof.

**2.9** <u>Transfer Taxes</u>. Provided that the Sale Approval Order includes the finding set forth in **Section 5.5(d)(xiii)** in accordance with section 1146(a) of the Bankruptcy Code, the making or delivery of any instrument of transfer, including the filing of any deed or other document of transfer to evidence, effectuate or perfect the rights, transfers and interest contemplated by this Agreement, shall be in contemplation of a plan to be confirmed under section 1129 of the Bankruptcy Code in the Bankruptcy Case, and such shall be free and clear of any and all transfer tax, stamp tax or similar taxes. Such instruments, orders and agreements transferring the Purchased Assets to Purchaser shall contain the following endorsement:

> "Because this [instrument] has been authorized pursuant to an order of the United States Bankruptcy Court for the Southern District of New York in contemplation of a chapter 11 plan of the Grantor, it is exempt from transfer taxes, stamp taxes or similar taxes pursuant to 11 U.S.C. §1146(a)."

If such transfer, stamp or similar taxes are ultimately payable, notwithstanding section 1146(a) of the Bankruptcy Code or for any other reason, Seller shall pay any and all such transfer, stamp or similar taxes, which may be payable by reason of the transaction contemplated in this Agreement and any and all claims, charges, interest or penalties assessed, imposed or asserted in relation to any such taxes.

**3.** **REPRESENTATIONS AND WARRANTIES OF SELLER**

Seller hereby represents and warrants to Purchaser that, subject to entry of the Sale Approval Order and except as set forth in the Disclosure Schedule, the statements in this **Section 3** are and shall be true and correct as of the Closing Date.

**3.1** <u>Authority</u>. Seller is a company duly organized and in good standing under the laws of the State of New York. Seller has all requisite power and authority to execute and deliver this Agreement and the Ancillary Agreements to which it is or shall, pursuant to this Agreement, be a party, and to perform, carry out and consummate the transactions contemplated hereby and thereby. The execution, delivery and performance of this Agreement and the Ancillary Agreements to which it is or shall, pursuant to this Agreement, be a party have been duly authorized by all necessary action on the part of Seller. This Agreement has been duly executed and delivered by Seller and constitutes the legal, valid and binding obligation of Seller, enforceable against Seller in accordance with its terms.

**3.2** <u>Title</u>. Upon the Closing and transfer to Purchaser of the Purchased Assets, Purchaser shall receive good and marketable title to all of the Purchased Assets free and clear of any and all Encumbrances, pursuant to section 363 of the Bankruptcy Code and any other applicable sections of the Bankruptcy Code and as set forth in the Sale Approval Order.

**3.3** <u>Consents</u>. The execution, delivery and performance of this Agreement and the Ancillary Agreements and the consummation of the transactions contemplated thereby by Seller does not and will not require the consent, approval, authorization or other order of, action by, filing with or notification to, any governmental agency or any other third party other than the Bankruptcy Court.

**3.4** <u>Brokers</u>. No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the origination, negotiation or execution of this Agreement and the Ancillary Agreements or the transactions contemplated by this Agreement and the Ancillary Agreements based upon arrangements made by or on behalf of Seller.

**3.5** <u>Litigation</u>. There is no action, suit, proceeding or investigation pending or, to Seller's knowledge, currently threatened against Seller that questions the validity of this Agreement or any Ancillary Agreement, or the right of Seller to enter into such agreements, or to consummate the transactions contemplated hereby or thereby, or that, to Seller's knowledge, could result, either individually or in the aggregate, in any Material Adverse Effect, nor is Seller aware that there is any basis for the foregoing.

**3.6** <u>Intellectual Property</u>. Seller has sufficient title and ownership of or licenses to all Intellectual Property Rights, Works, Software, Documentation and all information, proprietary rights and processes necessary for its business as now conducted and as proposed to be conducted, without any violation or infringement of the rights of others, except for such items as have yet to be conceived or developed. Each Intellectual Property Right is valid, subsisting and enforceable; all necessary registration, maintenance and renewal fees due and owing in connection with such Intellectual Property Rights have been paid; and all necessary documents and certificates required to be filed in connection with the Intellectual Property Rights have been filed with the applicable authorities in the US or foreign jurisdictions. No governmental registration of any of the Patent Rights has lapsed, expired or been cancelled, abandoned, opposed or the subject of a reexamination request. Seller has taken appropriate steps to protect and preserve the confidentiality of the Trade Secret Rights, including but not limited to through the diligence process approved by the Bidding Procedures Order. **Schedule 2.1** to this Agreement contains a complete list of the Works, Software, Patents and patent applications and registrations and applications for trademarks, copyrights and Domain Names of Seller. There are no outstanding options, licenses, agreements, claims, encumbrances or shared ownership of interests of any kind relating to anything referred to in this **Section 3.6** that is to any extent owned by or exclusively licensed to Seller; nor is Seller bound by or a party to any options, licenses or agreements of any kind with respect to the Intellectual Property Rights, information, proprietary rights and/or processes of any other person or entity, except, in either case, for standard end-user, object code, internal-use software license and support/maintenance agreements. Seller has not received any communications alleging that Seller has violated any of

the patents, trademarks, service marks, trade names, copyrights or Trade Secrets or other proprietary rights of any other person or entity and Seller is not aware of any basis for such an allegation or of any reason to believe that such an allegation may be forthcoming. Seller has not used, modified, or distributed any materials incorporating any third party intellectual property or other proprietary rights (including, without limitation, any "freeware" or software obtained pursuant to any open source, community source, copyleft or similar license arrangement). Seller's business as currently conducted does not and will not result in any requirement that Seller publish, disclose or otherwise make available any source code for its (or any of its respective licensors) respective proprietary software, libraries, firmware or other computer programs. Seller does not believe it is or will be necessary to utilize any inventions or original works of authorship of any of its employees made prior to or outside the scope of their employment by Seller. Seller is the exclusive owner of all Intellectual Property Rights free and clear of any mortgage, lien, pledge, charge, security interest or encumbrance of any kind. The execution and delivery of this Agreement will provide Purchaser with unrestricted rights to use and exploit the Copyright Rights, the Trademark Rights, the Patent Rights and other Intellectual Property Rights to the extent permitted by law or regulation.

4.  **REPRESENTATIONS AND WARRANTIES OF PURCHASER**

Purchaser hereby represents and warrants to Seller as follows:

**4.1**  Authority. Purchaser is a corporation organized and in good standing under the laws of the State of New York. Purchaser has the right and authority to enter into, execute, deliver and perform this Agreement and the Ancillary Agreements and to carry out the obligations hereunder and thereunder, without the need for any further approval of its officers and directors. All action on Purchaser's part required for the lawful execution and delivery of this Agreement and the License Agreement has been taken. Upon its execution and delivery by Purchaser, this Agreement and the License Agreement will be valid and binding obligations of the Purchaser in accordance with their respective terms.

**4.2**  Compliance with Other Instruments. The execution, delivery and performance of this Agreement and the Ancillary Agreements, and the consummation of the transactions contemplated hereby and thereby will not result in any such violation or default or be in conflict with or constitute, with or without the passage of time and giving of notice, either a default under any such provision, instrument, judgment, order, writ, decree or contract or an event that results in the creation of any lien, charge or encumbrance upon any of its material properties or assets.

**4.3**  Brokers. No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the origination, negotiation or execution of this Agreement and the Ancillary Agreements or the transactions contemplated by this Agreement and the Ancillary Agreements based upon arrangements made by or on behalf of Purchaser.

**4.4**  Litigation. There is no action, suit, proceeding or investigation pending or, to Purchaser's knowledge, currently threatened in writing against Purchaser that questions the

validity of this Agreement or any Ancillary Agreement, or the right of Purchaser to enter into such agreements, or to consummate the transactions contemplated hereby or thereby.

## 5. COVENANTS

**5.1** Conduct of Business of Seller. From the date hereof and until the Closing Date, except as contemplated by this Agreement or expressly consented to by an instrument in writing signed by Purchaser, Seller shall: (i) maintain and preserve the Purchased Assets in good repair, order and condition, including, without limitation, performing, in a manner and on a basis consistent with past practice, all periodic maintenance and necessary reconditioning, (ii) endeavor in good faith to preserve its business operations and organizations intact, (iii) endeavor in good faith to preserve its current advantageous business relationships, including, without limitation, the goodwill of its customers and suppliers and others having business relationships with it, and (iv) not enter into any agreement or make any other commitment involving an amount in excess of $25,000. Without limiting the generality of the foregoing, and, except as contemplated in this Agreement, prior to the Closing Date Seller shall use all commercially reasonable efforts to not take any action that would result in the incorrectness as of the Closing Date of any representation and warranty contained in **Section 3** without the prior written consent of Purchaser.

**5.2** Seller Records. Prior to the Closing Date, Seller shall afford Purchaser, its attorneys, accountants and representatives, free and full access to Seller's Business, books, records and employees, and shall provide to Purchaser and its representatives such additional financial and operating data and other information as Purchaser shall from time to time reasonably request.

**5.3** Filings and Authorizations. Each of Seller and Purchaser, as promptly as practicable, (i) shall make, or cause to be made, all such filings and submissions under laws, rules and regulations applicable to it, as may be required to consummate the transactions contemplated herein, in accordance with the terms of this Agreement, (ii) shall use all commercially reasonable efforts to obtain, or cause to be obtained, all authorizations, approvals, consents and waivers from all Governmental Entities and non-governmental Persons necessary to be obtained by it, in order to consummate the transactions contemplated herein; provided, however, that, any provision hereof to the contrary notwithstanding, Seller shall have no obligation to pay any fee to any third party (other than any lawful fees assessed by a Governmental Entity) for the purpose of obtaining any Consent or any costs and expenses of any third party resulting from the process of obtaining such Consent, and (iii) shall use commercially reasonable efforts to take, or cause to be taken, all other actions necessary, proper or advisable in order for him, her or it to fulfill his, her or its obligations hereunder. Seller and Purchaser shall coordinate and cooperate with one another in exchanging such information and supplying such reasonable assistance as may be reasonably requested by each in connection with the foregoing.

**5.4** Further Assurances. Simultaneous with the Closing, Seller shall take such steps as may be necessary to put Purchaser in possession and operating control of the Purchased Assets and the Business. At or after the Closing, Seller shall, at the reasonable request of Purchaser, without further consideration, promptly execute and deliver, or cause to be executed and

delivered, to Purchaser such assignments, bills of sale, consents and other instruments in addition to those required by this Agreement, in form and substance reasonably satisfactory to Purchaser, and take all such other actions as Purchaser may reasonably deem necessary or desirable to implement any provision of this Agreement and to more effectively transfer to and vest in Purchaser, and to put Purchaser in possession of, all of the Purchased Assets, free and clear of any and all Encumbrances.

**5.5** <u>Bankruptcy Covenants</u>.

**(a)** <u>Cure of Defaults</u>. Seller shall promptly, on or prior to the Closing Date, cure any and all defaults and breaches and satisfy any liability or obligation arising from or relating to pre-Closing periods under the Assumed Contracts, except as expressly assumed by Purchaser under this Agreement, so that such Assumed Contracts may be assigned by Seller to Purchaser in accordance with the provisions of section 365 of the Bankruptcy Code, the Sale Approval Order, any other orders of the Bankruptcy Court effectuating such assignments, and this Agreement.

**(b)** <u>Motions, Orders, etc.</u> Seller shall promptly provide Purchaser with the proposed final drafts of all documents, motions, orders, or pleadings that Seller proposes to file with the Bankruptcy Court relating to the approval of this Agreement, the Purchased Assets, or the consummation of the transactions contemplated hereby, or any provision therein or herein, and shall provide Purchaser and its counsel with a reasonable opportunity to review and comment on such documents, motions, orders, or pleadings.

**(c)** <u>Bidding Procedures Order</u>. Without limiting the generality of the foregoing Section 5.5(b), the order to approve the bidding procedures (the "***Bidding Procedures Order***") shall include provisions, among other things (i) setting the earliest available date for a hearing to approve the sale of the Purchased Assets (the "***Sale Hearing***"), (ii) authorizing Seller to conduct an auction (the "***Auction***") of the Purchased Assets in the event that qualified bids are received for the sale of the Purchased Assets in accordance with the Bidding Procedures Order and setting a date for such Auction, (iii) establishing bidding procedures acceptable to Purchaser, (iv) approving the selection of Purchaser as the stalking horse bidder, (v) approving the payment of a fixed break-up fee of $20,000 (the "***Break-up Fee***") plus reasonable expenses incurred by Purchaser up to $25,000 through the Auction or termination of this Agreement by Seller pursuant to **Section 7.1(b)(ii)** of this Agreement or by Purchaser pursuant to **Section 7.1(b) or (c)** of this Agreement, including but not limited to any financing commitment fees (the "***Expense Reimbursement***"), in the event that Purchaser is not the successful bidder at the Auction or this Agreement is terminated by Seller pursuant to **Section 7.1(b)(ii)** of this Agreement or by Purchaser pursuant to **Section 7.1(b) or (c)** of this Agreement, which payment shall be made to Purchaser concurrently with the receipt by Seller of any proceeds (including the proceeds of a deposit in the event of a default by such third party purchaser) in connection with such third party sale or within five (5) Business Days of a termination of this Agreement by Seller pursuant to **Section 7.1(b)(ii)** of this Agreement or by Purchaser pursuant to **Section 7.1(b) or (c)** of this Agreement, (vi) providing that Purchaser's claim to the Break-up Fee and the Expense Reimbursement shall be entitled to administrative expense claim treatment in the Bankruptcy Case (vii) providing that no prospective purchaser will be permitted to bid at the Auction unless

such party has been deemed "qualified" in accordance with objective criteria set forth in the Bidding Procedures Order, which at a minimum, shall require any such prospective purchaser to provide documentation establishing that such prospective purchaser has sufficient cash on hand or a binding financial commitment from an established financial institution or other credit worthy party to ensure such prospective purchaser's ability to meet its commitments pursuant to its bid, (viii) providing that no prospective purchaser who bids for the Purchased Assets at the Auction shall be entitled to purchase the Purchased Assets unless such prospective purchaser submits to Seller in writing in accordance with the Bidding Procedures Order a bid at least equal to $200,000 greater than the consideration set forth in this Agreement (including all cash, non-cash consideration and assumed liabilities), and then $50,000 greater for any additional incremental bid, accompanied by a commitment to proceed to a closing on contractual terms at least as favorable to Seller as those set forth in this Agreement plus a cash deposit of $200,000, (ix) requiring Seller to provide to Purchaser, upon receipt thereof, a copy of any and all bids received by Seller, (x) providing that Purchaser is authorized under Section 363(k) of the Bankruptcy Code to credit bid the outstanding obligations under the DIP Loan in connection with the Auction and in connection with any other sale or disposition of Seller's assets in the Bankruptcy Case, and (xi) authorizing any other procedural matters that Seller and Purchaser reasonably deem appropriate. Should overbidding take place, Purchaser shall have the right, but not the obligation, to participate in the overbidding and to be approved as the successful overbidder at the Sale Hearing based upon any such overbid, provided, however, that Purchaser shall receive a credit against any amounts due under the DIP Loan. To the extent there is any inconsistency between this paragraph and the Bidding Procedures Order, the Bidding Procedures Order shall govern. Seller shall promptly notify Purchaser of any hearing relating to the approval of the bidding procedures or this Agreement or the consummation of the transactions contemplated hereby.

(d)    Sale Approval Order.    Without limiting the generality of the foregoing Section 5.5(b), the sale approval order, in the form annexed hereto as **Exhibit I** (the "*Sale Approval Order*"), shall be acceptable in form and substance to Purchaser and shall include provisions, among other things (i) providing that Purchaser shall not incur any liability as a successor to the Business, (ii) approving the sale of the Purchased Assets to Purchaser on the terms and conditions set forth in this Agreement and authorizing Seller to proceed with this transaction, (iii) stating that any objections filed with respect to the sale of the Purchased Assets, which have not been withdrawn, are overruled or the interests of such objections have been otherwise satisfied or adequately provided for by the Bankruptcy Court, (iv) finding that the Purchase Price represents fair value for the Purchased Assets, (v) finding that the sale is in the best interests of Seller's estate and creditors, (vi) finding that Purchaser is a good faith purchaser of the Purchased Assets under section 363(m) of the Bankruptcy Code and that the provisions of section 363(n) of the Bankruptcy Code have not been violated, (vii) providing that the sale of the Purchased Assets to Purchaser shall be free and clear of all Encumbrances whatsoever under section 363 of the Bankruptcy Code and any other applicable sections of the Bankruptcy Code, (viii) providing that the Bankruptcy Court shall retain jurisdiction, among other things, for the purpose of enforcing the provisions of the Sale Approval Order including, without limitation, compelling delivery of the Purchased Assets to Purchaser and protecting Purchaser against any Encumbrances against Seller or the Purchased Assets, (ix) finding that there are no brokers

involved in consummating the sale and no brokers' commissions are due, (x) providing that the parties hereto shall be authorized to close this transaction immediately upon execution of the Sale Approval Order pursuant to Rules 6004(g) and 6006(d) of the Federal Rules of Bankruptcy Procedure, (xi) authorizing and directing Seller to execute, deliver, perform under, consummate and implement this Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the foregoing, (xii) determining that Purchaser is not a successor to Seller or otherwise liable for any of the Excluded Liabilities or Excluded Assets and permanently enjoining each and every holder of any of the Excluded Liabilities or Excluded Assets from commencing, continuing or otherwise pursuing or enforcing any remedy, claim, cause of action or Encumbrance against Purchaser or the Purchased Assets related thereto, (xiii) finding that, pursuant to section 1146(a) of the Bankruptcy Code, the within transaction is "in contemplation of a plan to be confirmed under section 1129 of the Bankruptcy Code in the Bankruptcy Case," and as such shall be free and clear of any and all transfer tax, stamp tax or similar taxes. Seller shall file a motion, in a form acceptable to Purchaser, for entry of the Sale Approval Order, which motion may be made a part of the motion seeking approval of the Bidding Procedures Order, within one Business Day of filing the Bankruptcy Case. Seller shall use its best efforts to obtain the earliest available date for a hearing to approve the Sale Approval Order. To the extent that there is any inconsistency between this paragraph and the Sale Approval Order, the Sale Approval Order shall govern.

(e)    Assumed Contracts.  Seller shall not reject under section 365 of the Bankruptcy Code, waive or release any of its rights under, amend or otherwise modify any of the Assumed Contracts without the prior written consent of Purchaser. Seller shall obtain an order or orders (which may include the Sale Approval Order) in a form satisfactory to Purchaser (collectively the "**Contract Assumption Order**"), among other things (i) approving the assumption and assignment of the Assumed Contracts to Purchaser pursuant to, and subject to the provisions of, section 365 of the Bankruptcy Code; (ii) providing that all defaults of Seller under the Assumed Contracts arising or accruing prior to the date of the Closing or the Contract Designation Deadline (if assumed after the Closing), without giving effect to any acceleration clauses or any default provisions in such contracts of a kind specified in section 365(b)(2) of the Bankruptcy Code, have been cured or will be promptly cured by Seller so that Purchaser shall have no liability or obligation with respect to any default or obligation arising or accruing prior to the date of the Closing or the Contract Designation Deadline (if assumed after the Closing) or in respect of any cure obligations, except as may otherwise be specifically agreed as set forth in this Agreement; (iii) providing that the Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, Purchaser, notwithstanding any provision in any such Assumed Contract or in applicable Law (including those described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or limits in any way such assignment or transfer; (iv) providing that Purchaser shall have at least thirty (30) days following the Closing to designate which executory contracts and unexpired leases shall be assumed and assigned to Purchaser in connection with the sale and which ones should be rejected (the "**Contract Designation Deadline**"); provided, however, that to the extent Purchaser does not designate an executory contract for assumption and assignment or rejection before the Closing, then Purchaser shall be obligated to pay or cause to be paid all amounts due in respect of Seller's performance under such executory contract or unexpired lease from the Closing through the date Purchaser

designates such executory contract or unexpired lease for assumption and assignment or rejection; and (v) providing that if following the Contract Designation Deadline, Seller or Purchaser identifies an executory contract or unexpired lease that has not previously been designated for assumption and assignment, and such executory contract or unexpired lease is important to Purchaser's ability to use or hold the Purchased Assets or operate its businesses in connection therewith, Seller will promptly assume such executory contract or unexpired lease and assign it to Purchaser without any adjustment to the Purchase Price, provided that Purchaser consents and agrees at such time to (i) assume such executory contract or unexpired lease and (ii) pay any cure obligation under Section 365 of the Bankruptcy Code in respect thereof. Seller shall file a motion, in a form acceptable to Purchaser, for entry of the Contract Assumption Order within one Business Day of filing the Bankruptcy Case. Seller shall use its best efforts to obtain the earliest available date for a hearing to approve the Contract Assumption Order.

(f) Other Bankruptcy Covenants. Seller shall promptly make any filings, take all actions, and use commercially reasonable efforts to obtain any and all other approvals and orders necessary or appropriate for consummation of the sale of the Purchased Assets, subject to its obligations to comply with any order of the Bankruptcy Court. In the event an appeal is taken, or a stay pending appeal is requested, from any of the foregoing orders of the Bankruptcy Court, Seller shall immediately notify Purchaser of such appeal or stay request and, upon Purchaser's request, shall provide to Purchaser within one (1) business day after Seller's receipt thereof a copy of the related notice of appeal or order of stay. Seller shall also provide Purchaser with written notice of any motion, application, brief or other pleading filed in connection with any appeal from any of such orders.

5.6 Apportioned Obligations. All real property Taxes, personal property Taxes and similar ad valorem obligations levied with respect to the Purchased Assets for a taxable period which includes (but does not end on) the Closing Date (collectively, the "*Apportioned Obligations*") shall be apportioned between Seller and Purchaser based on the number of days of such taxable period included in the Pre-Closing Tax Period and the number of days of such taxable period included in the Post-Closing Tax Period. Seller shall be liable for the proportionate amount of such Taxes that is attributable to the Pre-Closing Tax Period, and Purchaser shall be liable for the proportionate amount of such Taxes that is attributable to the Post-Closing Tax Period. Upon receipt of any bill for real or personal property taxes relating to the Purchased Assets, each of Seller and Purchaser shall present a statement to the other setting forth the amount of reimbursement to which each is entitled under this **Section 5.6** together with such supporting evidence as is reasonably necessary to calculate the proration amount. The proration amount shall be paid by the party owing it to the other within ten (10) Business Days after delivery of such statement. In the event that either Seller or Purchaser shall make any payment for which it is entitled to reimbursement under this **Section 5.6**, the other party shall make such reimbursement promptly but in no event later than ten (10) Business Days after the presentation of a statement setting forth the amount of reimbursement to which presenting party is entitled along with such supporting evidence as is reasonably necessary to calculate the amount of reimbursement. Purchaser shall notify Seller's Representative of any audit or examination of the Apportioned Obligations. The Seller's Representative shall have the right to participate in any such audit or examination and Purchaser shall not settle any such audit or examination

without the consent of Seller's Representative, which consent shall not be unreasonably withheld.

## 6. CONDITIONS PRECEDENT TO CLOSING.

**6.1** <u>Conditions Precedent to Obligations of Purchaser</u>. The obligation of Purchaser under this Agreement to consummate the transactions contemplated by this Agreement on the Closing Date shall be subject to the satisfaction, at or prior to the Closing Date, of all of the following conditions, any one or more of which may be waived by Purchaser:

**(a)** <u>Representations and Warranties Accurate</u>. The representations and warranties of Seller contained in this Agreement which are qualified as to materiality shall be true and correct in all respects, and those not so qualified shall be true and correct in all material respects, as of the date of this Agreement and as of the Closing Date with the same force and effect as though made on and as of the Closing Date.

**(b)** <u>Performance by Seller</u>. Seller shall have performed and complied in all material respects with all covenants and agreements required to be performed or complied with by such Person hereunder on or prior to the Closing Date.

**(c)** <u>Consents</u>. All Consents required in connection with the consummation of the transactions contemplated by this Agreement and the Closing (including those set forth on **Schedule 6.1(c)** hereto) shall have been duly obtained, made or given and shall be in full force and effect, without the imposition upon Purchaser or Seller of any condition, restriction or required undertaking.

**(d)** <u>No Legal Prohibition</u>. No suit, action, investigation, inquiry or other proceeding by any Governmental Entity or other Person shall have been instituted or threatened which arises out of or relates to this Agreement, or the transactions contemplated hereby and no injunction, order, decree or judgment shall have been issued and be in effect or threatened to be issued by any Governmental Entity of competent jurisdiction, and no statute, rule or regulation shall have been enacted or promulgated by any Governmental Entity and be in effect, which in each case restrains or prohibits the consummation of the transactions contemplated hereby.

**(e)** INTENTIONALLY OMITTED.

**(f)** <u>Completion of Disclosure Schedules</u>. Seller shall have completed and delivered the Disclose Schedules to Purchaser, and the Disclosure Schedules shall be acceptable to Purchaser in its sole discretion.

**(g)** <u>No Material Adverse Effect</u>. No Material Adverse Effect shall have occurred and no other event, loss, damage, condition or state of facts of any kind shall exist which has a Material Adverse Effect or can reasonably be expected to have a Material Adverse Effect.

**(h)** <u>Additional Documents, etc.</u>  There shall have been delivered to Purchaser each of the agreements, documents, certificates and other items set forth on **Schedule 6.1(h)** of this Agreement, including those required by **Section 2.6** of this Agreement.

**(i)** <u>Entry of Order; Appeal</u>.  The Bankruptcy Court shall have entered the Sale Approval Order in accordance with **Section 5.5(d)** and any other order in accordance with **Section 5.5(e)** relating to the assignment of the Assumed Contracts, all in form and substance reasonably acceptable to Purchaser, and the Sale Approval Order and any other order in accordance with **Section 5.5(e)** relating to the assignment of the Assumed Contracts, shall not have been stayed, and shall have become a Final Order, unless the finality of such orders is waived by Purchaser in Purchaser's sole discretion.

**6.2** <u>Conditions Precedent to Obligations of Seller</u>.  The obligations of Seller under this Agreement to consummate the transactions contemplated by this Agreement on the Closing Date shall be subject to the satisfaction, at or prior to the Closing Date, of all of the following conditions, any one or more of which may be waived by Seller:

**(a)** <u>Representations and Warranties Accurate</u>.  The representations and warranties of Purchaser contained in this Agreement which are qualified as to materiality shall be true and correct in all respects, and those not so qualified shall be true and correct in all material respects, as of the date of this Agreement and as of the Closing Date with the same force and effect as though made on and as of the Closing Date.

**(b)** <u>Performance by Purchaser</u>.  Purchaser shall have performed and complied in all material respects with all covenants and agreements required to be performed or complied with by them hereunder on or prior to the Closing Date.

**(c)** <u>Consents</u>.  All Consents required in connection with the purchase and sale of the Purchased Assets and the Closing shall have been duly obtained, made or given and shall be in full force and effect.

**(d)** <u>No Legal Prohibition</u>.  No suit, action, investigation, inquiry or other proceeding by any Governmental Entity or other Person shall have been instituted or threatened which arises out of or relates to this Agreement or the transactions contemplated hereby and no injunction, order, decree or judgment shall have been issued and be in effect or threatened to be issued by any Governmental Entity of competent jurisdiction, and no statute, rule or regulation shall have been enacted or promulgated by any Governmental Entity and be in effect, which in each case restrains or prohibits the consummation of the transactions contemplated hereby.

**(e)** INTENTIONALLY OMITTED.

**(f)** <u>Additional Documents, etc.</u>  There shall have been delivered to Seller's Representative each of the agreements, documents and other items set forth on **Schedule 6.1(h)** of this Agreement to be delivered to Seller, including those required by **Section 2.6** of this Agreement.

**6.3**     Entry of Order; Appeal.  The Sale Approval Order shall have been entered by the Bankruptcy Court and shall not have been stayed.  If an appeal of the Sale Approval Order is filed and Purchaser elects in its sole discretion to waive the condition to Closing that the Sale Approval Order shall be a Final Order, then Seller shall be obligated to proceed with the Closing notwithstanding the pendency of any such appeal, unless the Sale Approval Order is stayed.

**7.**     **MISCELLANEOUS**

**7.1**     Termination.   This  Agreement  may  be  terminated,  and  the  transactions contemplated herein may be abandoned:

        **(a)**     any time before the Closing, by mutual written agreement of Seller and Purchaser;

        **(b)**     any time before the Closing, by Seller, on the one hand, or Purchaser, on the other hand, (i) in the event of a material breach hereof by any non-terminating party if such non-terminating party fails to cure such breach within five (5) Business Days following notification thereof by the terminating party or (ii) upon notification to the non-terminating party by the terminating party that the satisfaction of any condition to the terminating party's obligations under this Agreement becomes impossible or impracticable with the use of commercially reasonable efforts if the failure of such condition to be satisfied is not caused by a breach hereof by the terminating party; or

        **(c)**     by Purchaser, upon five (5) Business Days' prior written notice to the Seller's Representative, if (i) the Auction shall not have taken place on or before April 12, 2011, (ii) the Sale Hearing shall not have taken place by April 13, 2011, (iii) the Sale Approval Order and any other order in accordance with **Section 5.5(e)** relating to the assignment of the Assumed Contracts shall not have been entered within three (3) Business Days following the date of the Sale Hearing, (iv) the Closing has not taken place by May 2, 2011 other than by reason of a material breach of this Agreement by Purchaser, or (v) Seller fails to use its best efforts to obtain timely approval of the Bidding Procedures Order and the Sales Order as contemplated by the milestones identified in this Agreement and the Sales Motion.

**7.2**     Effect of Termination.

        **(a)**     If this Agreement is validly terminated pursuant to **Section 7.1**, this Agreement will forthwith become null and void, and there will be no liability or obligation on the part of any party (or any of their respective officers, directors, employees, partners, agents or other representatives or Affiliates), except as provided in the next succeeding sentence and except that the provisions with respect to expenses in **Section 7.3** will continue to apply following any such termination.  Notwithstanding any other provision in this Agreement to the contrary (other than Section 7.2(b)), upon termination of this Agreement pursuant to **Section 7.1(b)** or **(c)**, Seller will remain liable to Purchaser for any breach of this Agreement by Seller existing at the time of such termination, and Purchaser will remain liable to Seller for any breach of this Agreement by Purchaser existing at the time of such termination.

**(b)** Notwithstanding the provisions of **Section 7.2(a)**, above:

    **(i)** if Purchaser or Seller terminate this Agreement pursuant to **Section 7.1(a)** or **Section 7.1(b)(ii)**, Purchaser shall receive the prompt return of the Deposit to the extent that such amount was actually advanced as part of the DIP Loan;

    **(ii)** if Purchaser terminates this Agreement pursuant to **Section 7.1(b)(i)** or **Section 7.1(c)**, Purchaser shall receive the prompt return of the Deposit to the extent that such amount was actually advanced as part of the DIP Loan;

    **(iii)** if Seller terminates this Agreement pursuant to **Section 7.1(b)(i)**, Seller shall receive, as its sole and exclusive remedy available under any Law, including the Bankruptcy Code, the Deposit.

**7.3** <u>Expenses</u>. Except as otherwise set forth herein, each party hereto shall pay its own expenses incurred in connection with this Agreement and the transactions contemplated hereby. Notwithstanding the foregoing, in the event Purchaser is not the successful bidder at the Auction or this Agreement is terminated by Seller pursuant to **Section 7.1(b)(ii)** of this Agreement or by Purchaser pursuant to **Section 7.1(b) or (c)** of this Agreement, Seller will, subject to entry of the Bidding Procedures Order, pay Purchaser the Break-up Fee and the Expense Reimbursement in accordance with this Agreement and the Bidding Procedures Order.

**7.4** <u>Compliance with Laws</u>. Notwithstanding anything contained in this Agreement to the contrary, the obligations of the parties shall be subject to all laws, present and future, of any government having jurisdiction over the parties and this transaction, and to orders, regulations, directions or requests of any such government.

**7.5** <u>Further Cooperation; Waiver</u>.

**(a)** <u>Further Cooperation</u>. At the request and expense of Purchaser, at any time following the Closing Date, Seller shall execute and deliver such other instruments and documents and do and perform such other acts as may be reasonably necessary for the operation of the Business by Purchaser and effecting completely the consummation of the transactions contemplated hereby, including execution, acknowledgment and recordation of other such papers (which shall include as necessary the execution by Seller of a Power of Attorney in the form attached hereto as **Exhibit G**), using reasonable efforts to obtain the same from the respective inventors or authors as necessary for perfecting and conveying unto Purchaser the benefit of the transactions contemplated hereby; <u>provided</u>, <u>however</u>, that Seller shall not be obligated to pay any consideration or incur any costs to provide such cooperation.

**(b)** <u>Waiver</u>. Seller hereby waives any conflict of interest with, and consents to, Purchaser retaining, and at Purchaser's expense, Seller's prosecution counsel for matters pertaining to Intellectual Property Rights. Seller hereby waives any privilege it may have that would otherwise prevent the communication or disclosure of information and documentation related in any way to the Purchased Assets between Purchaser and such counsel.

**7.6** <u>Governing Law; Jurisdiction</u>. All disputes arising out of or related to this Agreement, including, without limitation, any dispute relating to the interpretation, meaning or effect of any provision hereof, will be resolved in the Bankruptcy Court and the parties hereto will each submit to the exclusive jurisdiction of the Bankruptcy Court for the purposes of adjudicating any such dispute, to the extent the jurisdiction of the Bankruptcy Court is applicable. If the jurisdiction of the Bankruptcy Court is not applicable, any legal action, suit or proceeding arising out of or relating to this Agreement, each and every agreement and instrument contemplated hereby or the transactions contemplated hereby and thereby shall be instituted in any Federal court of the Southern District of New York. This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York (i.e., without regard to its conflicts of law rules).

**7.7** <u>Entire Agreement; Interpretation</u>. The terms and conditions of this Agreement, including its exhibits, constitute the entire agreement between the parties with respect to the subject matter hereof, and merge and supersede all prior and contemporaneous agreements, understandings, negotiations and discussions. Neither of the parties shall be bound by any conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof other than as expressly provided herein. The section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. No oral explanation or oral information by either party hereto shall alter the meaning or interpretation of this Agreement. The terms "includes" and "including" are not limiting. These terms and conditions will prevail notwithstanding any different, conflicting or additional terms and conditions which may appear on any purchase order, acknowledgment or other writing not expressly incorporated into this Agreement. Unless a contrary intention appears, (i) the words "herein", "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Article, Section or other subdivision, and to any certificates delivered pursuant hereto; and (ii) reference to any Article or Section means such Article or Section hereof. Any accounting terms used in this Agreement shall, unless otherwise defined in this Agreement, have the meaning ascribed thereto by GAAP.

**7.8** <u>Notices</u>: All notices required or permitted to be given hereunder shall be in writing, shall make reference to this Agreement, and shall be delivered by hand, or dispatched by prepaid air courier or by registered or certified airmail, postage prepaid, addressed as follows:

| If to Purchaser | If to Seller |
|---|---|
| Standard General Fund L.P. | Word World, LLC |
| 650 Madison Avenue, 23rd Floor | 40 W. 23rd St., 6th Floor |
| New York, NY 10022 | New York, NY |
| Attn: Soo Kim | Attention: Don Moody |
| Phone: (212) 610-9175 | Phone: (212) 219-7666 |
| Fax: (212) 610-9171 | Fax: (917) 210-3585 |
| | |
| with a copy to: | with a copy to: |

Moses & Singer LLP                          Wollmuth Maher & Deutsch LLP
The Chrysler Building                       One Gateway Center, Ninth Floor
·405 Lexington Avenue                        Newark, NJ 07102
New York, NY 10174                          Attn: James N. Lawlor, Esq.
Attn: James M. Sullivan, Esq.               Phone: 973-733-9200
Phone: (212) 554-7640                       Fax: 973-733-9292
Fax: (212) 377-6053

Such notices shall be deemed served when received by addressee or, if delivery is not accomplished by reason of some fault of the addressee, when tendered for delivery. Either party may give written notice of a change of address and, after notice of such change has been received, any notice or request shall thereafter be given to such party at such changed address.

**7.9** Counterparts. This Agreement may be executed in one or more counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement.

**7.10** No Ongoing Obligations. Purchaser shall not have any obligations solely by virtue of the provisions of this Agreement to support, maintain or otherwise continue the business operations of Seller or to otherwise market, promote or develop the Purchased Assets after the Closing Date.

**7.11** Survival of Representations and Warranties. All of the representations and warranties of Purchaser and Seller contained in this Agreement or any Ancillary Agreement shall not survive the Closing.

**7.12** Amendment. This Agreement may not be amended or modified except by an instrument in writing signed by, or on behalf of, Seller and Purchaser.

**7.13** Seller Indemnification Obligation. After the Closing, Seller shall indemnify and defend Purchaser, its affiliates, officers, directors, employees, agents, advisors, consultants, representatives, successors, and assigns against, and hold them harmless from, any and all liabilities, losses, damages, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) that Purchaser may suffer or incur by reason of (i) Purchaser's defense of any claim, suit or proceeding made or commenced against it arising out of any liability or obligation of Seller that is not expressly assumed by Purchaser hereunder; (ii) any lien, mortgage, security interest, claim, charge, attachment or other encumbrance affecting the Purchased Assets existing as of the Closing that impairs the value of the Purchased Assets; (iii) any breach of any representation and warranty made or given by Seller in connection with the consummation of the transactions contemplated hereby; (iv) any failure by Seller to convey its complete and exclusive right, title and interest in any of the Purchased Assets; or (v) any finder's or broker's fees incurred by Seller in connection with the transactions contemplated hereby. Purchaser shall provide written notice to Seller of any claim or dispute as to which indemnification is provided under this Section within ten (10) days of receipt of written notice by Purchaser of the commencement, or threatened commencement, of any such action. Purchaser, on not less than thirty (30) days' notice to Seller, may make settlement of such claim, litigation

or other proceeding, and such settlement shall be binding on Seller and Purchaser for the purposes of this Section; provided, however, that, if within said thirty-day period Seller shall, in writing, have requested Purchaser to contest such claim, or to defend against such litigation or other proceeding, and, within such thirty-day period, Seller shall have initiated a contested matter or adversary proceeding in the Bankruptcy Court as a part of the Bankruptcy Case seeking a judicial determination of the extent, validity, priority, amount and enforceability, if any, of the claim, then Seller shall have the right and obligation to contest such claim or to defend against such litigation or other proceeding in the Bankruptcy Case on its own behalf and on behalf of Purchaser, with counsel of Seller's own choosing, but Purchaser may also, in its discretion, participate in such contest or defense on its own behalf and with counsel of its own choosing. If Seller shall have failed, neglected or refused to contest such claim or to defend against such litigation or other proceeding, Seller shall reimburse Purchaser for the expenses incurred by Purchaser in such contest or defense. Any payment or settlement resulting from such contest or defense, together with Seller's costs thereof, shall be binding on Seller and on Purchaser for the purposes of this Section.

**7.14** <u>Purchaser Indemnification Obligation</u>. After the Closing, Purchaser shall indemnify Seller against and shall hold it harmless from any and all liabilities, losses, damages, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) that Seller may suffer or incur by reason of (i) Seller's defense of any claim, suit or proceeding made or commenced against it arising out of obligations of Seller that were expressly assumed by Purchaser hereunder and only expressly for amounts arising after the Closing Date; or (ii) any finder's fee or broker's fees incurred by Seller in connection with the transactions contemplated hereby. Seller shall provide written notice to Purchaser of any claim or dispute as to which indemnification is provided under this Section within 10 days of receipt of written notice by Seller of the commencement, or threatened commencement, of any such action. Seller, on not less than thirty (30) days' notice to Purchaser, may make settlement of such claim, litigation or other proceeding, and such settlement shall be binding on Seller and Purchaser for the purposes of this Section; <u>provided, however</u>, that, if within said thirty-day period Purchaser shall, in writing, have requested Seller to contest such claim, or to defend against such litigation or other proceeding, then Purchaser shall have the right and obligation to contest such claim or to defend against such litigation or other proceeding on its own behalf and on behalf of Seller, with counsel of its own choosing, but Seller may also, in its discretion, participate in such contest or defense on its own behalf and with counsel of its own choosing. If Purchaser shall have failed, neglected or refused to contest such claim or to defend against such litigation or other proceeding, Purchaser shall reimburse Seller for the expenses incurred by Seller in such contest or defense. Any payment or settlement resulting from such contest or defense, together with Seller's costs thereof, shall be binding on Seller and on Purchaser for the purposes of this Section.

**7.15** <u>No Agency</u>. The parties hereto are independent contractors. Except as may be provided in this Agreement, neither party has any express or implied right or authority to assume or create any obligations on behalf of the other or to bind the other to any contract, agreement or undertaking with any third party. Nothing in this Agreement shall be construed to create a partnership, joint venture, employment or agency relationship between Seller and Purchaser.

**7.16** <u>Seller's Representative</u>.  Seller hereby irrevocably appoints Don Moody (herein called the "***Seller's Representative***") as its true and lawful attorney-in-fact and agent, with full power of substitution or resubstitution, to act solely and exclusively on behalf of Seller with respect to any matters relating to this Agreement and any document, certificate or other agreement to be executed and delivered by or on behalf of Seller pursuant hereto, with the full power, without the consent of Seller, to exercise as it in its sole discretion deems appropriate, all of the powers which Seller could exercise under the provisions of this Agreement or any document, certificate or other agreement to be executed and delivered by or on behalf of Seller pursuant hereto, including, without limitation, to (i) accept and give notices hereunder or thereunder on behalf of Seller, (ii) consent to any modification or amendment hereof or thereof or (iii) give any waiver or consent hereunder or thereunder.  Seller's Representative does hereby accept such appointment.  Purchaser shall be entitled to rely exclusively upon such notices, waivers, consents, amendments, modifications and other acts of Seller's Representative as being the binding acts of Seller, and Purchaser shall be entitled to deliver any notices, payments or other items required to be delivered by it to Seller hereunder or thereunder only to Seller's Representative, and any such delivery shall be fully effective as if it were made directly to Seller. Seller's Representative shall not effect any substitution for himself as Seller's Representative without the prior written consent of Purchaser, which consent shall not be unreasonably withheld.

**7.17** <u>Specific Performance</u>.  Notwithstanding anything to the contrary contained herein (other than Section 7.2(b) hereof), each party hereto acknowledges that money damages would be incalculable and an insufficient remedy for any breach of this Agreement by such party and that any such breach would cause the other party hereto irreparable harm.  Accordingly, each party hereto also agrees that, in the event of any breach or threatened breach of the provisions of this Agreement by such party, the other party hereto shall (except to the extent Section 7.2(b) is applicable) be entitled to equitable relief without the requirement of posting a bond or other security, including in the form of injunctions and orders for specific performance.

**7.18** <u>Severability</u>.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction, and any such provision, to the extent invalid or unenforceable, shall be replaced by a valid and enforceable provision which comes closest to the intention of the parties underlying such invalid or unenforceable provision.

**7.19** <u>Waivers</u>.  Waiver by any party of any breach of or failure to comply with any provision of this Agreement by the other party shall not be construed as, or constitute, a continuing waiver of such provision, or a waiver of any other breach of, or failure to comply with, any other provision of this Agreement.  No waiver of any such breach or failure or of any term or condition of this Agreement shall be effective unless in a written notice signed by the waiving party and delivered, in the manner required for notices generally, to each affected party.

**7.20** <u>Binding Effect; Third Party Beneficiaries; Assignment</u>.  This Agreement shall be binding upon, inure to the benefit of, and be enforceable by, the parties hereto and their respective legal representatives, successors and permitted assigns.  Except as expressly set forth herein, nothing expressed or referred to in this Agreement is intended or shall by construed to

give any Person other than the parties to this Agreement, or their respective legal representatives, successors and permitted assigns, any legal or equitable right, remedy or claim under or in respect of this Agreement or any provision contained herein. Neither party may assign this Agreement nor any of its rights hereunder, other than any right to payment of a liquidated sum, nor delegate any of its obligations hereunder, without the prior written consent of the other, except that Purchaser may assign its rights under this Agreement to any Affiliate or to any Person providing financing for the transaction.

**7.21** <u>Knowledge Qualifications</u>. Whenever any party makes any representation, warranty or other statement to such party's knowledge, such party will be deemed to have made due inquiry into the subject matter of such representation, warranty or other statement, including due inquiry of each officer and director of such party as well as any other person who has responsibility with respect to the relevant subject matter.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the parties have executed this Amended Asset Purchase Agreement as of the date first written above:

**SELLER**                                         **PURCHASER:**

**WORD WORLD, LLC**                                **STANDARD GENERAL FUND L.P.**

By: _____                      By: _____

Name:                                              Name:  Soo Kim

Title:                                             Title:  Partner

IN WITNESS WHEREOF, the parties have executed this Amended Asset Purchase Agreement as of the date first written above:

**SELLER**

**PURCHASER:**

**WORD WORLD, LLC**

**STANDARD GENERAL FUND L.P.**

By: _____

By: _____

Name: DON MOODY

Name:

Title: CEO

Title:

## **EXHIBIT A**

Disclosure Schedules

**Schedule 2.1(a)(i): Works**

**None**

**Schedule 2.1(a)(ii): Copyright Rights**

**See following pages.**

**Country: United States of America**

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| Duck's Alphabet -- Style Guide (copyright) | 9000067 United States of America | ORD | 1-479744201 30-Aug-2010 | | | Pending |

Owner: Word World, LLC

Client: Word World, LLC

Agent:

Attorneys: SEL

Client Ref:

Agent Ref:

Classes:

Images/Links:

Goods:

# Trademark List by Country

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| Word World Season 3 (Episodes 301 - 305) (Copyright) | 9000097 United States of America | ORD | 1-494391521 29-Sep-2010 | | | Pending |
| | Owner: Word World, LLC | | | | Attorneys: SEL | |
| | Client: Word World, LLC | | | | Client Ref: | |
| | Agent: | | | | Agent Ref: | |
| | Classes: | | | | | |
| | Images/Links: | | | | | |
| | Goods: | | | | | |

# Trademark List by Country

| Trademark | Docket Number<br>Country | SubCase<br>Case Type | Application Number<br>Filing Date | Publication Number<br>Publication Date | Registration Number<br>Registration Date | Status<br>Next Renewal |
|---|---|---|---|---|---|---|
| WORD WORLD TV SEASON<br>(Episodes (118-122) (copyright) | 9000035<br>United States of America | ORD | | | PA0001620840<br>13-Jun-2008 | Registered |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:**

**Classes:**

**Images/Links:**

**Goods:**

**Attorneys:** SEL, MXG

**Client Ref:**

**Agent Ref:**

# Trademark List by Country

| Trademark | Docket Number<br>Country | SubCase<br>Case Type | Application Number<br>Filing Date | Publication Number<br>Publication Date | Registration Number<br>Registration Date | Status<br>Next Renewal |
|---|---|---|---|---|---|---|
| WORD WORLD TV SEASON<br>(Episodes 107-112) (copyright) | 9000033<br>United States of America | ORD | | | PA0001598390<br>22-Jan-2008 | Registered |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:**

**Classes:**

**Images/Links:**

**Goods:**

Attorneys: SEL, MXG

**Client Ref:**

**Agent Ref:**

**Country: United States of America**

| Trademark | Docket Number<br>Country | SubCase<br>Case Type | Application Number<br>Filing Date | Publication Number<br>Publication Date | Registration Number<br>Registration Date | Status<br>Next Renewal |
|---|---|---|---|---|---|---|
| WORD WORLD TV SEASON<br>(Episodes 113-117) (copyright) | 9000034<br>United States of America | ORD | | | PA0001620839<br>13-Jun-2008 | Registered |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:**

**Attorneys:** SEL, MXG

**Client Ref:**

**Agent Ref:**

**Classes:**

**Images/Links:**

**Goods:**

**Country: United States of America**

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORD WORLD TV SEASON 1 (Episodes 123-126) (copyright) | 9000032 United States of America | ORD | | | PA1620507 10-Jul-2008 | Registered |

Owner: Word World, LLC

Client: Word World, LLC

Agent:

Attorneys: SEL, MXG

Client Ref:

Agent Ref:

Classes:

Images/Links:

Goods:

**Trademark List by Country**

**Country: United States of America**

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORD WORLD TV SEASON 2 Episodes (201-214) (copyright) | 9000045 United States of America | ORD | 22-Oct-2009 | | | Pending |

Owner: Word World, LLC

Client: Word World, LLC

Agent:

Classes:

Images/Links:

Goods:

Attorneys: SEL, MXG

Client Ref:

Agent Ref:

**Schedule 2.1(a)(iii): Software**

**None**

**Schedule 2.1(a)(iv): Trademark Rights**

Any common law trademark rights that the Seller may have in other logos or slogans used in its business.

**See following pages.**

# Trademark List by Country

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WHERE WORDS COME ALIVE | 0006323 | | 1049734 | | 1049734 | Registered |
| | Australia | ORD | 07-Apr-2005 | 04-Aug-2005 | 14-Nov-2005 | 07-Apr-2015 |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Attorneys:** EHR, JV

**Client Ref:** 13457-1600-6363

**Agent:** Phillips Ormonde & Fitzpatrick

**Agent Ref:**

Classes: 09 Int., 16 Int., 28 Int., 41 Int.

Images/Links:

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|

**Goods: 09 Int.**

Cl. 9: Scientific, nautical, surveying, photographic, cinematographic, optical, weighing, measuring, signalling, checking (supervision), life-saving and teaching apparatus and instruments; apparatus and instruments for conducting, switching, transforming, accumulating, regulating or controlling electricity; apparatus for recording, transmission or reproduction of sound or images; magnetic data carriers, recording discs; automatic vending machines and mechanisms for coin-operated apparatus; cash registers, calculating machines, data processing equipment and computers; fire-extinguishing apparatus; pre-recorded video tapes, audio tapes, laser discs, video discs, compact discs, CD-ROMs (compact disc-read only memories), DVDs (digital versatile discs/digital video discs), and floppy discs featuring entertainment and educational programming for children; computer and video game software, downloadable computer and video game software, computer and video game cartridges, computer and video game programs, decorative magnets, cameras, calculators, computer game discs, electric switch plates, mouse pads

Cl. 16: Paper, cardboard and goods made from these materials, not included in other classes; printed matter; bookbinding material; photographs; stationery; adhesives for stationery or household purposes; artists' materials; paint brushes; typewriters and office requisites (except furniture); instructional and teaching material (except apparatus); plastic materials for packaging (not included in other classes); printers' type; printing blocks; children's books, children's activity books, children's coloring books, comic books, cook books, address books, engagement books, diaries, calendars, bookmarks, color prints, posters, post cards, greeting cards, trading cards, book covers, decalcomania, stickers; stationery, envelopes, memo pads, note books, notepads, ring binders, folders, pen and pencil cases, rulers, staplers, pencils, pens, pencils sharpeners, markers, rubber stamps, paper signs, and banners for decorative purposes; paper party goods, namely hats, napkins, placemats and decorations; paper bags and merchandise bags, paper and plastic party bags, paper party favors, lunch bags, gift wrapping materials, paper holiday decorations

Cl. 28: Games, toys and playthings, including plush toys, puppets, finger puppets, make-your-own puppet kits, stuffed animals hand-held units for playing electronic games, electronic educational game machines for children, dolls, rag dolls, paper dolls, doll accessories, toy action figures and accessories therefore, collectible toy figures, cases for dolls, cases for action figures, cases for play accessories, toy building blocks, toy construction blocks, toy banks, toy mobiles, infant toys, inflatable toys, bath toys, pull toys, wind-up toys, swim toys, swim floats for recreational use, water-squirting toys, sand toys, sandbox toys, toy vehicles, action skill games, board games, children's party games, cards games, jigsaw puzzles, manipulative puzzles, toy cube puzzles, toy model hobbycraft kits, toy modelling dough, toy gliders, balloons, bubble making wand and solution sets, boomerangs, kites, flying discs, yoyos, jump ropes, costume masks, party favors in the nature of small toys, adult and children's party games, pinatas, Christmas tree decorations, snow globes, skate boards, body boards, athletic protective pads for knees and elbows

Cl. 41: Education; providing of training; entertainment; sporting and cultural activities; entertainment services, including an ongoing children's television series; motion picture films; theatrical programs; fan clubs; online entertainment services, namely information, interactive games, quizzes and fan clubs based on a children's television series; website featuring information, interactive games, quizzes and fan clubs based on a children's television series

16 Int.
28 Int.
41 Int.

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORD WORLD | 0006320 Australia | ORD | 1049738 07-Apr-2005 | 04-Aug-2005 | 1049738 14-Nov-2005 | Registered 07-Apr-2015 |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Attorneys:** EHR, JV

**Client Ref:** 13457-1600

**Agent:** Phillips Ormonde & Fitzpatrick

**Agent Ref:**

**Classes:** 09 Int., 16 Int., 28 Int., 41 Int.

**Images/Links:**

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| | Goods: 09 Int. | | | | | |

Cl. 9: Scientific, nautical, surveying, photographic, cinematographic, optical, weighing, measuring, signalling, checking (supervision), life-saving and teaching apparatus and instruments; apparatus and instruments for conducting, switching, transforming, accumulating, regulating or controlling electricity; apparatus for recording, transmission or reproduction of sound or images; magnetic data carriers, recording discs; automatic vending machines and mechanisms for coin-operated apparatus; cash registers, calculating machines, data processing equipment and computers; fire-extinguishing apparatus; pre-recorded video tapes, audio tapes, laser discs, video discs, compact discs, CD-ROMs (compact disc-read only memories), DVDs (digital versatile discs/digital video discs), and floppy discs featuring entertainment and educational programming for children; computer and video game software, downloadable computer and video game software, computer and video game cartridges, computer and video game programs, decorative magnets, cameras, calculators, computer game discs, electric switch plates, mouse pads

Cl. 16: Paper, cardboard and goods made from these materials, not included in other classes; printed matter; bookbinding material; photographs; stationery; adhesives for stationery or household purposes; artists' materials; paint brushes; typewriters and office requisites (except furniture); instructional and teaching material (except apparatus); plastic materials for packaging (not included in other classes); printers' type; printing blocks; children's books, children's activity books, children's coloring books, comic books, cook books, address books, engagement books, diaries, calendars, bookmarks, color prints, posters, post cards, greeting cards, trading cards, book covers, decalcomania, stickers; stationery, envelopes, memo pads, note books, notepads, ring binders, folders, pen and pencil cases, rulers, staplers, pencils, pens, pencils sharpeners, markers, rubber stamps, paper signs, and banners for decorative purposes; paper party goods, namely hats, napkins, placemats and decorations; paper bags and merchandise bags, paper and plastic party bags, paper party favors, lunch bags, gift wrapping materials, paper holiday decorations

Cl. 28: Games, toys and playthings, including plush toys, puppets, finger puppets, make-your-own puppet kits, stuffed animals hand-held units for playing electronic games, electronic educational game machines for children, dolls, rag dolls, paper dolls, doll accessories, toy action figures and accessories therefore, collectible toy figures, cases for dolls, cases for action figures, cases for play accessories, toy building blocks, toy construction blocks, toy banks, toy mobiles, infant toys, inflatable toys, bath toys, pull toys, wind-up toys, swim toys, swim floats for recreational use, water-squirting toys, sand toys, sandbox toys, toy vehicles, action skill games, board games, children's party games, cards games, jigsaw puzzles, manipulative puzzles, toy cube puzzles, toy model hobbycraft kits, toy modelling dough, toy gliders, balloons, bubble making wand and solution sets, boomerangs, kites, flying discs, yoyos, jump ropes, costume masks, party favors in the nature of small toys, adult and children's party games, pinatas, Christmas tree decorations, snow globes, snow boards, skate boards, body boards, athletic protective pads for knees and elbows

Cl. 41: Education; providing of training; entertainment; sporting and cultural activities; entertainment services, including an ongoing children's television series; motion picture films; theatrical programs; fan clubs; online entertainment services, namely information, interactive games, quizzes and fan clubs based on a children's television series; website featuring information, interactive games, quizzes and fan clubs based on a children's television series

| | 16 Int. | | | | | |
| | 28 Int. | | | | | |
| | 41 Int. | | | | | |

**Country: Australia**

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORD WORLD & Design | 0006321<br>Australia | ORD | 1049739<br>07-Apr-2005 | 04-Aug-2005 | 1049739<br>14-Nov-2005 | Registered<br>07-Apr-2015 |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:**

**Attorneys:**

**Client Ref:** 13457-1600

**Agent Ref:**

**Classes:** 09 Int., 16 Int., 28 Int., 41 Int.

**Images/Links:**



Word World Where Words
Come Alive & Design

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| | **Goods: 09 Int.** | | | | | |

Cl. 9: Scientific, nautical, surveying, photographic, cinematographic, optical, weighing, measuring, signalling, checking (supervision), life-saving and teaching apparatus and instruments; apparatus and instruments for conducting, switching, transforming, accumulating, regulating or controlling electricity; apparatus for recording, transmission or reproduction of sound or images; magnetic data carriers, recording discs; automatic vending machines and mechanisms for coin-operated apparatus; cash registers, calculating machines, data processing equipment and computers; fire-extinguishing apparatus; pre-recorded video tapes, audio tapes, laser discs, video discs, compact discs, CD-ROMs (compact disc-read only memories), DVDs (digital versatile discs/digital video discs), and floppy discs featuring entertainment and educational programming for children; computer and video game software, downloadable computer and video game software, computer and video game cartridges, computer and video game programs, decorative magnets, cameras, calculators, computer game discs, electric switch plates, mouse pads

Cl. 16: Paper, cardboard and goods made from these materials, not included in other classes; printed matter; bookbinding material; photographs; stationery; adhesives for stationery or household purposes; artists' materials; paint brushes; typewriters and office requisites (except furniture); instructional and teaching material (except apparatus); plastic materials for packaging (not included in other classes); printers' type; printing blocks; children's books, children's activity books, children's coloring books, comic books, cook books, address books, engagement books, diaries, calendars, bookmarks, color prints, posters, post cards, greeting cards, trading cards, book covers, decalcomania, stickers; stationery, envelopes, memo pads, note books, notepads, ring binders, folders, pen and pencil cases, rulers, staplers, pencils, pens, pencils sharpeners, markers, rubber stamps, paper signs, and banners for decorative purposes; paper party goods, namely hats, napkins, placemats and decorations; paper bags and merchandise bags, paper and plastic party bags, paper party favors, lunch bags, gift wrapping materials, paper holiday decorations

Cl. 28: Games, toys and playthings, including plush toys, puppets, finger puppets, make-your-own puppet kits, stuffed animals hand-held units for playing electronic games, electronic educational game machines for children, dolls, rag dolls, paper dolls, doll accessories, toy action figures and accessories therefore, collectible toy figures, cases for dolls, cases for action figures, cases for play accessories, toy building blocks, toy construction blocks, toy banks, toy mobiles, infant toys, inflatable toys, bath toys, pull toys, wind-up toys, swim toys, swim floats for recreational use, water-squirting toys, sand toys, sandbox toys, toy vehicles, action skill games, board games, children's party games, cards games, jigsaw puzzles, manipulative puzzles, toy cube puzzles, toy model hobbycraft kits, toy modelling dough, toy gliders, balloons, bubble making wand and solution sets, boomerangs, kites, flying discs, yoyos, jump ropes, costume masks, party favors in the nature of small toys, adult and children's party games, pinatas, Christmas tree decorations, snow globes, snow boards, skate boards, body boards, athletic protective pads for knees and elbows

Cl. 41: Education; providing of training; entertainment; sporting and cultural activities; entertainment services, including an ongoing children's television series; motion picture films; theatrical programs; fan clubs; online entertainment services, namely information, interactive games, quizzes and fan clubs based on a children's television series; website featuring information, interactive games, quizzes and fan clubs based on a children's television series

16 Int.
28 Int.
41 Int.

# Trademark List by Country

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORDFRIENDS | 0006813 Australia | ORD | 1128593 08-Aug-2006 | 1128593 07-Dec-2006 | 1128593 20-Mar-2007 | Registered 08-Aug-2016 |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:** Phillips Ormonde & Fitzpatrick

**Attorneys:** EHR, RH

**Client Ref:** 13457-0100-6813

**Agent Ref:** 779757

**Classes:** 09 Int., 16 Int., 28 Int., 41 Int.

**Images/Links:**

**Goods:** 09 Int.

Prerecorded video tapes, audio tapes, laser discs, video discs, compact discs, CD-ROMs, DVDs, and floppy discs featuring entertainment and educational programming for children; computer and video game software, downloadable computer and video game software; computer and video game cartridges, computer and video game programs, decorative magnets, cameras, calculators, computer game discs, electric switch plates, mouse pads.

16 Int.

Children's books, children's activity books, children's coloring books, comic books, cook books, address books, engagement books, diaries, calendars, bookmarks, color prints, posters, post cards, greeting cards, trading cards, book covers, decalcomania, stickers; stationery, envelopes, memo pads, notebooks, notepads, ring binders, folders, pen and pencil cases, rulers, staplers, pencils, pens, pencil sharpeners, markers, rubber stamps, paper signs and banners for decorative purposes; paper party goods, namely hats, napkins, placemats and decorations, paper bags and merchandise bags, paper and plastic party bags, paper party favors, lunch bags, gift wrapping materials, paper holiday decorations.

28 Int.

Games and toys, namely plush toys, puppets, finger puppets, make-your-own puppet kits, stuffed animals, hand-held units for playing electronic games, electronic educational game machines for children, dolls, rag dolls, paper dolls, doll accessories, toy action figures and accessories therefor, collectible toy figures, cases for dolls, cases for action figures, cases for play accessories, toy building blocks, toy construction blocks, toy banks, toy mobiles, infant toys, inflatable toys, bath toys, pull toys, wind-up toys, swim toys, swim floats for recreational use, water-squirting toys, sand toys, sandbox toys, toy vehicles, action skill games, board games, children's party games, card games, jigsaw puzzles, manipulative puzzles, toy cube puzzles, toy model hobby craft kits, toy modeling dough, toy gliders, balloons, bubble making wand and solution sets, boomerangs, kites, flying discs, yoyos, jump ropes, costume masks, party favors in the nature of small toys, adult and children's party games, pinatas, Christmas tree decorations, snow globes, costume masks, snow boards, skate boards, body boards, athletic protective pads for knees and elbows.

41 Int.

Entertainment services, namely, an ongoing children's television series; motion picture films; theatrical programs; fan clubs; online entertainment services, namely information, interactive games, quizzes and fan clubs based on a children's television series; website featuring information, interactive games, quizzes and fan clubs based on a children's television series.

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORDTHINGS | 0006322 Australia | ORD | 1049740 07-Apr-2005 | 04-Aug-2005 | 1049740 14-Nov-2005 | Registered 07-Apr-2015 |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:** Phillips Ormonde & Fitzpatrick

**Classes:** 09 Int., 16 Int., 28 Int., 41 Int.

**Images/Links:**

**Attorneys:** EHR, JV

**Client Ref:** 13457-1600

**Agent Ref:**

**Country: Australia**

| | Docket Number | SubCase | Application Number | Publication Number | Registration Number | Status |
|---|---|---|---|---|---|---|
| | Country | Case Type | Filing Date | Publication Date | Registration Date | Next Renewal |

**Trademark**

**Goods:** 09 Int.

Cl. 9: Scientific, nautical, surveying, photographic, cinematographic, optical, weighing, measuring, signalling, checking (supervision), life-saving and teaching apparatus and instruments; apparatus and instruments for conducting, switching, transforming, accumulating, regulating or controlling electricity; apparatus for recording, transmission or reproduction of sound or images; magnetic data carriers, recording discs; automatic vending machines and mechanisms for coin-operated apparatus; cash registers, calculating machines, data processing equipment and computers; fire-extinguishing apparatus; pre-recorded video tapes, audio tapes, laser discs, video discs, compact discs, CD-ROMs (compact disc-read only memories), DVDs (digital versatile discs/digital video discs), and floppy discs featuring entertainment and educational programming for children; computer and video game software, downloadable computer and video game software, computer and video game cartridges, computer and video game programs, decorative magnets, cameras, calculators, computer game discs, electric switch plates, mouse pads

Cl. 16: Paper, cardboard and goods made from these materials, not included in other classes; printed matter; bookbinding material; photographs; stationery; adhesives for stationery or household purposes; artists' materials; paint brushes; typewriters and office requisites (except furniture); instructional and teaching material (except apparatus); plastic materials for packaging (not included in other classes); printers' type; printing blocks; children's books, children's activity books, children's coloring books, comic books, cook books, address books, engagement books, diaries, calendars, bookmarks, color prints, posters, post cards, greeting cards, trading cards, book covers, decalcomania, stickers; stationery, envelopes, memo books, note books, notepads, ring binders, folders, pen and pencil cases, rulers, staplers, pencils, pens, pencils sharpeners, markers, rubber stamps, paper signs, and banners for decorative purposes; paper party goods, namely hats, napkins, placemats and decorations; paper bags and merchandise bags, paper and plastic party bags, paper party favors, lunch bags, gift wrapping materials, paper holiday decorations

Cl. 28: Games, toys and playthings, including plush toys, puppets, finger puppets, make-your-own puppet kits, stuffed animals hand-held units for playing electronic games, electronic educational game machines for children, dolls, rag dolls, paper dolls, doll accessories, toy action figures and accessories therefore, collectible toy figures, cases for dolls, cases for action figures, cases for play accessories, toy building blocks, toy construction blocks, toy banks, toy mobiles, infant toys, inflatable toys, bath toys, pull toys, wind-up toys, swim toys, swim floats for recreational use, water-squirting toys, sand toys, sandbox toys, toy vehicles, action skill games, board games, children's party games, cards games, jigsaw puzzles, manipulative puzzles, toy cube puzzles, toy model hobbycraft kits, toy modelling dough, toy gliders, balloons, bubble making wand and solution sets, boomerangs, kites, flying discs, yoyos, jump ropes, costume masks, party favors in the nature of small toys, adult and children's party games, pinatas, Christmas tree decorations, snow globes, snow boards, skate boards, body boards, athletic protective pads for knees and elbows

Cl. 41: Education; providing of training; entertainment; sporting and cultural activities; entertainment services, including an ongoing children's television series; motion picture films; theatrical programs; fan clubs; online entertainment services, namely information, interactive games, quizzes and fan clubs based on a children's television series; website featuring information, interactive games, quizzes and fan clubs based on a children's television series

16 Int.
28 Int.
41 Int.

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORDWORLD Color Logo | 0007604 Australia | ORD | 1204303 10-Oct-2007 | | 1204303 11-Mar-2008 | Registered 10-Oct-2017 |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:** Phillips Ormonde & Fitzpatrick

**Attorneys:**

**Client Ref:** 13457-1600

**Agent Ref:** 813627

**Classes:** 09 Int., 16 Int., 28 Int., 41 Int.

**Images/Links:**



Word World Logo (color)

# Trademark List by Country

| Trademark | Docket Number<br>Country | SubCase<br>Case Type | Application Number<br>Filing Date | Publication Number<br>Publication Date | Registration Number<br>Registration Date | Status<br>Next Renewal |
|---|---|---|---|---|---|---|

**Goods: 09 Int.**

Prerecorded video tapes, audio tapes, laser discs, video discs, compact discs, CD-ROMs, DVDs, and floppy discs featuring entertainment and educational programming for children; computer and video game software, downloadable computer and video game software, computer and video game cartridges, computer and video game programs, decorative magnets, cameras, calculators, computer game discs, electric switch plates, mouse pads; Sunglasses, radios incorporating clocks, portable stereos, karaoke machines, cassette players, compact disc players, portable DVD players, cameras, and headphones; Portable and handheld digital electronic devices for the development of reading, grammar, spelling and other academic skills for children; audio file on portable and handheld digital electronic devices; handheld computers; Portable and handheld video games for subscription based television; Educational computer and game software for handheld electronic devices featuring the development of reading, grammar and spelling and other academic skills for children; audio and video recordings featuring educational matter for children; Prerecorded compact disks and audiotapes featuring educational lessons and games that teach general academic subjects; downloadable musical sound recordings;

**16 Int.**

Children's books, children's activity books, children's coloring books, comic books, cook books, address books, engagement books, diaries, calendars, bookmarks, color prints, posters, post cards, greeting cards, trading cards, book covers, decalcomania, stickers; stationery, envelopes, memo pads, notebooks, notepads, ring binders, folders, pen and pencil cases, rulers, staplers, pencils, pens, pencil sharpeners, markers, rubber stamps, paper signs and banners for decorative purposes; paper party goods, namely hats, napkins, placemats and decorations; paper bags and merchandise bags, paper and plastic party bags, paper party favors, lunch bags, gift wrapping materials, paper holiday decorations, crayons, announcement cards, paper name tags, bookmarks, photo albums, tracing paper books, sketch books, decorations for pencils, extensions and attachments for pencils, erasers, tape dispensers, desktop organizers, bulletin boards, dry-erase writing boards, chalk boards, arts and crafts paint kits, temporary tattoos, card files, calendars, facial tissue, chalks, sidewalk chalks and stencils; Printed matter, namely, paper products, namely, educational books featuring math, spelling, grammar, geography, history, science, trivia and language arts; magazines and newsletters featuring math, spelling, grammar, geography, history, science, trivia and language arts; and workbooks for infants, children, young adults, and adults; cardboard floor displays for merchandising products, cardboard cartons, books for infants, children and young adults; picture books for infants, children and young adult books made of paper, cloth and plastic. crayons, decals, instruction manuals in the fields of math, spelling, grammar, geography, history, science, trivia and language arts, flash cards, maps, workbooks, gift wrapping paper, gift cards, paper party bags, paper party decorations, paper party hats, book covers, pens, word puzzles, stationery, school supplies, namely notepads, notebooks, drawing pads, construction paper, binders, and paper folders;

**28 Int.**

Games and toys, namely plush toys, puppets, finger puppets, make-your-own puppet kits, stuffed animals, hand-held units for playing electronic games, electronic educational game machines for children, dolls, rag dolls, paper dolls, doll accessories, toy action figures and accessories therefore, collectible toy figures, cases for dolls, cases for action figures, cases for play accessories, toy building blocks, toy construction blocks, toy banks, toy mobiles, infant toys, inflatable toys, bath toys, pull toys, wind-up toys, swim toys, swim floats for recreational use, water-squirting toys, sand toys, sandbox toys, toy vehicles, action skill games, board games, children's party games, card games, jigsaw puzzles, manipulative puzzles, toy cube puzzles, toy model hobby craft kits, toy modeling dough, toy gliders, balloons, bubble making wand and solution sets, boomerangs, kites, flying discs, yoyos, jump ropes, costume masks, party favors in the nature of small toys, adult and children's party games, pinatas, Christmas tree decorations, snow globes, costume masks, snow boards, skate boards, body boards, athletic protective pads for knees and elbows; Educational electronic toys, games, playthings, and handheld units for playing electronic games; Educational toys, namely electronic educational game machines and battery-operated learning units, namely batter-powered game units, all that teach children spelling, reading, grammar and other academic skills; Educational game machines for children; Transforming toy dump truck, tow truck, fire/rescue truck; Magnetic plush toys; Magnetic plush gift pack; Foam action puzzle; foam action play set; Toy phones, cameras, tool belts, and shopping baskets. Bath toy sets, bubble sub boats and bubble blowers; Sand toys beach set; Aquadoodle rainbow mat;

Country: Australia

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| | 41 Int. | | Entertainment services, namely, an ongoing children's television series; motion picture films; theatrical programs; fan clubs; online entertainment services, namely information, interactive games, quizzes and fan clubs based on a children's television series; website featuring information, interactive games, quizzes and fan clubs based on a children's television series; Entertainment services, namely providing an online computer game, providing a wide variety of information in the fields of entertainment, education, recreation, and games via the internet | | | |

## Trademark List by Country

| Trademark | Docket Number<br>Country | SubCase<br>Case Type | Application Number<br>Filing Date | Publication Number<br>Publication Date | Registration Number<br>Registration Date | Status<br>Next Renewal |
|---|---|---|---|---|---|---|
| WORDWORLD Logo | 0007603<br>Australia | ORD | 1204304<br>10-Oct-2007 | | 1204304<br>11-Mar-2008 | Registered<br>10-Oct-2017 |

**Owner:** Word World, LLC
**Client:** Word World, LLC
**Agent:** Phillips Ormonde & Fitzpatrick

**Classes:** 09 Int., 16 Int., 28 Int., 41 Int.

**Images/Links:**

**Attorneys: EHR, JV**
**Client Ref:** 13457-1600
**Agent Ref:** 813621



Word World Logo

| Trademark | Docket Number<br>Country | SubCase<br>Case File Type | Application Number<br>Filing Date | Publication Number<br>Publication Date | Registration Number<br>Registration Date | Status<br>Next Renewal |
|---|---|---|---|---|---|---|

**Goods: 09 Int.**

Class 9: Prerecorded video tapes, audio tapes, laser discs, video discs, compact discs, CD-ROMs, DVDs, and floppy discs featuring entertainment and educational programming for children; computer and video game software, downloadable computer and video game software, computer and video game cartridges, computer and video game programs, decorative magnets, cameras, calculators, computer game discs, electric switch plates, mouse pads; Sunglasses, radios, radios incorporating clocks, portable stereos, karaoke machines, cassette players, compact disc players, portable DVD players, cameras, and headphones; Portable and handheld digital electronic devices for the development of reading, grammar, spelling and other academic skills for children; audio file on portable and handheld digital electronic devices; handheld computers; Portable and handheld video games for subscription based television; Educational computer and game software for handheld electronic devices featuring the development of reading, grammar and spelling and other academic skills for children; audio and video recordings featuring educational matter for children; Prerecorded compact disks and audiotapes featuring educational lessons and games that teach general academic subjects; downloadable musical sound recordings;

Class 16: Children's books, children's activity books, children's coloring books, comic books, cook books, address books, engagement books, diaries, calendars, bookmarks, color prints, posters, post cards, greeting cards, trading cards, book covers, decalcomania, stickers, stationery, envelopes, memo pads, notebooks, notepads, ring binders, folders, pen and pencil cases, rulers, staplers, pencils, pens, pencil sharpeners, markers, rubber stamps, paper signs and banners for decorative purposes; paper party goods, namely hats, napkins, placemats and decorations; paper bags and merchandise bags, paper and plastic party bags, paper party favors, lunch bags, gift wrapping materials, paper holiday decorations, crayons, announcement cards, paper name tags, bookmarks, photo albums, tracing paper books, sketch books, decorations for pencils, extensions and attachments for pencils, erasers, tape dispensers, desktop organizers, bulletin boards, dry-erase writing boards, chalk boards, arts and crafts paint kits, temporary tattoos, card files, calendars, facial tissue, chalks, sidewalk chalks and stencils; Printed matter, namely, paper products, namely, educational books featuring math, spelling, grammar, geography, history, science, trivia and language arts; magazines and newsletters featuring math, spelling, grammar, geography, history, science, trivia and language arts; and workbooks for infants, children, young adults, and adults; cardboard floor displays for merchandising products, cardboard cartons, books for infants, children and young adults; picture books for infants, children and young adult books made of paper, cloth and plastic, crayons, decals, instruction manuals in the fields of math, spelling, grammar, geography, history, science, trivia and language arts, flash cards, maps, workbooks; gift wrapping paper, gift cards, paper party bags, paper party decorations, paper party hats, book covers, pens, word puzzles, stationery, school supplies, namely notepads, notebooks, drawing pads, construction paper, binders, and paper folders;

Class 28: Games and toys, namely plush toys, puppets, finger puppets, make-your-own puppet kits, stuffed animals, hand-held units for playing electronic games, electronic educational game machines for children, dolls, rag dolls, paper dolls, doll accessories, toy action figures and accessories therefore, collectible toy figures, cases for dolls, cases for action figures, cases for play accessories, toy building blocks, toy construction blocks, toy banks, toy mobiles, infant toys, inflatable toys, bath toys, pull toys, wind-up toys, swim toys, swim floats for recreational use, water-squirting toys, sand toys, sandbox toys, toy vehicles, action skill games, board games, children's party games, card games, jigsaw puzzles, manipulative puzzles, toy cube puzzles, toy model hobby craft kits, toy modeling dough, toy gliders, balloons, bubble making wand and solution sets, boomerangs, kites, flying discs, yoyos, jump ropes, costume masks, party favors in the nature of small toys, adult and children's party games, piñatas, Christmas tree decorations, snow globes, costume masks, snow boards, skate boards, body boards, athletic protective pads for knees and elbows; Educational electronic toys, games, playthings, namely video games, and handheld units for playing electronic games; Educational toys, namely electronic educational game machines and battery-operated learning units, namely batter-powered game units, all that teach children spelling, reading, grammar and other academic skills; Educational game machines for children; Transforming toy dump truck, tow truck, fire/rescue truck; Magnetic plush toys; magnetic plush gift

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|

pack; Foam action puzzle; foam action play set; Toy phones, cameras, tool belts, and shopping baskets. Bath toy sets, bubble sub boats and bubble blowers; Sand toys beach set; Aquadoodle rainbow mat;

Class 41: Entertainment services, namely, an ongoing children's television series; motion picture films; theatrical programs; fan clubs; online entertainment services, namely information, interactive games, quizzes and fan clubs based on a children's television series; website featuring information, interactive games, quizzes and fan clubs based on a children's television series; Entertainment services, namely providing an online computer game, providing a wide variety of information in the fields of entertainment, education, recreation, and games via the internet

16 Int.

28 Int.

41 Int.

| Trademark | Docket Number<br>Country | SubCase<br>Case Type | Application Number<br>Filing Date | Publication Number<br>Publication Date | Registration Number<br>Registration Date | Status<br>Next Renewal |
|---|---|---|---|---|---|---|
| WORD WORLD | 0006754<br>Canada | ORD | 1306780<br>27-Jul-2006 | 16-Jan-2008 | | Allowed |

**Owner:** Word World, LLC      **Attorneys:** EHR, JV

**Client:** Word World, LLC      **Client Ref:** 13457-100-6754

**Agent:** Bereskin & Parr      **Agent Ref:** 9386-8

**Classes:** 09 Int., 16 Int., 28 Int., 41 Int.

**Images/Links:**

**Goods:** 09 Int.

Cl. 9: Prerecorded video tapes, audio tapes, laser discs, video discs, compact discs, CD-ROMs, DVDs, and floppy discs featuring entertainment and educational programming for children; computer and video game software, downloadable computer and video game software, computer and video game cartridges, computer and video game programs, decorative magnets, cameras, calculators, computer game discs, electric switch plates, mouse pads.

16 Int.

Cl. 16: Children's books, children's activity books, children's coloring books, comic books, cook books, address books, engagement books, diaries, calendars, bookmarks, color prints, posters, post cards, greeting cards, trading cards, book covers, decalcomania, stickers; stationery; envelopes, memo pads, notebooks, notepads, ring binders, folders, pen and pencil cases, rulers, staplers, pencils, pens, pencil sharpeners, markers, rubber stamps, paper signs and banners for decorative purposes; paper party goods, namely hats, napkins, placemats and decorations; paper bags and merchandise bags, paper and plastic party bags, paper party favors, lunch bags, gift wrapping materials, paper holiday decorations.

28 Int.

Cl. 28: Games and toys, namely plush toys, puppets, finger puppets, make-your-own puppet kits, stuffed animals, hand-held units for playing electronic games, electronic educational game machines for children, dolls, rag dolls, paper dolls, doll accessories, toy action figures and accessories therefor, collectible toy figures, cases for dolls, cases for action figures, cases for play accessories, toy building blocks, toy construction blocks, toy banks, toy mobiles, infant toys, inflatable toys, bath toys, pull toys, wind-up toys, swim toys, swim floats for recreational use, water-squirting toys, sand toys, sandbox toys, toy vehicles, action skill games, board games, children's party games, card games, jigsaw puzzles, manipulative puzzles, toy cube puzzles, toy model hobby craft kits, toy modeling dough, toy gliders, balloons, bubble making wand and solution sets, boomerangs, kites, flying discs, yoyos, jump ropes, costume masks, party favors in the nature of small toys, adult and children's party games, piñatas, Christmas tree decorations, snow globes, costume masks, snow boards, skate boards, body boards, athletic protective pads for knees and elbows.

41 Int.

Cl. 41: Entertainment services, namely, an ongoing children's television series; motion picture films; theatrical programs; fan clubs; online entertainment services, namely information, interactive games, quizzes and fan clubs based on a children's television series; website featuring information, interactive games, quizzes and fan clubs based on a children's television series.

| Trademark | Docket Number<br>Country | SubCase<br>Case Type | Application Number<br>Filing Date | Publication Number<br>Publication Date | Registration Number<br>Registration Date | Status<br>Next Renewal |
|---|---|---|---|---|---|---|
| WORDFRIENDS | 0006806<br>Canada | ORD | 1306785<br>27-Jun-2006 | 16-Jan-2008 | | Allowed |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:** Bereskin & Parr

**Attorneys:** EHC, JV

**Client Ref:** 13457-0100-6806

**Agent Ref:** 9386-10

**Classes:** 09 Int., 16 Int., 28 Int., 41 Int.

**Images/Links:**

**Goods:** 09 Int.

Cl. 9: Prerecorded video tapes, audio tapes, laser discs, video discs, compact discs, CD-ROMs, DVDs, and floppy discs featuring entertainment and educational programming for children; computer and video game software, downloadable computer and video game software, computer and video game cartridges, computer and video game programs, decorative magnets, cameras, calculators, computer game discs, electric switch plates, mouse pads.

16 Int.

Cl. 16: Children's books, children's activity books, children's coloring books, comic books, cook books, address books, engagement books, diaries, calendars, bookmarks, color prints, posters, post cards, greeting cards, trading cards, book covers, decalcomania, stickers; stationery; envelopes, memo pads, notebooks, notepads, ring binders, folders, pen and pencil cases, rulers, staplers, pencils, pens, pencil sharpeners, markers, rubber stamps, paper signs and banners for decorative purposes; paper party goods, namely hats, napkins, placemats and decorations; paper bags and merchandise bags, paper and plastic party bags, paper party favors, lunch bags, gift wrapping materials, paper holiday decorations.

28 Int.

Cl. 28: Games and toys, namely plush toys, puppets, finger puppets, make-your-own puppet kits, stuffed animals, hand-held units for playing electronic games, electronic educational game machines for children, dolls, rag dolls, paper dolls, doll accessories, toy action figures and accessories therefor, collectible toy figures, cases for dolls, cases for action figures, cases for play accessories, toy building blocks, toy construction blocks, toy banks, toy mobiles, infant toys, inflatable toys, bath toys, pull toys, wind-up toys, swim toys, swim floats for recreational use, water-squirting toys, sand toys, sandbox toys, toy vehicles, action skill games, board games, children's party games, card games, jigsaw puzzles, manipulative puzzles, toy cube puzzles, toy model hobby craft kits, toy modeling dough, toy gliders, balloons, bubble making wand and solution sets, boomerangs, kites, flying discs, yoyos, jump ropes, costume masks, party favors in the nature of small toys, adult and children's party games, pinatas, Christmas tree decorations, snow globes, costume masks, snow boards, skate boards, body boards, athletic protective pads for knees and elbows.

41 Int.

Cl. 41: Entertainment services, namely, an ongoing children's television series; motion picture films; theatrical programs; fan clubs; online entertainment services, namely information, interactive games, quizzes and fan clubs based on a children's television series; website featuring information, interactive games, quizzes and fan clubs based on a children's television series.

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORDTHINGS | 0006755 Canada | ORD | 1306784 07-Jun-2006 | 16-Jan-2008 | | Allowed |

**Owner:** Word World, LLC  
**Client:** Word World, LLC  
**Agent:** Bereskin & Parr  

**Attorneys: EHR, JV**  
**Client Ref: 13457-100-6755**  
**Agent Ref: 9386-9**

**Classes:** 09 Int., 16 Int., 28 Int., 41 Int.

**Images/Links:**

**Goods:** 09 Int.

Cl. 9: Prerecorded video tapes, audio tapes, laser discs, video discs, compact discs, CD-ROMs, DVDs, and floppy discs featuring entertainment and educational programming for children; computer and video game software, downloadable compute and video game software, computer and video game cartridges, computer and video game programs, decorative magnets, cameras, calculators, computer game discs, electric switch plates, mouse pads.

16 Int.

Cl. 16: Children's books, children's activity books, children's coloring books, comic books, cook books, address books, engagement books, diaries, calendars, bookmarks, color prints, posters, post cards, greeting cards, trading cards, book covers, decalcomania, stickers; stationery; envelopes, memo pads, notebooks, notepads, ring binders, folders, pen and pencil cases, rulers, staplers, pencils, pens, pencil sharpeners, markers, rubber stamps, paper signs and banners for decorative purposes; paper party goods, namely hats, napkins, placemats and decorations; paper bags and merchandise bags, paper and plastic party bags, paper party favors, lunch bags, gift wrapping materials, paper holiday decorations.

28 Int.

Cl. 28: Games and toys, namely plush toys, puppets, finger puppets, make-your-own puppet kits, stuffed animals, hand-held units for playing electronic games, electronic educational game machines for children, dolls, rag dolls, paper dolls, doll accessories, toy action figures and accessories therefor, collectible toy figures, cases for dolls, cases for action figures, cases for play accessories, toy building blocks, toy construction blocks, toy banks, toy mobiles, infant toys, inflatable toys, bath toys, pul toys, wind-up toys, swim toys, swim floats for recreational use, water-squirting toys, sand toys, sandbox toys, toy vehicles, action skill games, board games, children's party games, card games, jigsaw puzzles, manipulative puzzles, toy cube puzzles, toy model hobby craft kits, toy modeling dough, toy gliders, balloons, bubble making wand and solution sets, boomerangs, kites, flying discs, yoyos, jump ropes, costume masks, party favors in the nature of small toys, adult and children's party games, piñatas, Christmas tree decorations, snow globes, costume masks, skate boards, body boards, athletic protective pads for knees and elbows.

41 Int.

Cl. 41: Entertainment services, namely, an ongoing children's television series; motion picture films; theatrical programs; fan clubs; online entertainment services, namely information, interactive games, quizzes and fan clubs based on a children's television series; website featuring information, interactive games, quizzes and fan clubs based on a children's television series.

| Trademark | Docket Number / Country | SubCase / Case Type | Application Number / Filing Date | Publication Number / Publication Date | Registration Number / Registration Date | Status / Next Renewal |
|---|---|---|---|---|---|---|
| WORDWORLD Color Logo | 0007602 | | 1368538 | | | Allowed |
| | Canada | ORD | 22-Oct-2007 | 07-Apr-2010 | | |

**Owner:** Word World, LLC    **Attorneys:** EHR, MJS

**Client:** Word World, LLC    **Client Ref:** 13457-1600-7602

**Agent:** Bereskin & Parr    **Agent Ref:** 9386-20

**Classes:** 09 Int., 16 Int., 28 Int., 41 Int.

**Images/Links:**



Word World Logo (color)

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|

**Goods: 09 Int.**

Class 9: Prerecorded video tapes, audio tapes, laser discs, video discs, compact discs, CD-ROMs, DVDs, and floppy discs featuring entertainment and educational programming for children; computer and video game software, downloadable computer and video game software, computer and video game cartridges, computer and video game programs, decorative magnets, cameras, calculators, computer game discs, electric switch plates, mouse pads; Sunglasses, radios, radios incorporating clocks, portable stereos, karaoke machines, cassette players, compact disc players, portable DVD players, cameras, and headphones; Portable and handheld electronic booksand hand-held computer consoles; hand-helad computers; portable and hand held video games for subscription based television, educational computer and games software (for hand held electronic devices featuring f the development of reading, grammar, spelling and other academic skills for children; audio and video recordings, nanley, video taped, CD-ROMs, compact discs, video discs, digital audio and video files and DVDs featuring educational matters for children, namely books and intractive games and puzzles, prerecorded compact discs ans audiotapes featuring games and educational software featuring instruction in reading, literacy and other academic and social sills for children, downloadable musical sound recordings.

**16 Int.**

Class 16: Children's books, children's activity books, children's coloring books, comic books, cook books, address books, engagement books, diaries, calendars, bookmarks, color prints, posters, post cards, greeting cards, trading cards, book covers, decalcomania, stickers; stationery, envelopes, memo pads, notebooks, ring binders, folders, pen and pencil cases, rulers, staplers, pencils, pens, pencil sharpeners, markers, rubber stamps, paper signs and banners for decorative purposes; paper party goods, namely hats, napkins, placemats and decorations; paper bags and merchandise bags, paper and plastic party bags, paper party favors, lunch bags, gift wrapping materials, paper holiday decorations, crayons, announcement cards, paper name tags, bookmarks, photo albums, tracing paper books, sketch books, decorations for pencils, extensions and attachments for pencils, erasers, tape dispensers, desktop organizers, bulletin boards, dry-erase writing boards, chalk boards, arts and crafts paint kits, temporary tattoos, card files, calendars, facial tissue, chalks, sidewalk chalks and stencils; Printed matter, namely, paper products, namely, educational books featuring math, spelling, grammar, geography, history, science, trivia and language arts; magazines and newsletters featuring math, spelling, grammar, geography, history, science, trivia and language arts; and workbooks for infants, children, young adults, and adults; cardboard floor displays for merchandising products, cardboard cartons, books for infants, children and young adults; picture books for infants, children and young adult books made of paper, cloth and plastic; crayons, decals, instruction manuals in the fields of math, spelling, grammar, geography, history, science, trivia and language arts, flash cards, maps, workbooks; gift wrapping paper, gift cards, paper party bags, paper party decorations, paper party hats, book covers, pens, word puzzles, stationery, school supplies, namely notepads, notebooks, drawing pads, construction paper, binders, and paper folders.

| Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|

**Trademark**

**28 Int.** Class 28: Games and toys, namely plush toys, puppets, finger puppets, make-your-own puppet kits, stuffed animals, hand-held units for playing electronic games, electronic educational game machines for children, dolls, rag dolls, paper dolls, doll accessories, toy action figures and accessories therefore, collectible toy figures, cases for dolls, cases for action figures, cases for play accessories, toy building blocks, toy construction blocks, toy banks, toy mobiles, infant toys, inflatable toys, bath toys, pull toys, wind-up toys, swim toys, swim floats for recreational use, water-squirting toys, sand toys, sandbox toys, toy vehicles, action skill games, board games, children's party games, card games, jigsaw puzzles, manipulative puzzles, toy cube puzzles, toy model hobby craft kits, toy modeling dough, toy gliders, balloons, bubble making wand and solution sets, boomerangs, kites, flying discs, yoyos, jump ropes, costume masks, party favors in the nature of small toys, adult and children's party games, piñatas, Christmas tree decorations, snow globes, costume masks, snow boards, skate boards, body boards, athletic protective pads for knees and elbows; educational electronic toys, games, playthings, namely video games, and handheld units for playing electronic games; educational toys, namely electronic educational game machines and battery-operated hand -helad computer consoles and hand-heald electronic books, all teaching children spelling, reading, grammer and other academic shills; educational games machines for children; trnasforming toy dump truck, tow truck, fire/rescue truck, magnetic plush tous; magnetic plush gift pack; foam action puzzle; foam action play set; toy phones, cameras, tool belts, and shopping baskets; bath toy sets, bubble sub boats, and bubble blowers; sand beach set; toy rainbow mats for drawing.

**41 Int.** Class 41: Entertainment services, namely, an ongoing children's television series; motion picture films; theatrical programs; fan clubs; online entertainment services, namely information, interactive games, quizzes and fan clubs based on a children's television series; website featuring information, interactive games, quizzes and fan clubs based on a children's television series; entertainment services, namely providing an online computer game, providing a wide variety of information in the fields of entertainment, education, recreation, and games via the internet

| Trademark | Docket Number<br>Country | SubCase<br>Case Type | Application Number<br>Filing Date | Publication Number<br>Publication Date | Registration Number<br>Registration Date | Status<br>Next Renewal |
|---|---|---|---|---|---|---|
| WORDWORLD Logo | 0007601<br>Canada | ORD | 1368543<br>22-Oct-2007 | 07-Apr-2010 | | Allowed |

**Owner:** Word World, LLC              **Attorneys:** EHR, MJS

**Client:** Word World, LLC             **Client Ref:** 13457-1600-7601

**Agent:** Bereskin & Parr               **Agent Ref:** 9386-019

**Classes:** 09 Int., 16 Int., 28 Int., 41 Int.

**Images/Links:**



Word World Logo

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|

**Goods: 09 Int.**

Prerecorded video tapes, audio tapes, laser discs, video discs, compact discs, CD-ROMs, DVDs, and floppy discs featuring entertainment and educational programming for children; computer and video game software, downloadable computer and video game software, computer and video game cartridges; computer and video game programs, decorative magnets, cameras, calculators, computer game discs, electric switch plates, mouse pads; sunglasses, radios, radios incorporating clocks, portable stereos, karaoke machines, cassette players, compact disc players, portable DVD players, cameras, and headphones; portable and hand-held electronic books and hand-held computer consoles for the development of reading, grammar, spelling and other academic skills for children; prerecorded audio files, namely, audio books, computer games, movies, music, TV programs and narration to be used with portable and handheld electronic books and hand-held computer consoles; hand-held computers; portable and handheld video games for subscription based television; educational computer and game software for handheld electronic devices featuring the development of reading, grammar and spelling and other academic skills for children; audio and video recordings, namely, video tapes, CD-ROMs, compact discs, video discs, digital audio and video files and DVDs featuring educational matter for children, namely, books and interactive games and puzzles; prerecorded compact discs and audiotapes featuring games and educational software featuring instruction in reading, literacy and other academic and social skills for children; downloadable musical sound recordings

**16 Int.**

Children's books, children's activity books, children's coloring books, comic books, cook books, address books, engagement books, diaries, calendars, bookmarks, color prints, posters, post cards, greeting cards, trading cards, book covers, decalcomania, stickers; stationery, namely, envelopes, memo pads, notebooks, notepads, ring binders, folders, pen and pencil cases, rulers, staplers, pencils, pens, pencil sharpeners, markers, rubber stamps, paper signs and banners for decorative purposes; paper party goods, namely hats, napkins, placemats and decorations; paper bags and merchandise bags, paper and plastic party bags, paper party favors, lunch bags, gift wrapping materials, paper holiday decorations, crayons, announcement cards, paper name tags, bookmarks, photo albums, tracing paper books, sketch books, decorations for pencils, extensions and attachments for pencils, erasers, tape dispensers, desktop organizers, bulletin boards, dry-erase writing boards, chalk boards, arts and crafts paint kits, temporary tattoos, card files, calendars, facial tissue, chalks, sidewalk chalks and stencils; printed matter, namely, paper products, namely, educational books featuring math, spelling, grammar, geography, history, science, trivia and language arts; magazines and newsletters featuring math, spelling, grammar, geography, history, science, trivia and language arts; and workbooks for infants, children, young adults, and adults; cardboard floor displays for merchandising products, cardboard cartons, books for infants, children and young adults; picture books for infants, children and young adult books made of paper, cloth and plastic; crayons, decals, instruction manuals in the fields of math, spelling, grammar, geography, history, science, trivia and language arts, flash cards, maps, workbooks, gift wrapping paper, gift cards, paper party bags, paper party decorations, paper party hats, book covers, pens, word puzzles, school supplies, namely notepads, notebooks, drawing pads, construction paper, binders, and paper folders

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| | 28 Int. | | Games and toys, namely plush toys, puppets, finger puppets, make-your-own puppet kits, stuffed animals, hand-held units for playing electronic games, electronic educational game machines for children, dolls, rag dolls, paper dolls, doll accessories, toy action figures and accessories therefore, collectible toy figures, cases for dolls, cases for action figures, cases for play accessories, toy building blocks, toy construction blocks, toy banks, toy mobiles, infant toys, inflatable toys, bath toys, pull toys, wind-up toys, swim toys, swim floats for recreational use, water-squirting toys, sand toys, sandbox toys, toy vehicles, action skill games, board games, children's party games, card games, jigsaw puzzles, manipulative puzzles, toy cube puzzles, toy model hobby and craft kits, toy modeling dough, toy gliders, balloons, bubble making wand and solution sets, boomerangs, kites, flying discs, return type tops, jump ropes, costume masks, party favors, namely, small toys, adult and children's party games, piñatas, Christmas tree decorations, snow globes, costume masks, costume masks, skate boards, body boards, athletic protective pads for knees and elbows; educational electronic toys, games, playthings, namely video games, and handheld units for playing electronic games; educational toys, namely electronic educational game machines and battery-operated learning units, namely battery-operated hand-held computer consoles and hand-held electronic books, all teaching children spelling, reading, grammar and other academic skills; educational game machines for children; transforming toy dump truck, tow truck, fire/rescue truck; magnetic plush toys; magnetic plush gift pack; foam action puzzle; foam action play set; toy phones, cameras, tool belts, and shopping baskets; bath toy sets, bubble sub boats and bubble blowers; sand toys beach set; toy rainbow mats for drawing | | |
| | 41 Int. | | Entertainment services, namely, an ongoing children's television series; production and distribution of motion picture films; production of theatrical programs; operation of fan clubs; online entertainment services, namely providing information, interactive games, quizzes and fan clubs based on a children's television series, operating a website featuring information, interactive games, quizzes and fan clubs based on a children's television series; entertainment services, namely providing an online computer game, providing a wide variety of information in the fields of entertainment, education, recreation, and games via the internet | | |

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WHERE WORDS COME ALIVE | 0006310 European Community | ORD | 4421012 03-May-2005 | 07-Nov-2005 | 4421012 31-May-2006 | Registered 03-May-2015 |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:** Olswang

**Attorneys:**

**Client Ref:** 13457-1600

**Agent Ref:**

**Classes:** 09 Int., 16 Int., 28 Int., 41 Int.

**Images/Links:**

**Goods:** 09 Int.

Class 9: Prerecorded video tapes, audio tapes, laser discs, video discs, compact discs, CD-ROMs, DVDs, and floppy discs featuring entertainment and educational programming for children; computer and video game software, downloadable computer and video game software, computer and video game cartridges, computer and video game programs, decorative magnets, cameras, calculators, computer game discs, electric switch plates, mouse pads

Class 16: Children's books, children's activity books, children's coloring books, comic books, cook books, address books, engagement books, diaries, calendars, bookmarks, color prints, posters, post cards, greeting cards, trading cards, book covers, decalcomania, stickers; stationery, envelopes, memo pads, notebooks, notepads, ring binders, folders, pen and pencil cases, rulers, staplers, pencils, pens, pencils sharpeners, markers, rubber stamps, paper signs and banners for decorative purposes; paper party goods, namely hats, napkins, placemats and decorations; paper bags and merchandise bags, paper and plastic party bags, paper party favors, lunch bags, gift wrapping materials, paper holiday decorations

Class 28: Games and toys, namely plush toys, puppets, finger puppets, make-your-own puppet kits, stuffed animals, hand-held units for playing electronic games, electronic educational game machines for children, dolls, rag dolls, paper dolls, doll accessories, toy action figures and accessories therefore, collectible toy figures, cases for dolls, cases for action figures, cases for play accessories, toy building blocks, toy construction blocks, toy banks, toy mobiles, infant toys, inflatable toys, bath toys, pull toys, wind-up toys, swim toys, swim floats for recreational use, water-squirting toys, sand toys, sandbox toys, toy vehicles, action skill games, board games, children's party games, cards games, jigsaw puzzles, manipulative puzzles, toy cube puzzles, toy model hobbycraft kits, toy modeling dough, toy gliders, balloons, bubble making wand and solution sets, boomerangs, kites, flying discs, yoyos, jump ropes, costume masks, party favors in the nature of small toys, adult and children's party games, piñatas, Christmas tree decorations, snow globes, snow boards, skate boards, body boards, athletic protective pads for knees and elbows

Class 41: Entertainment services, namely an ongoing children's television series; motion picture films; theatrical programs; fan clubs; online entertainment services, namely information, interactive games, quizzes and fan clubs based on a children's television series; website featuring information, interactive games, quizzes and fan clubs based on a children's television series

16 Int.

28 Int.

41 Int.

## Trademark List by Country

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|-----------|----------------------|-------------------|-------------------------------|------------------------------------|--------------------------------------|---------------------|
| WORD WORLD | 0006307 European Community | ORD | 4421021 03-May-2005 | 4421021 17-Oct-2005 | 4421021 08-May-2006 | Registered 03-May-2015 |

**Owner:** Word World, LLC
**Client:** Word World, LLC
**Agent:** Olswang

**Attorneys:**
**Client Ref:** 13457-1600
**Agent Ref:**

**Classes:** 09 Int, 16 Int, 28 Int, 41 Int.

**Images/Links:**

**Goods:** 09 Int.

Class 9: Prerecorded video tapes, audio tapes, laser discs, video discs, compact discs, CD-ROMs, DVDs, and floppy discs featuring entertainment and educational programming for children; computer and video game software, downloadable computer and video game software, computer and video game cartridges, computer and video game programs, decorative magnets, cameras, calculators, computer game discs, electric switch plates, mouse pads

Class 16: Children's books, children's activity books, children's coloring books, comic books, cook books, address books, engagement books, diaries, calendars, bookmarks, color prints, posters, post cards, greeting cards, trading cards, book covers, decalcomania, stickers; stationery, envelopes, memo pads, notebooks, notepads, ring binders, folders, pen and pencil cases, rulers, staplers, pencils, pens, pencils sharpeners, markers, rubber stamps, paper signs and banners for decorative purposes; paper party goods, namely hats, napkins, placemats and decorations; paper bags and merchandise bags, paper and plastic party bags, paper party favors, lunch bags, gift wrapping materials, paper holiday decorations

Class 28: Games and toys, namely plush toys, puppets, finger puppets, make-your-own puppet kits, stuffed animals, hand-held units for playing electronic games, electronic educational game machines for children, dolls, rag dolls, paper dolls, doll accessories, toy action figures and accessories therefore, collectible toy figures, cases for dolls, cases for action figures, cases for play accessories, toy building blocks, toy construction blocks, toy banks, toy mobiles, infant toys, inflatable toys, bath toys, pull toys, wind-up toys, swim toys, swim floats for recreational use, water-squirting toys, sand toys, sandbox toys, toy vehicles, action skill games, board games, children's party games, cards games, jigsaw puzzles, manipulative puzzles, toy cube puzzles, toy model hobbycraft kits, toy modeling dough, toy gliders, balloons, bubble making wand and solution sets, boomerangs, kites, flying discs, yoyos, jump ropes, costume masks, party favors in the nature of small toys, adult and children's party games, piñatas, Christmas tree decorations, snow globes, snow boards, skate boards, body boards, athletic protective pads for knees and elbows

Class 41: Entertainment services, namely an ongoing children's television series; motion picture films; theatrical programs; fan clubs; online entertainment services, namely information, interactive games, quizzes and fan clubs based on a children's television series; website featuring information, interactive games, quizzes and fan clubs based on a children's television series

16 Int.
28 Int.
41 Int.

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORD WORLD & Design | 0006308 European Community | ORD | 4438651 03-May-2005 | 14-Aug-2006 | 4438651 07-Aug-2006 | Registered 03-May-2015 |

**Owner:** Word World, LLC
**Client:** Word World, LLC
**Agent:** Olswang

**Attorneys:**
**Client Ref:** 13457-1600
**Agent Ref:**

Classes: 09 Int., 16 Int., 28 Int., 41 Int.

**Images/Links:**



Word World Where Words
Come Alive & Design

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|

**Goods: 09 Int.**

Class 9: Prerecorded video tapes, audio tapes, laser discs, video discs, compact discs, CD-ROMs, DVDs, and floppy discs featuring entertainment and educational programming for children; computer and video game software, downloadable computer and video game software, computer and video game cartridges, computer and video game programs, decorative magnets, cameras, calculators, computer game discs, electric switch plates, mouse pads

Class 16: Children's books, children's activity books, children's coloring books, comic books, cook books, address books, engagement books, diaries, calendars, bookmarks, color prints, posters, post cards, greeting cards, trading cards, book covers, decalcomania, stickers, stationery, envelopes, memo pads, notebooks, notepads, ring binders, folders, pen and pencil cases, rulers, staplers, pencils, pens, pencils sharpeners, markers, rubber stamps, paper signs and banners for decorative purposes; paper party goods, namely hats, napkins, placemats and decorations; paper bags and merchandise bags, paper and plastic party bags, paper party favors, lunch bags, gift wrapping materials, paper holiday decorations

Class 28: Games and toys, namely plush toys, puppets, finger puppets, make-your-own puppet kits, stuffed animals, hand-held units for playing electronic games, electronic educational game machines for children, dolls, rag dolls, paper dolls, doll accessories, toy action figures and accessories therefore, collectible toy figures, cases for dolls, cases for action figures, cases for play accessories, toy building blocks, toy construction blocks, toy banks, toy mobiles, infant toys, inflatable toys, bath toys, pull toys, wind-up toys, swim toys, swim floats for recreational use, water-squirting toys, sand toys, sandbox toys, toy vehicles, action skill games, board games, children's party games, cards games, jigsaw puzzles, manipulative puzzles, toy cube puzzles, toy model hobbycraft kits, toy modeling dough, toy gliders, balloons, bubble making wand and solution sets, boomerangs, kites, flying discs, yoyos, jump ropes, costume masks, party favors in the nature of small toys, adult and children's party games, piñatas, Christmas tree decorations, snow globes, snow boards, skate boards, body boards, athletic protective pads for knees and elbows

Class 41: Entertainment services, namely an ongoing children's television series; motion picture films; theatrical programs; fan clubs; online entertainment services, namely information, interactive games, quizzes and fan clubs based on a children's television series; website featuring information, interactive games, quizzes and fan clubs based on a children's television series

16 Int.

28 Int.

41 Int.

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|-----------|----------------------|-------------------|-------------------------------|------------------------------------|--------------------------------------|---------------------|
| WORDFRIENDS | 0006814 European Community | ORD | 5247201 08-Aug-2006 | 5247201 22-Jan-2007 | 5247201 02-Aug-2007 | Registered 08-Aug-2016 |

Owner: Word World, LLC

Client: Word World, LLC

Agent:

Attorneys:

Client Ref: 13457

Agent Ref:

Classes: 09 Int, 16 Int, 28 Int, 41 Int.

Images/Links:

Goods: 09 Int.

Prerecorded video tapes, audio tapes, laser discs, video discs, compact discs, CD-ROMs, DVDs, and floppy discs featuring entertainment and educational programming for children; computer and video game software, downloadable computer and video game software, computer and video game cartridges, computer and video game programs, decorative magnets, cameras, calculators, computer game discs, electric switch plates, mouse pads.

Children's books, children's activity books, children's coloring books, comic books, cook books, address books, engagement books, diaries, calendars, bookmarks, color prints, posters, post cards, greeting cards, trading cards, book covers, decalcomania, stickers; stationery, envelopes, memo pads, notebooks, notepads, ring binders, folders, pen and pencil cases, rulers, staplers, pencils, pens, pencil sharpeners, markers, rubber stamps, paper signs and banners for decorative purposes; paper party goods, namely hats, napkins, placemats and decorations; paper bags and merchandise bags, paper and plastic party bags, paper party favors, lunch bags, gift wrapping materials, paper holiday decorations.

Games and toys, namely plush toys, puppets, finger puppets, make-your-own puppet kits, stuffed animals, hand-held units for playing electronic games, electronic educational game machines for children, dolls, rag dolls, paper dolls, doll accessories, toy action figures and accessories therefor, collectible toy figures, cases for dolls, cases for action figures, cases for play accessories, toy building blocks, toy construction blocks, toy banks, toy mobiles, infant toys, inflatable toys, bath toys, pull toys, wind-up toys, swim toys, swim floats for recreational use, water-squirting toys, sand toys, sandbox toys, toy vehicles, action skill games, board games, children's party games, card games, jigsaw puzzles, manipulative puzzles, toy cube puzzles, toy model hobby craft kits, toy modeling dough, toy gliders, balloons, bubble making wand and solution sets, boomerangs, kites, flying discs, yoyos, jump ropes, costume masks, party favors in the nature of small toys, adult and children's party games, piñatas, Christmas tree decorations, snow globes, costume masks, snow boards, skate boards, body boards, athletic protective pads for knees and elbows.

16 Int.

28 Int.

41 Int.

Entertainment services, namely, an ongoing children's television series; motion picture films; theatrical programs; fan clubs; online entertainment services, namely information, interactive games, quizzes and fan clubs based on a children's television series; website featuring information, interactive games, quizzes and fan clubs based on a children's television series.

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORDTHINGS | 0006309 European Community | ORD | 4420188 03-May-2005 | 4420188 31-Oct-2005 | 4420188 24-May-2006 | Registered 03-May-2015 |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:** Olswang

**Attorneys:**

**Client Ref:** 13457-1600

**Agent Ref:**

**Classes:** 09 Int., 16 Int., 28 Int., 41 Int.

**Images/Links:**

**Goods:** 09 Int.

Class 9: Prerecorded video tapes, audio tapes, laser discs, video discs, compact discs, CD-ROMs, DVDs, and floppy discs featuring entertainment and educational programming for children; computer and video game software, downloadable computer and video game software, computer and video game cartridges, computer and video game programs, decorative magnets, cameras, calculators, computer game discs, electric switch plates, mouse pads

Class 16: Children's books, children's activity books, children's coloring books, comic books, cook books, address books, engagement books, diaries, calendars, bookmarks, color prints, posters, post cards, greeting cards, trading cards, book covers, decalcomania, stickers; stationery, envelopes, memo pads, notebooks, notepads, ring binders, folders, pen and pencil cases, rulers, staplers, pencils, pens, pencils sharpeners, markers, rubber stamps, paper signs and banners for decorative purposes; paper party goods, namely hats, napkins, placemats and decorations; paper bags and merchandise bags, paper and plastic party bags, paper party favors, lunch bags, gift wrapping materials, paper holiday decorations

Class 28: Games and toys, namely plush toys, puppets, finger puppets, make-your-own puppet kits, stuffed animals, hand-held units for playing electronic games, electronic educational game machines for children, dolls, rag dolls, paper dolls, doll accessories, toy action figures and accessories therefore, collectible toy figures, cases for dolls, cases for action figures, cases for play accessories, toy building blocks, toy construction blocks, toy banks, toy mobiles, infant toys, inflatable toys, bath toys, pull toys, wind-up toys, swim toys, swim floats for recreational use, water-squirting toys, sand toys, sandbox toys, toy vehicles, action skill games, board games, children's party games, cards games, jigsaw puzzles, manipulative puzzles, toy cube puzzles, toy model hobbycraft kits, toy modeling dough, toy gliders, balloons, bubble making wand and solution sets, boomerangs, kites, flying discs, yoyos, jump ropes, costume masks, party favors in the nature of small toys, adult and children's party games, piñatas, Christmas tree decorations, snow globes, snow boards, skate boards, body boards, athletic protective pads for knees and elbows

Class 41: Entertainment services, namely an ongoing children's television series; motion picture films; theatrical programs; fan clubs; online entertainment services, namely information, interactive games, quizzes and fan clubs based on a children's television series; website featuring information, interactive games, quizzes and fan clubs based on a children's television series

16 Int.

28 Int.

41 Int.

| Trademark | Docket Number / Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORDWORLD Logo | 0007605 | ORD | 6384721 | 30-Jun-2008 | 6384721 | Registered |
| | European Community | | 10-Oct-2007 | | 09-Oct-2008 | 10-Oct-2017 |

**Owner:** Word World, LLC
**Client:** Word World, LLC
**Agent:** Olswang

**Attorneys:** EHR, MXG
**Client Ref:** 13457-1600
**Agent Ref:** JAB/SJW/F4341.58EM

Classes: 09 Int., 16 Int., 28 Int., 41 Int.

**Images/Links:**



Word World Logo

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| | **Goods: 09 Int.** | | | | | |

Class 9: Prerecorded video tapes, audio tapes, laser discs, video discs, compact discs, CD-ROMs, DVDs, and floppy discs featuring entertainment and educational programming for children; computer and video game software, downloadable computer and video game software, computer and video game cartridges, computer and video game programs, decorative magnets; cameras, calculators, computer game discs, electric switch plates, mouse pads; Sunglasses, radios, radios incorporating clocks, portable stereos, karaoke machines, cassette players, compact disc players, portable DVD players, cameras, and headphones; Portable and handheld digital electronic devices for the development of reading, grammar, spelling and other academic skills for children; audio file on portable and handheld digital electronic devices; handheld computers; Portable and handheld video games for subscription based television; Educational computer and game software for handheld electronic devices featuring the development of reading, grammar and spelling and other academic skills for children; audio and video recordings featuring educational matter for children; Prerecorded compact disks and audiotapes featuring educational lessons and games that teach general academic subjects; downloadable musical sound recordings.

| | **16 Int.** | | | | | |

Class 16: Children's books, children's activity books, children's coloring books, comic books, cook books, address books, engagement books, diaries, calendars, bookmarks, color prints, posters, post cards, greeting cards, trading cards, book covers, decalcomania, stickers; stationery; envelopes, memo pads, notebooks, notepads, ring binders, folders, pen and pencil cases, rulers, staplers, pencils, pens, pencil sharpeners, markers, rubber stamps, paper signs and banners for decorative purposes; paper party goods, namely hats, napkins, placemats and decorations, paper bags and merchandise bags, paper and plastic party bags, paper party favors, lunch bags, gift wrapping materials, paper holiday decorations, crayons, announcement cards, paper name tags, bookmarks, photo albums, tracing paper books, sketch books, decorations for pencils, extensions and attachments for pencils, erasers, tape dispensers, desktop organizers, bulletin boards, dry-erase writing boards, chalk boards, arts and crafts paint kits, temporary tattoos, card files, calendars, facial tissue, chalks, sidewalk chalks and stencils; Printed matter, namely, paper products, namely, educational books featuring math, spelling, grammar, geography, history, science, trivia and language arts; magazines and newsletters featuring math, spelling, grammar, geography, history, science, trivia and language arts; and workbooks for infants, children, young adults, and adults; cardboard floor displays for merchandising products, cardboard cartons, books for infants, children and young adults; picture books for infants, children and young adult books made of paper, cloth and plastic. crayons, decals, instruction manuals in the fields of math, spelling, grammar, geography, history, science, trivia and language arts, flash cards, maps, workbooks, gift wrapping paper, gift cards, paper party bags, paper party decorations, paper party hats, book covers, pens, word puzzles, stationery, school supplies, namely notepads, notebooks, drawing pads, construction paper, binders, and paper folders.

| | **28 Int.** | | | | | |

Class 28: Games and toys, namely plush toys, puppets, finger puppets, make-your-own puppet kits, stuffed animals, hand-held units for playing electronic games, electronic educational game machines for children, dolls, rag dolls, paper dolls, doll accessories, toy action figures and accessories therefore, collectible toy figures, cases for dolls, cases for action figures, cases for play accessories, toy building blocks, toy construction blocks, toy banks, toy mobiles, infant toys, inflatable toys, bath toys, pull toys, wind-up toys, swim toys, swim floats for recreational use, water-squirting toys, sand toys, sandbox toys, toy vehicles, action skill games, board games, children's party games, card games, jigsaw puzzles, manipulative puzzles, toy cube puzzles, toy model hobby craft kits, toy modeling dough, toy gliders, balloons, bubble making wand and solution sets, boomerangs, kites, flying discs, yoyos, jump ropes, costume masks, party favors in the nature of small toys, adult and children's party games, piñatas, Christmas tree decorations, snow globes, costume masks, snow boards, skate boards, body boards, athletic protective pads for knees and elbows; Educational electronic toys, games, playthings, namely video games, and handheld units for playing electronic games; Educational toys, namely electronic educational game machines and battery-operated learning units, namely batter-powered game units, all that teach children spelling, reading, grammar and other academic skills; Educational game machines for children; Transforming toy dump truck, tow truck, fire/rescue truck; Magnetic plush gift pack; Foam action puzzle; foam action play set; Toy phones, cameras, tool belts, and shopping baskets. Bath toy sets, bubble sub boats and bubble blowers; Sand toys beach set; paper party goods, namely hats.

**Country: European Community**

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| | 41 Int. | | Class 41: Entertainment services, namely, an ongoing children's television series; motion picture films; theatrical programs; fan clubs; online entertainment services, namely information, interactive games, quizzes and fan clubs based on a children's television series; website featuring information, interactive games, quizzes and fan clubs based on a children's television series; Entertainment services, namely providing an online computer game, providing a wide variety of information in the fields of entertainment, education, recreation, and games via the internet. | | | |

| Trademark | Docket Number<br>Country | SubCase<br>Case Type | Application Number<br>Filing Date | Publication Number<br>Publication Date | Registration Number<br>Registration Date | Status<br>Next Renewal |
|---|---|---|---|---|---|---|
| DUCK'S ALPHABET | 0008938<br>United States of America | ORD | 85/052,916<br>02-Jun-2010 | 02-Nov-2010 | | Allowed |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR, JV

**Client Ref:** 013457.1600

**Agent Ref:**

**Classes:** 41 Int.

**Images/Links:**

**Goods:** 41 Int.    Provision of education and entertainment for children by means of the Internet, namely, providing a website featuring educational games in the fields of language and the alphabet; entertainment services in the nature of on-going television programs in the field of children's entertainment; fan clubs

## Trademark List by Country

| Trademark | Docket Number<br>Country | SubCase<br>Case Type | Application Number<br>Filing Date | Publication Number<br>Publication Date | Registration Number<br>Registration Date | Status<br>Next Renewal |
|---|---|---|---|---|---|---|
| WHERE WORDS COME ALIVE | 0006203 | ORD | 76/626,076 | | 3,635,656 | Registered |
| | United States of America | | 27-Dec-2004 | 11-Oct-2005 | 09-Jun-2009 | 09-Jun-2019 |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR, JV

**Client Ref:** 13457-1600

**Agent Ref:** 013457-1600-6203

**Classes:** 09 Int.

**Images/Links:**

**Goods:** 09 Int.    Prerecorded video tapes, audio tapes, laser discs, video discs, compact discs, CD-ROMs, DVDs, and floppy discs, featuring entertainment and educational programming for children; computer and video game software, downloadable computer and video game software, computer and video game cartridges, computer and video game programs, decorative magnets, cameras, calculators, computer game discs, electric switch plates, mouse pads

| Trademark | Docket Number<br>Country | SubCase<br>Case Type | Application Number<br>Filing Date | Publication Number<br>Publication Date | Registration Number<br>Registration Date | Status<br>Next Renewal |
|---|---|---|---|---|---|---|
| WHERE WORDS COME ALIVE | 0006204 | | 76/626,077 | | 3,598,871 | Registered |
| | United States of America | ORD | 27-Dec-2004 | 27-Sep-2005 | 31-Mar-2009 | 31-Mar-2019 |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR, MXG, JV

**Client Ref:** 13457-1600

**Agent Ref:** 13457-1600-6204

**Classes:** 16 Int.

**Images/Links:**

**Goods:** 16 Int.    color prints, posters, stickers; markers, rubber stamps.

**Country: United States of America**

# Trademark List by Country

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WHERE WORDS COME ALIVE | 0006205 | ORD | 76/626,078 | 27-Sep-2005 | 3,598,872 | Registered |
| | United States of America | | 27-Dec-2004 | | 31-Mar-2009 | 31-Mar-2019 |

Owner: Word World, LLC

Client: Word World, LLC

Agent: Frankfurt Kurnit Klein & Selz

Attorneys: EHR, MXG

Client Ref: 13457-1600

Agent Ref: 13457-1600-6205

Classes: 28 Int.

Images/Links:

Goods: 28 Int.     Games and toys namely, stuffed animals,electronic educational game machines for children, dolls, collectible toy figures, toy building blocks, construction blocks,inflatable toys, sandbox toys, toy vehicles, action skill games, board games, card games, manipulative puzzles, toy modeling dough.

# Trademark List by Country

| Trademark | Docket Number<br>Country | SubCase<br>Case Type | Application Number<br>Filing Date | Publication Number<br>Publication Date | Registration Number<br>Registration Date | Status<br>Next Renewal |
|---|---|---|---|---|---|---|
| WHERE WORDS COME ALIVE | 0006206<br>United States of America | ORD | 76/626,079<br>27-Dec-2004 | 27-Sep-2005 | 3,643,911<br>23-Jun-2009 | Registered<br>23-Jun-2019 |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR, JV

**Client Ref:** 13457-1600

**Agent Ref:** 013457-1600-6206

**Classes:** 41 Int.

**Images/Links:**

**Goods:** 41 Int.    Entertainment services, namely, motion picture films, theatrical programs, fan clubs; online entertainment services, namely, quizzes and fan clubs based on a children's television series; website featuring quizzes and fan clubs based on a children's television series.

## Trademark List by Country

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WHERE WORDS COME ALIVE | 0006808 | ORD | 76/978,238 | | 3,149,328 | Registered |
| | United States of America | | 27-Dec-2004 | | 26-Sep-2006 | 26-Sep-2016 |
| | | | | | **Attorneys:** EHR | |
| | **Owner:** Word World, LLC | | | | **Client Ref:** 13457-0100 | |
| | **Client:** Word World, LLC | | | | **Agent Ref:** 13457-0100-6808 | |
| | **Agent:** Frankfurt Kurnit Klein & Selz | | | | | |
| | **Classes:** 28 Int. | | | | | |
| | **Images/Links:** | | | | | |
| | **Goods:** 28 Int.     Toys, namely plush toys | | | | | |

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WHERE WORDS COME ALIVE | 0006809 | ORD | 76/978,229 | | 3,213,818 | Registered |
| | United States of America | | 27-Dec-2004 | | 27-Feb-2007 | 27-Feb-2017 |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR

**Client Ref:** 13457-0100

**Agent Ref:** 13457-0100-6809

**Classes:** 16 Int.

**Images/Links:**

**Goods:** 16 Int.　　　Children's books, children's activity books

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WHERE WORDS COME ALIVE | 0007856 | | 76/978,815 | 27-Sep-2005 | 3,445,712 | Registered |
| | United States of America | ORD | 27-Dec-2004 | | 10-Jun-2008 | 10-Jun-2018 |

**Owner:** Word World, LLC
**Client:** Word World, LLC
**Agent:**

**Attorneys:**
**Client Ref:**
**Agent Ref:**

**Classes:** 41 Int.

**Images/Links:**
**Goods:** 41 Int.    Entertainment services, namely, an ongoing children's television series; online entertainment services, namely, information and interactive games based on a children's television series; website featuring information and interactive games based on a children's television series.

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORD THINGS | 0007845 | ORD | 77/476,578 | 31-Mar-2009 | | Allowed |
| | United States of America | | 16-May-2008 | | | |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR, JV

**Client Ref:** 13457-1600

**Agent Ref:** 013457-1600-7845

**Classes:** 09 Int.

**Images/Links:**

**Goods:** 09 Int.    Prerecorded video tapes, audio tapes, laser discs, video discs, compact discs, CD-ROMs and floppy discs featuring entertainment and educational programming for children; computer and video game cartridges, computer and video game programs, computer and video game software.

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORD WORLD | 0005233 | ORD | 76/529,904 | 06-Apr-2004 | 3,340,453 | Registered |
| | United States of America | | 25-Jun-2003 | | 20-Nov-2007 | 20-Nov-2017 |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:**

**Attorneys:**

**Client Ref:** 13457-1600

**Agent Ref:**

**Classes:** 41 Int.

**Images/Links:**

**Goods:** 41 Int.      Web site featuring information about a children's animated television series

**Country: United States of America**

## Trademark List by Country

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORD WORLD | 0006200 | ORD | 76/626,048 | 11-Oct-2005 | 3,598,870 | Registered |
| | United States of America | | 27-Dec-2004 | | 31-Mar-2009 | 31-Mar-2019 |

**Owner:** Word World, LLC
**Client:** Word World, LLC
**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR, JV
**Client Ref:** 13457-1600
**Agent Ref:** 13457-1600-6200

**Classes:** 09 Int.

**Images/Links:**
**Goods:** 09 Int.    DVDs [11/15/2007]; and computer and video game programs[01/01/2008]

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORD WORLD | 0006201 United States of America | ORD | 76/626,049 27-Dec-2004 | 11-Oct-2005 | 3,612,778 28-Apr-2009 | Registered 28-Apr-2019 |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR, MXG, JV

**Client Ref:** 13457-1600

**Agent Ref:** 13457-1600-6201

**Classes:** 16 Int.

**Images/Links:**

**Goods:** 16 Int.     Color prints, posters, stickers, markers and rubber stamps

| Trademark | Docket Number<br>Country | SubCase<br>Case Type | Application Number<br>Filing Date | Publication Number<br>Publication Date | Registration Number<br>Registration Date | Status<br>Next Renewal |
|---|---|---|---|---|---|---|
| WORD WORLD | 0006202<br>United States of America | ORD | 76/626,075<br>27-Dec-2004 | 11-Oct-2005 | 3,612,779<br>28-Apr-2009 | Registered<br>28-Apr-2019 |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR, MXG, JV

**Client Ref:** 13457-1600

**Agent Ref:** 13457-1600-6202

**Classes:** 28 Int.

**Images/Links:**

**Goods:** 28 Int.   Games and toys namely stuffed animals, electronic educational game machines for children, dolls, collectible toy figures, toy building blocks, toy construction blocks, inflatable toys, sandbox toys, toy vehicles, action skill games, board games, card games, manipulative puzzles and toy modeling dough

# Trademark List by Country

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORD WORLD | 0006811 | ORD | 76/978234 | | 3,146,109 | Registered |
| | United States of America | | 27-Dec-2004 | | 19-Sep-2006 | 19-Sep-2016 |
| | **Owner:** Word World, LLC | | | | **Attorneys:** EHR | |
| | **Client:** Word World, LLC | | | | **Client Ref:** 13457-0100 | |
| | **Agent:** Frankfurt Kurnit Klein & Selz | | | | **Agent Ref:** 13457-0100-6811 | |
| | **Classes:** 28 Int. | | | | | |
| | **Images/Links:** | | | | | |
| | **Goods:** 28 Int.     Plush toys | | | | | |

| Trademark | Docket Number<br>Country | SubCase<br>Case Type | Application Number<br>Filing Date | Publication Number<br>Publication Date | Registration Number<br>Registration Date | Status<br>Next Renewal |
|---|---|---|---|---|---|---|
| WORD WORLD | 0006812 | ORD | 76/978,232 | | 3,139,698 | Registered |
| | United States of America | | 27-Dec-2004 | | 05-Sep-2006 | 05-Sep-2016 |
| | | | | | Attorneys: EHR, JV | |
| | **Owner:** Word World, LLC | | | | | |
| | **Client:** Word World, LLC | | | | **Client Ref:** 13457-0100 | |
| | **Agent:** Frankfurt Kurnit Klein & Selz | | | | **Agent Ref:** 13457-0100-6812 | |
| | **Classes:** 16 Int. | | | | | |
| | **Images/Links:** | | | | | |
| | **Goods:** 16 Int. | Children's books and children's activity books | | | | |

## Trademark List by Country

**Country: United States of America**

| Trademark | Docket Number<br>Country | SubCase<br>Case Type | Application Number<br>Filing Date | Publication Number<br>Publication Date | Registration Number<br>Registration Date | Status<br>Next Renewal |
|---|---|---|---|---|---|---|
| WORD WORLD & Design | 0006807<br>United States of America | ORD | 76/978,233<br>27-Dec-2004 | | 3,139,699<br>05-Sep-2006 | Registered<br>05-Sep-2016 |

**Owner:** Word World, LLC
**Client:** Word World, LLC
**Agent:** Word World, LLC

**Attorneys:** EHR
**Client Ref:** 13457-0100
**Agent Ref:** 13457-0100-6807

**Classes:** 16 Int.

**Images/Links:**



Word World Where Words
Come Alive & Design

**Goods:** 16 Int.    Children's books, children's activity books

**Country: United States of America**

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORD WORLD & Design | 0006810 United States of America | ORD | 76/978,231 27-Dec-2004 | | 3,139,697 05-Sep-2006 | Registered 05-Sep-2016 |

Owner: Word World, LLC
Client: Word World, LLC
Agent:

Attorneys: EHR
Client Ref: 13457-0100
Agent Ref: 13457-0100-6810

Classes: 28 Int.

Images/Links:



Word World Where Words
Come Alive & Design

Goods: 28 Int.    Plush toys

# Trademark List by Country

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORDFRIENDS | 0006815 | ORD | 78/946,241 | 07-Mar-2007 | 3,849,023 | Registered |
| | United States of America | | 07-Aug-2006 | | 14-Sep-2010 | 14-Sep-2020 |

**Owner:** Word World, LLC
**Client:** Word World, LLC
**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR, MXG
**Client Ref:** 13457-100-6815
**Agent Ref:** 13457-0100-6815

**Classes:** 09 Int.

**Images/Links:**

**Goods:** 09 Int.     DVDs featuring entertainment and educational programming for children; downloadable computer and video game software, computer and video game cartridges, decorative magnets

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORDFRIENDS | 0006816 United States of America | ORD | 78/946,266 07-Aug-2006 | 22-May-2007 | 3,868,790 26-Oct-2010 | Registered 26-Oct-2020 |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR, MXG, JV

**Client Ref:** 013457.1600

**Agent Ref:**

**Classes:** 16 Int.

**Images/Links:**

**Goods:** 16 Int.    Children's books, children's activity books, children's coloring books, color prints, posters, stickers; paper signs and banners for decorative purposes; paper party goods, namely, hats, napkins, placemats and decorations; paper and plastic party bags, paper party favors, lunch bags

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORDFRIENDS | 0006817 | ORD | 78/946,284 | | | Allowed |
| | United States of America | | 07-Aug-2006 | 28-Feb-2007 | | |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR, MXG

**Client Ref:** 13457-1600

**Agent Ref:** 13457-1600-6817

**Classes:** 28 Int.

**Images/Links:**

**Goods:** 28 Int.

Games and toys, namely plush toys, stuffed animals, hand-held units for playing electronic games, electronic educational game machines for children, toy action figures and accessories therefor, collectible toy figures, toy building blocks, toy construction blocks, toy vehicles, action skill games, board games, children's party games, card games, jigsaw puzzles, manipulative puzzles toy modeling dough, balloons, arty favors in the nature of small toys, adult and children's party games, piñatas

# Trademark List by Country

| Trademark | Docket Number<br>Country | SubCase<br>Case Type | Application Number<br>Filing Date | Publication Number<br>Publication Date | Registration Number<br>Registration Date | Status<br>Next Renewal |
|---|---|---|---|---|---|---|
| WORDFRIENDS | 0006818<br>United States of America | ORD | 78/946,303<br>07-Aug-2006 | 15-May-2007 | 3,875,076<br>09-Nov-2010 | Registered<br>09-Nov-2020 |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR, JV

**Client Ref:** 13457-1600-6818

**Agent Ref:**

**Classes:** 41 Int.

**Images/Links:**

**Goods:** 41 Int.  Entertainment services, namely, an ongoing children's television series; online entertainment services, namely information, interactive games based on a children's television series; website featuring information, interactive games, quizzes and fan club; based on a children's television series

| Trademark | Docket Number<br>Country | SubCase<br>Case Type | Application Number<br>Filing Date | Publication Number<br>Publication Date | Registration Number<br>Registration Date | Status<br>Next Renewal |
|---|---|---|---|---|---|---|
| WORDTHINGS | 0005256<br>United States of America | ORD | 76/529,105<br>02-Jul-2003 | 24-Feb-2004 | 3,101,154<br>06-Jun-2006 | Registered<br>06-Jun-2016 |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR

**Client Ref:** 13457-1600

**Agent Ref:** 13457-1600-5256

**Classes:** 16 Int.

**Images/Links:**

**Goods:** 16 Int.        Series of books for children

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORDTHINGS | 0005257 United States of America | ORD | 76/529,106 02-Jul-2003 | 24-Feb-2004 | 2,949,198 10-May-2005 | Registered 10-May-2015 |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR, JV

**Client Ref:** 13457-1600

**Agent Ref:** 13457-1600-5257

**Classes:** 28 Int.

**Images/Links:**

**Goods:** 28 Int.

Games and toys, namely action skill games, board games, children's party games, dolls, rag dolls, paper dolls, plush toys, stuffed animals, inflatable toys, toy action figures and accessories therefor, doll accessories, collectable toy figures, flying discs, toy gliders, kites, toy banks, bath toys, water-squirting toys, puppets, finger puppets, make-your-own puppet kits, electronic educational game machines for children, hand-held unit for playing electronic games, sand box toys, pull toys, wind-up toys, toy cube puzzles and manipulative puzzles, jigsaw puzzles, toy vehicles, toy building blocks, toy construction blocks, infant toys, jump ropes, balloons, yo-yos, party favors in the nature of small toys

**Country: United States of America**

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORDWORLD | 0007449 | ORD | 77/213,393 | | 3,712,506 | Registered |
| | United States of America | | 22-Jun-2007 | 04-Dec-2007 | 17-Nov-2009 | 17-Nov-2019 |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR, JV

**Client Ref:** 13457-1600

**Agent Ref:** 13457-1600-7449

**Classes:** 41 Int.

**Images/Links:**

**Goods:** 41 Int.　　Entertainment services in the nature of a children's animated television series.

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORDWORLD Color Logo | 0007488 United States of America | ORD | 77/241,519 29-Jul-2007 | 24-Mar-2009 | | Allowed |

**Owner:** Word World, LLC
**Client:** Word World, LLC
**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR, JV
**Client Ref:** 13457-1600
**Agent Ref:** 13457-1600-7488

**Classes:** 09 Int.

**Images/Links:**



Word World Logo (color)

**Goods:** 09 Int.    Prerecorded video tapes, audio tapes, laser discs, video discs, compact discs, CD-ROMs, DVDs, and floppy discs featuring entertainment and educational programming for children; computer and video game software, downloadable computer and video game software, computer and video game cartridges, computer and video game programs, decorative magnets, cameras, calculators, computer game discs, electric switch plates, mouse pads; Sunglasses, radios, radios incorporating clocks, portable stereos, karaoke machines, cassette players, compact disc players, portable DVD players, cameras, and headphones; Portable and handheld digital electronic devices for the development of reading, grammar, spelling and other academic skills for children; audio file on portable and handheld digital electronic devices; handheld computers; Portable and handheld video games for subscription based television; Educational computer and game software for handheld electronic devices featuring the development of reading, grammar and spelling and other academic skills for children; audio and video recordings featuring educational matter for children; Prerecorded compact disks and audiotapes featuring educational lessons and games that teach general academic subjects; downloadable musical sound recordings.

| Trademark | Docket Number<br>Country | SubCase<br>Case Type | Application Number<br>Filing Date | Publication Number<br>Publication Date | Registration Number<br>Registration Date | Status<br>Next Renewal |
|---|---|---|---|---|---|---|
| WORDWORLD Color Logo | 0007491<br>United States of America | ORD | 77/241,526<br>29-Jul-2007 | 10-Feb-2009 | | Allowed |

**Owner:** Word World, LLC
**Client:** Word World, LLC
**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR, MXG
**Client Ref:** 13457-1600
**Agent Ref:** 13457-1600-7491

**Classes:** 16 Int.

**Images/Links:**



Word World Logo (color)

**Goods:** 16 Int.  Children's books, children's activity books, children's coloring books, comic books, cook books, address books, engagement books, diaries, calendars, bookmarks, color prints, posters, post cards, greeting cards, trading cards, book covers, decalcomania, stickers; stationery, envelopes, memo pads, notebooks, notepads, ring binders, folders, pen and pencil cases, drafting rulers, drawing rulers, ungraduated rulers, staplers, pencils, pens, pencil sharpeners, markers, rubber stamps, printed paper signs and banners for decorative purposes; paper party goods, namely hats, napkins, placemats and decorations; paper bags and merchandise bags, paper and plastic party bags, paper party favors, lunch bags, gift wrapping materials, namely, gift wrapping paper, paper gift wrapping ribbons and paper gift wrapping bows, paper holiday decorations, crayons, announcement cards, paper name tags, photo albums, tracing paper books, sketch books, decorations for pencils, extensions and attachments for pencils, erasers, adhesive tape dispensers, desktop organizers, bulletin boards, dry-erase writing boards, chalk boards for school and home use, arts and crafts paint kits, temporary tattoos, card files, facial tissue, chalks, sidewalk chalks and stencils; printed matter, namely, paper products, namely, educational books featuring math, spelling, grammar, geography, history, science, trivia and language arts; magazines and newsletters featuring math, spelling, grammar, geography, history, science, trivia and language arts; and workbooks in the field of math, spelling, grammar, geography, history, science, trivia and language arts for infants, children, young adults, and adults; cardboard floor display units for merchandising products, cardboard cartons; math, spelling, grammar, geography, history, science, trivia and language arts books for infants, children and young adults; picture books for infants, children and young adult books made of paper, cloth and plastic; decals, instruction manuals in the fields of math, spelling, grammar, geography, history, science, trivia and language arts, flash cards, maps, workbooks in the field of math, spelling, grammar, geography, history, science, trivia and language arts, gift cards, paper party bags, paper party decorations, crossword puzzles, school supplies, namely notepads, notebooks, drawing pads, construction paper, binders, and paper folders.

**Trademark**

WORDWORLD Color Logo

| Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|
| 0007493 United States of America | ORD | 77/241,537 29-Jul-2007 | 10-Feb-2009 | | Allowed |

**Owner:** Word World, LLC
**Client:** Word World, LLC
**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR, MXG
**Client Ref:** 13457-1600
**Agent Ref:** 13457-1600-7493

**Classes:** 28 Int.

**Images/Links:**



Word World Logo (color)

**Goods:** 28 Int.    Games and toys, namely plush toys, puppets, finger puppets, make-your-own puppet kits, stuffed toy animals, hand-held units for playing electronic games, electronic educational game machines for children, dolls, rag dolls, paper dolls, doll accessories, toy action figures and accessories therefore, collectible toy figures, cases for dolls, cases for action figures, cases for play accessories, toy building blocks, toy construction blocks, toy banks, toy mobiles, infant toys, inflatable toys, bath toys, pull toys, wind-up toys, swim toys, namely, pool rings, swim fins, water wing swim aids for recreational use, swim boards for recreational use, swim floats for recreational use, water-squirting toys, sand toys, sandbox toys, toy vehicles, action skill games board games, children's party games, card games, jigsaw puzzles, manipulative puzzles, toy cube puzzles, toy model hobby craft kits comprising sand, paper, paint, wood, fabric plastic mold, and paper weaving tools, toy modeling dough, toy gliders, balloons, bubble making wand and solution sets, boomerangs, kites, flying discs, yoyos, jump ropes, costume masks, party favors in the nature of small toys, adult and children's party games, piñatas, Christmas tree decorations, snow globes, costume masks, snow boards, skateboards, body boards, athletic protective pads for knees and elbows; Educational electronic toys, games, playthings, namely arcade-type electronic video games, and handheld units for playing electronic games; Educational toys, namely electronic educational game machines and battery-operated hand held learning units for playing video games that teach children spelling, reading, grammar and other academic skills; electronic educational game machines for children; Transforming toy dump truck, toy tow truck, and toy fire/rescue truck; Magnetic plush toys; magnetic plush gift pack comprising plush toys; Foam action puzzle; foam action play set for playing sports; Toy phones, cameras, tool belts, and shopping baskets; Bath toy sets comprised of water squirting toys, toy animals, bubble toys and letter toys, toy bubble sub boats and toy bubble blowers; Sand toys; toy rainbow play mats for use with drawing toys; Puzzles featuring words"

| Trademark | Docket Number<br>Country | SubCase<br>Case Type | Application Number<br>Filing Date | Publication Number<br>Publication Date | Registration Number<br>Registration Date | Status<br>Next Renewal |
|---|---|---|---|---|---|---|
| WORDWORLD Color Logo | 0007495<br>United States of America | ORD | 77/242,547<br>30-Jul-2007 | <br>10-Jun-2008 | | Allowed |

**Owner:** Word World, LLC
**Client:** Word World, LLC
**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR, MXG
**Client Ref:** 13457-1600
**Agent Ref:** 13457-1600-7495

**Classes:** 41 Int.

**Images/Links:**



Word World Logo (color)

**Goods:** 41 Int.   Entertainment services, namely, an ongoing children's television series; motion picture films; theatrical programs; fan clubs; online entertainment services, namely information, interactive games, quizzes and fan clubs based on a children's television series; website featuring information, interactive games, quizzes and fan clubs based on a children's television series; Entertainment services, namely providing an online computer game, providing a wide variety of information in the fields of entertainment, education, recreation, and games via the internet

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORDWORLD Logo | 0007487 United States of America | ORD | 77/241,494 29-Jul-2007 | 24-Mar-2009 | | Allowed |

**Owner:** Word World, LLC

**Client:** Word World, LLC

**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR, MXG, JV

**Client Ref:** 13457-1600

**Agent Ref:** 13457-1600-7487

**Classes:** 09 Int.

**Images/Links:**



Word World Logo

**Goods:** 09 Int.   Prerecorded video tapes, audio tapes, laser discs, video discs, compact discs, CD-ROMs, DVDs, and floppy discs featuring entertainment and educational programming for children; computer and video game software, downloadable computer and video game software, computer and video game cartridges, computer and video game programs, decorative magnets, cameras, calculators, computer game discs, electric switch plates, mouse pads; Sunglasses, radios, radios incorporating clocks, portable stereos, karaoke machines, cassette players, compact disc players, portable DVD players, cameras, and headphones; Portable and handheld digital electronic devices for the development of reading, grammar, spelling and other academic skills for children; audio file on portable and handheld digital electronic devices; handheld computers; Portable and handheld video games for subscription based television; Educational computer and game software for handheld electronic devices featuring the development of reading, grammar and spelling and other academic skills for children; audio and video recordings featuring educational matter for children; Prerecorded compact disks and audiotapes featuring educational lessons and games that teach general academic subjects; downloadable musical sound recordings.

| Trademark | Docket Number<br>Country | SubCase<br>Case Type | Application Number<br>Filing Date | Publication Number<br>Publication Date | Registration Number<br>Registration Date | Status<br>Next Renewal |
|---|---|---|---|---|---|---|
| WORDWORLD Logo | 0007489<br>United States of America | ORD | 77/241,495<br>29-Jul-2007 | <br>10-Feb-2009 | | Allowed |

**Owner:** Word World, LLC
**Client:** Word World, LLC
**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR, MXG
**Client Ref:** 13457-1600
**Agent Ref:** 13457-1600-7489

**Classes:** 16 Int.

**Images/Links:**



Word World Logo

**Goods:** 16 Int.   Children's books, children's activity books, children's coloring books, comic books, cook books, address books, engagement books, diaries, calendars, bookmarks, color prints, posters, post cards, greeting cards, trading cards, book covers, decalcomania, stickers; stationery; envelopes, memo pads, notebooks, notepads, ring binders, folders, pen and pencil cases, drafting rulers, drawing rulers, ungraduated rulers, staplers, pencils, pens, pencil sharpeners, markers, rubber stamps, printed paper signs and banners for decorative purposes; paper party goods, namely hats, napkins, placemats and decorations; paper bags and merchandise bags, paper and plastic party bags, paper party favors, lunch bags, gift wrapping materials, namely, gift wrapping paper, paper gift wrapping ribbons and paper gift wrapping bows, paper holiday decorations, crayons, announcement cards, paper name tags, photo albums, tracing paper books, sketch books, decorations for pencils, extensions and attachments for pencils, erasers, adhesive tape dispensers, desktop organizers; bulletin boards, dry-erase writing boards, chalk boards for school and home use, arts and crafts paint kits, temporary tattoos, card files, facial tissue, chalks, sidewalk chalks and stencils; printed matter, namely, paper products, namely, educational books featuring math, spelling, grammar, geography, history, science, trivia and language arts; magazines and newsletters featuring math, spelling, grammar, geography, history, science, trivia and language arts; and workbooks in the field of math, spelling, grammar, geography, history, science, trivia and language arts for infants, children, young adults, and adults; cardboard floor display units for merchandising products, cardboard cartons; math, spelling, grammar, geography, history, science, trivia and language arts books for infants, children and young adults; picture books for infants, children and young adult books made of paper, cloth and plastic; decals, instruction manuals in the fields of math, spelling, grammar, geography, history, science, trivia and language arts, flash cards, maps, workbooks in the field of math, spelling, grammar, geography, history, science, trivia and language arts, gift cards, paper party bags, paper party decorations, crossword puzzles, school supplies, namely notepads, notebooks, drawing pads, construction paper, binders, and paper folders.

**Trademark**

WORDWORLD Logo

| | |
|---|---|
| **Docket Number** | 0007490 |
| **Country** | United States of America |

**Owner:** Word World, LLC
**Client:** Word World, LLC
**Agent:** Frankfurt Kurnit Klein & Selz

**Classes:** 28 Int.

**Images/Links:**



Word World Logo

| | |
|---|---|
| **SubCase** | |
| **Case Type** | ORD |
| **Application Number** | 77/241,559 |
| **Filing Date** | 29-Jul-2007 |

| | |
|---|---|
| **Publication Number** | |
| **Publication Date** | 10-Feb-2009 |

| | |
|---|---|
| **Registration Number** | |
| **Registration Date** | |
| **Status** | Allowed |
| **Next Renewal** | |

**Attorneys:** EHR, MXG

**Client Ref:** 13457-1600

**Agent Ref:** 13457-1600-7490

**Goods:** 28 Int.   Games and toys, namely plush toys, puppets, finger puppets, make-your-own puppet kits, stuffed toy animals, hand-held units for playing electronic games, electronic educational game machines for children, dolls, rag dolls, paper dolls, doll accessories, toy action figures and accessories therefore, collectible toy figures, cases for dolls, cases for action figures, cases for play accessories, toy building blocks, toy construction blocks, toy banks, toy mobiles, infant toys, inflatable toys, pull toys, pull toys, wind-up toys, swim toys, namely, pool rings, swim fins, water wing swim aids for recreational use, swim boards for recreational use, swim floats for recreational use, water-squirting toys, sand toys, sandbox toys, toy vehicles, action skill games board games, children's party games, card games, jigsaw puzzles, manipulative puzzles, toy cube puzzles, toy model hobby craft kits comprising sand, paper, paint, wood, fabric plastic mold, and paper weaving tools, toy modelling dough, toy gliders, balloons, bubble making wand and solution sets, boomerangs, kites, flying discs, yoyos, jump ropes, costume masks, party favors in the nature of small toys, adult and children's party games, piñatas, Christmas tree decorations, snow globes, costume masks, snow boards, skateboards, body boards, athletic protective pads for knees and elbows; Educational electronic toys, games, playthings, namely arcade-type electronic video games, and handheld units for playing electronic games; Educational toys, namely electronic educational game machines and battery-operated hand held learning units for playing video games that teach children spelling, reading, grammar and other academic skills; electronic educational game machines for children; Transforming toy dump truck, toy tow truck, and toy fire/rescue truck; Magnetic plush toys; magnetic plush gift pack comprising plush toys; Foam action puzzle; foam action play set for playing sports; Toy phones, cameras, tool belts, and shopping baskets; Bath toy sets comprised of water squirting toys, toy animals, bubble toys and letter toys, toy bubble sub boats and toy bubble blowers; Sand toys; toy rainbow play mats for use with drawing toys; Puzzles featuring words.

| Trademark | Docket Number Country | SubCase Case Type | Application Number Filing Date | Publication Number Publication Date | Registration Number Registration Date | Status Next Renewal |
|---|---|---|---|---|---|---|
| WORDWORLD Logo | 0007494 United States of America | ORD | 77/242,555 30-Jul-2007 | 10-Jun-2008 | | Allowed |

**Owner:** Word World, LLC
**Client:** Word World, LLC
**Agent:** Frankfurt Kurnit Klein & Selz

**Attorneys:** EHR, JV
**Client Ref:** 13457-1600
**Agent Ref:** 13457-1600-7494

Classes: 41 Int.

**Images/Links:**



Word World Logo

**Goods:** 41 Int. Entertainment services, namely, an ongoing children's television series; motion picture films; theatrical programs; fan clubs; online entertainment services, namely information, interactive games, quizzes and fan clubs based on a children's television series; website featuring information, interactive games, quizzes and fan clubs based on a children's television series; Entertainment services, namely providing an online computer game, providing a wide variety of information in the fields of entertainment, education, recreation, and games via the internet

**Schedule 2.1(a)(iii): Software**

**None**

**Schedule 2.1(a)(iv): Trademark Rights**

Any common law trademark rights that the Seller may have in other logos or slogans used in its business.

**See following pages.**

**Schedule 2.1(a)(v): Patents**

**See following page.**

| Docket No. | Serial No. | Filed | Status |
|---|---|---|---|
| WWI001 | 10/850,186 | 5/19/2004 | Pending |
| WWI001-AUSTRALIA | 2005262732 | 5/18/2005 | Abandoned |
| WWI001-BRAZIL | PI 0511436-5 | 11/21/2006 | Pending |
| WWI001-CANADA | 2,567,367 | 5/18/2005 | Abandoned |
| WWI001-CHINA | 200580020452.5 | 1/19/2007 | Abandoned |
| WWI001-EPO | 05752284.9 | 3/26/2007 | Abandoned |
| WWI001-ISREAL | 179396 | 5/18/2005 | Abandoned |
| WWI001-JAPAN | 2007-527376 | 11/20/2006 | Pending |
| WWI001-MEXICO | PA/A/2006/013521 | 11/21/2006 | Pending |
| WWI001-NORWAY | 20065877 | 12/19/2006 | Pending |

**Schedule 2.1(a)(vi): Documentation**


**None**

**Schedule 2.1(a)(vii): Trade Secret Rights**

**None**

.

**Schedule 2.1(a)(viii): Domain Names**


wordworld.com, ducksalphabet.com, wordworld.asia, wordworld.org.cn (China), wordworld.hk (Hong Kong), wordworld.co.in (India), wordworld.in (India), wordworld.ph (Phillipines), wordworld.com.tw (Taiwan), wordworld.tw (Taiwan), wordworld.ae (United Arab Emirates), wordworld.com.vn (Vietnam), everythingwords.com, buildaworldofwords.com, w0rdw0rld.com (with zero's), wordconstruct.com, wordanimals.com, wordobjects.com, wordworld.tv, wordworld.ws, wordworld.cc, build-a-word.com, buildaword.com, worldwideenglish.org, wherereadingbegins.com, wherewordscomealive.com

**Schedule 2.1(b): Causes of Action**

**None**

**Schedule 2.1(c): Assumed Contracts**

.

## Licensing Agreements - Consumer Products

| Licensee/Partner | Territory | Term | Language | Categories | Amount Owed |
|---|---|---|---|---|---|
| Bendon Publishing | US and Canada | Three years ending December 31, 2011 | English | Coloring books, activity books, educational board books (non-exclusive), sticker books, flash cards, & educational activity kits | |
| Celebrate Express | US and Canada | Three years ending December 31, 2011 | English | Party Goods including Paper Dinnerware, Party Favours and Accessories | |
| V-tech | US and Canada | Three years ending December 31, 2011 | English and Spanish | Proprietary software for Bookworm/Buzby | |
| Trevco | US and its territories | May 13, 2010 - May 31, 2013 | English | T-shirts for infants, juveniles, and youth | |
| Dvinni | Columbia | July 26, 2010 - June 30, 2011 | English | Non-exclusive license for stapled notebooks, sewed notebooks, spiral ring notebooks, folders, party goods (plates, cups, napkins, spoons, forks, knives, invitations, table clothes, balloons, banners, streamers, whistles, party hats, party favor bags, and pinatas. | |
| Editorial Vertice | Argentina, Uruguay, Paraguay, Chile and Peru | September 14, 2010 - June 30, 2012 | English | Non-exclusive license for premium activity books, coloring books sold with or without stickers and tattoos. | |

# Licensing Agreements - English Language Learning

| Licensee/Partner | Territory | Term | Language | Categories | Amount Owed |
|---|---|---|---|---|---|
| ORDA | South Korea | 5 Years commencing on April 23, 2010 | English and Korean | ELL Kits which also include WordWorld on Home Video/DVD; the rights to sell Seasons 2,3 on stand-alone basis with prior approval; Smart Phone content (non-exclusive) | |

| Licensee/Partner | Territory | Assets | Term | Language | Categories | Amount Owed |
|---|---|---|---|---|---|---|
| NCircle Entertainment | United States & Canada | Season one | Three years ending May 2011; Renewal option of 2 years | English and Spanish if available | Home Video Format & Digital Video Format (non-exclusive) | |
| NCircle Entertainment - Amendment | United States & Canada | Season 2,3 | Season 1 is extended to January 31, 2014 and Seasons 2,3 conclude on January 31, 2014 | English and Spanish if available | (non-exclusive); WW retains 100% Digital rights but has to pay 50% of et revenues to NCe | |
| Innoform | Singapore, Malaysia and Hong Kong | Season one | 3 years, 2 months starting on November 1, 2008 and ending on December 31, 2011 | English with right to dub into Cantonese, Malay and Indonesian | Home Video / DVD. No digital, mobile, on demand, interactive. No educational learning kits. | |
| Innoform | Singapore, Malaysia and Hong Kong, Vietnam | Seasons 1, 2,3 | Term from Season 1 agreement will be extended through Dec. 31, 2013 | English with right to dub into Cantonese, Malay and Indonesian | Home Video / DVD. No digital, mobile, on demand, interactive. No educational learning kits. | |
| Educational Broadcasting System (EBS) | Korea | Season one | 5 years commencing September 1, 2009 and ending February 28, 2014 | English and Korean | Home Video / DVD. No digital, mobile, on demand, interactive. No educational learning kits. | |
| Roadshow Entertainment | Australia & New Zealand | Season one | 5 years beginning January 1, 2009 | English | Home Video rights, Video-on-demand, electronic sell through receipts. No educational learning kits. | |
| Roadshow Entertainment | Australia & New Zealand | Seasons 2, 3 | September 10, 2010 - December 31, 2014 | English | Home Video rights, Video-on-demand, electronic sell through receipts. No educational learning kits. | |
| Tycoon | Mexico, Nicaragua, El Salvador, Panama, Guatemala, Costa Rica, Belize, Honduras, Caribbean, provided that licensee has no rights to distribute in English | Seasons 1, 2 | Three years, six months following the initial broadcast of the program in the territory [Jul 26, 2010]. | English and Dubbed in Spanish | Home Video | |
| Library Video | U.S. and its territories and possessions and Canada | 14 episodes | Three years beginning on the release date stated for Dec 2010 | English | Digital Home Video to Educational channels | |
| France 5 French Dubbed Video License | France, Monaco, Andorra, DOM-TOM, French speaking Switzerland, Belgium, Luxembourg | 52 eps chosen from Season one and two | 5 years from first commercial release, no later than June 1, 2010 | French | Home video and electronic home video including streaming and downloading. NO cannual for educational. | |

# TV Distribution Agreements

| Licensee/Partner | Territory | Term | Language | Categories/Rights | Episodes | Amount Owed |
|---|---|---|---|---|---|---|
| Disney Asia | Asia, Taiwan and Australia. Added Maldives by Amendment Sept 2009. | Three years ending November 30, 2011 | English and native languages | Season One. BVI exclusive Pay television and basic subscription television rights | 52 | |
| Disney Asia | Asia, Taiwan and Australia. Added Maldives by Amendment Sept 2009. | For Australia commencing on signature until July 31, 2014. For Asia: Commencing on signature until Oct. 30, 2014. For Taiwan: Commencing on signature until Oct. 31, 2014 | English and native languages | Season Two. BVI exclusive Pay television and basic subscription television rights | 32 | |
| Disney Japan | Japan | Three years, one month ending Sept 30, 2012 | English and Japanese | Season One (26 half hours). BVI exclusive Pay television and basic subscription television rights | 52 | |
| Disney India | India, including Bangladesh, Bhutan, India, Nepal, Maldives, Pakistan, Seychelles and Sri Lanka. | Three years commencing October 1, 2009 and ending Sept 30 2012. | English and any Indian regional language. | Season One (26 half hours). BVI exclusive Pay television and basic subscription television rights | 52 | |
| EBS | Republic of Korea | Free TV & IPTV rights are three years commencing on March 1, 2009 and ending on February 29, 2012. | English and Korean | Season One. IPTV and free TV, including simultaneous broadcast on basic cable. | 52 | |
| TVB Pearl | Hong Kong | Two years, four months commencing Sept 1, 2009 and ending Dec 31 2011 | English | Season One. Free TV | 52 | |
| TVB Pearl | Hong Kong | Two years from 2/1/11 to 1/31/13 | English | Seasons Two and Three. Free TV. | 16 | |
| PBS | United States (Excl.) & Embassies, Military Bases and Ships at Sea (non-Excl.) | 4 years ending September 2011 | English | Season One and Two. Unlimited Broadcast rights, VOD, Video streaming | 52 | |
| TVO | Exclusive throughout Ontario. Exclusive to Access Network, Knowledge Network and Saskatchewan Communications Network. | 5 years beginning September 3, 2007 | English | Season One. Reproduce, Broadcast, Cablecast through Ontario (unlimited number of plays) | 52 | |
| TVO | Exclusive throughout Ontario. Exclusive to Access Network, Knowledge Network and Saskatchewan Communications Network. | 5 and 1/2 years for both season one and two from first airing - Feb 2009 ending Aug 2014. | English | Season Two. Reproduce, Broadcast, Cablecast through Ontario (unlimited number of plays). Right to stream up to 10% of episodes out of a pool of 30% of episodes one at a time on own network on season three. Broadcast, Reproduce, Cablecast | 22 | |
| TVO | TV Exclusive in Ontario, Canada. Digital TV, VOD and Internet Rights non-Exclusive throughout Canada | 5 years beginning on the first airing | English | throughout Ontario; unlimited Non-exclusive Right to stream up to 50% of Season Three programs at any one time commencing Jan. 1, 2013 | 10 | |
| France 5 Dubbed TV Broadcast | France, French overseas departments and territories Andorra and Monaco. | 4 years ending Feb 28, 2013 | French | Broadcast and streaming rights for 52 episodes. | 52 | |

## TV Distribution Agreements

| Licensee/Partner | Territory | Term | Language | Categories/Rights | Episodes | Amount Owed |
|---|---|---|---|---|---|---|
| Discovery | Latin America (as defined in aglmt) and Caribbean. | 4 years ending June 27, 2014 | English, Spanish and Portuguese | Season One. All inclusive including digital rights (VOD, DSL, Telephonic, UHF, Superstations, NOT free broadcast. | 52 | |
| Moison Pictures | Spain, Portugal, Andorra | 7 years | English, Spanish, Portuguese | Broadcast and Home Video/DVD | 74 | |
| PandaDrenia | Portugal and Portugal speaking Africa (Angola, Cape Verde, Guinea Bissau, Sao Tome e Principe, and Mozambique) | One year commencing June 1, 2010 and ending May 31, 2011 | Portuguese (dubbed and/or subtitled) and original English version simulcast. | Pay Television (cable and satellite), VOD, and Limited mobile streaming for Seasons 1 & 2 | 74 | |
| Mediacorp/Singapore 12 | Singapore | 42 Months commencing April 1, 2010 and expiring September 30, 2013 | English | Free TV - Season 1 | 28 | |
| P&P Permissions & Rights Ltd. | Former Yugoslavia (Serbia & Montenegro, Bosnia, Macedonia, Croatia, and Slovenia) | TV rights -WordWorld: 3 years from 9/1/10 to 8/31/13 for the first 52 episodes and 3 years from 9/1/11 to 8/31/14 for the last 32 episodes and DVD rights for 2 years from 12/1/10. | Local Languages | Free TV rights - Seasons 1,2,3 (terrestrial, Basic, Cable); Exclusive DVD rights | 84 | |
| Army AFN | Authorized DMC television outlets outside the contiguous United States | 5 years | English | DMC the right to reproduce, distribute, present the programming on authorized DMC television outlets outside the US | 74 | |
| Knowledge Network | Province of British Columbia in Canada | Four years from 1/1/11 to 12/31/14 | English | Free Television broadcast; non-exclusive | 10 | |
| ieTV | Israel | Three years, six months from 3/1/11 to 9/30/15 | Hebrew | Terrestrial Basic cable and free satellite rights | 84 | |
| Russia 1 | Russia Federation and CIS | For eps 1-42, Four years beg. 7/1/11 and ending 6/30/15; For eps 43-84, Four years beg. 7/1/10 and ending 6/30/15 | Russian language only | Seasons 1,2,3 on Free TV and Pay TV | 84 | |

## Licensing Agent Agreements

| Licensee/Partner | Territory | Term | Assets | Categories | Amount Owed |
|---|---|---|---|---|---|
| Fremantle Media | Australia, New Zealand | Three years ending June 30, 2011 | | All ancillary licensing rights including but not limited to: Current & Future CP categories, Interactive rights, Mobile rights, Live events, Sponsorship & Promotion | |
| Transworld Television Corporation | Middle East and North Africa. English speaking African countries including South Africa. Full list in contract. | Two years ending June 5, 2011. Automatic extension for two additional years unless either party gives 60 days notice prior to end of term. | Season One | All television including terrestrial, cable, satellite. Specifically excludes internet, online, mobile, cell, wireless. | |
| France 5 - Dubbed TV and DVD Agent | Worldwide | 5 years from technical acceptance | Season one | TV broadcasting, Video Rights, VOD. All in French language only. | |
| France 5 - English TV Agent | Please refer to Exhibit A in this agreement for the 110 countries they represent us in. | Commencing on signature of the agreement and continuing until September 30, 2013 | Seasons 1, 2, 3 = 84 eps | TV Broadcasting in English: terrestrial satellite and cable | |
| France 5 - CP Sub-agent | France, including overseas departments and territories, Belgium, Luxemborg and Switzerland | 3 years ending December 31, 2012 | Consumer Products | Consumer Products, save premiums, motion pictures, tv, home video, music, video games, trading cards, internet, wireless, theme parks, live events, sponsorship rights | |
| Universal | Worldwide | Later of 5 years ending Dec 31 2013 or recovery of advances. Right to collect money earned in term for 12 addt months for US and 18 months intl. | | Rights to license (including broadcast, public performance, audio, synchronization w/ movies, TV and commercials, dramatization) administer, print, publish and sell compositions, and collect for all music compositions. | |
| Exim | Argentina, Belize, Brazil, Chile, Colombia, Costa Rica, Ecuador, El Salvador, Guatemala, Honduras, Nicaragua, Panama, Paraguay, Peru, Uruguay, Venezuela, Dominican Republic, Puerto Rico, (Spanish language only) and all other Caribbean countries excluding French-speaking Caribbean countries | Through December 31, 2011 | Consumer Products subject to exclusions listed in 4Kids deal | CP - Sub-agent | |
| Exim | Argentina, Belize, Brazil, Chile, Colombia, Costa Rica, Ecuador, El Salvador, Guatemala, Honduras, Nicaragua, Panama, Paraguay, Peru, Uruguay, Venezuela, Dominican Republic, Puerto Rico, (Spanish language only) and all other Caribbean countries excluding French-speaking Caribbean countries | Through December 31, 2012 | Season One | Home Video | |
| Spectrum | Indonesia | Five years starting on 12/1/10 and ending on the earlier of the final telecast permitted thereunder and 11/30/015 | English and/or subtitled in Indonesian | Free TV | |
| Tiga Thailand | Thailand | Three and a half years starting 9/1/10 to 2/28/14 | English and dubbed/subtitled in Thai | Season One, Free TV | |
| Phase 4 (NetFlix) | US, Canada | 18 months, starting 11/23/10 | Seasons 1,2,3 | Streaming/subscription | |
| New Video | | 12/16/10, new content must be up by 3/31/11 or termination letter can be sent with cure period of 30 days; contract expires in 3 years | See New Video Chart* (next page) | Digital downloads/distribution. See New Video Chart Below** | |

| Licensee/Partner | Territory | Term | Assets | Categories | Amount Owed |
|---|---|---|---|---|---|

New Video Chart*

| | WordWorld Season 1 | 26 episodes (27:28 in length) | | | On or before 1/15/11 |
|---|---|---|---|---|---|
| | WordWorld Season 2 | 11 episodes (27:28 in length) but delivered as 14 episodes (27:28 in length) as 6 of the Season 2 11-minute episodes are paired with repeat 11-min. episodes from Season 1. | | | On or before 1/15/11 |
| | WordWorld Season 3 | 5 episodes (27:28 in length) | | | On or before 1/15/11 |

New Video Chart Below**

Apple iTunes (excludes Season 1 in the United States and Canada)

> The United States (a) its protectorates, commonwealths, territories, trusteeships and possessions (including, without limitation, the U.S. Virgin Islands and Puerto Rico), (b) its military installations (including Armed Forces Radio and Television) and embassies wherever located, and (c) any and all oil rigs, ships and planes flying its flag (the "US Territory")

> Canada, United Kingdom,

| Licensee/Partner | Territory | Term | Assets | Categories | Amount Owed |
|---|---|---|---|---|---|
| | | | | Ireland, Australia, New Zealand, Germany, Austria | |
| Sony Playstation | | | ➤ | ➤ The US Territory, Canada, United Kingdom, Ireland, Australia, New Zealand, Germany, Austria | |
| Microsoft XBox/Zune | | | ➤ | The US Territory and Canada | |
| Amazon Unbox | | | ➤ | The US Territory and Canada | |
| Blockbuster (fka: MovieLink) | | | ➤ | The US Territory and Canada | |
| CinemaNow/Best Buy | | | ➤ ➤ | The US Territory and Canada | |
| Walmart/Vudu | | | ➤ | The US Territory and Canada | |
| Kmart/Sears | | | ➤ | The US Territory and Canada | |

| Licensee/Partner | Territory | Term | Assets | Categories | Amount Owed |
|---|---|---|---|---|---|
| ⋏ Sonic Roxio | | | ⋏ | The US Territory and Canada | |
| ⋏ Hulu | | | ⋏ | The US Territory and Canada | |
| ⋏ TV.com | | | ⋏ | The US Territory and Canada | |
| ⋏ Snagfilms | | | ⋏ | The US Territory and Canada | |
| ⋏ Sling | | | ⋏ | The US Territory and Canada | |
| ⋏ Sezmi | | | ⋏ | The US Territory and Canada | |

## Other WordWorld Contracts

| Counterparty | Term | Description | Other Comments | Amount Owed |
|---|---|---|---|---|
| MEE Apparel, LLC | MTM from 9/8/2010 | Office Sharing Agreement | Corp Offices | $ 11,500 |
| Don Moody | 10/31/2011 | Employment Agreement | | $ 1,296,875 |
| Arielle Basch | 12/25/2011 | Employment Agreement | | $ 43,718 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Schedule 2.1(d): Contract Rights**

**None**

**Schedule 2.1(e): Equipment**

5 laptop computers located in Word World offices

2 laptop computers located off-site

9 desktop computers located in Word World offices

2 black & white printers located in Word World offices

1 leased color copier/scanner/printer located in Word World offices

**Schedule 2.1(f): Real Property and Personal Property**

**None**

**Schedule 2.1(g): Deposits and Prepaid Expenses**

$1,000 retainer held with The A Team Executive Management, Inc.

**Schedule 2.1(h): Cash and Cash Equivalents**

HSBC - US Account – 6302: $2,547

HSBC – Canadian Account – 2270: $2,996

**Schedule 2.1(k): Inventory, Raw Materials, and Supplies**

Toy samples stored in the Word World offices and at International Karter Warhouse in New Jersey having nominal financial value.

**Schedule 2.1(l): Permits**

**None**

**Schedule 2.1(m): Telephone Numbers, websites, email addresses, and listings**

Main number: 212-219-7666

800 Number: 877-967-3967

Fax Number: 917-210-3585

Direct Numbers: 917-262-1440 (Don Moody), 917-262-1441 (Arielle Basch), 917-262-1443 (Lisa Hurwitz), 917-262-1446 (Martha Harrison).

Websites: wordworld.com, ducksalphabet.com, wordworld.asia, wordworld.org.cn (China), wordworld.hk (Hong Kong), wordworld.co.in (India), wordworld.in (India), wordworld.ph (Phillipines), wordworld.com.tw (Taiwan), wordworld.tw (Taiwan), wordworld.ae (United Arab Emirates), wordworld.com.vn (Vietnam), everythingwords.com, buildaworldofwords.com, w0rdw0rld.com (with zero's), wordconstruct.com, wordanimals.com, wordobjects.com, wordworld.tv, wordworld.ws, wordworld.cc, build-a-word.com, buildaword.com, worldwideenglish.org, wherereadingbegins.com, wherewordscomealive.com

Email Addresses: moody@wordworld.com (Don Moody), arielle@wordworld.com (Arielle Basch), lisa@wordworld.com (Lisa Hurwitz), martha@wordworld.com (Martha Harrison), info@wordworld.com, outreach@wordworld.com, contact@wordworld.com, resume@wordworld.com, products@wordworld.com, ducksalphabet@wordworld.com

**Schedule 2.1(n): Rights Under Insurance Policies**

**See following pages.**

SCHEDULE OF YOUR CURRENT INSURANCE

Prepared
For:

Word World, LLC
40 West 23rd Street, 6th Floor
New York, NY 10010

A Service Of
Mintz Girgan & Brightly, Inc.
I N S U R A N C E
18 West Passaic Street
Rochelle Park, NJ 07662
(201) 507-5100

Date Prepared: 1/5/11

We present this schedule so you may get an overall picture of your insurance protection. If you have policies from other insurance offices we suggest you add them to this list to present the complete picture. Please examine this schedule with particular reference to the amount or limits of your insurance. Today's property values and liability judgments are higher and insurance should be adjusted to cover.

We will be glad to discuss this schedule with you at your convenience.

| Prepared For: | Word World, LLC<br>40 West 23rd Street, 6th Floor<br>New York, NY 10010 | | Date Prepared: | 1/5/11 | | |

| COVERAGE | AMOUNT INSURED | TERM | COMPANY/ POLICY # | POLICY PREMIUM | COMMENTS |
|---|---|---|---|---|---|
| **I. <u>PROPERTY</u>** | | 10/3/10<br>10/3/11 | Travelers<br>QT660577lL316 | $2,293 | Special Form, subject o<br>policy limitations<br>Replacement Cost Valuation<br>$1,000 Deductible<br>90% Co-Insurance |
| <u>Location 1:</u> 40 West 23rd Street, 6th Fl.<br>New York, NY | | | | | |
| Business Personal Property | $50,000 | | | | |
| Loss of Income &<br>Extra Expense<br>(72 hour waiting period) | 25,000 | | | | |
| Computer Equipment | 200,000 | | | | |
| Accounts Receivable | 10,000 | | | | |
| Property Off Premises | 25,000 | | | | |
| Property In Transit | 10,000 | | | | |
| Valuable Papers | 10,000 | | | | |
| <u>Location 2:</u> 1000 Belleville Turnpike<br>Kearny, NJ | | | | | |
| Business Personal Property | $20,000 | | | | $1,000 Deductible |

1

Prepared For: Word World, LLC
40 West 23rd Street, 6th Floor
New York, NY 10010

Date Prepared: 1/5/11

| COVERAGE | AMOUNT INSURED | TERM | COMPANY/ POLICY # | POLICY PREMIUM | COMMENTS |
|---|---|---|---|---|---|
| **II. GENERAL LIABILITY** | | 10/3/10 10/3/11 | General Star Indemnity Co. #IYG405546 | $15,570 | Occurrence Policy Form |
| _Commercial General Liability_ | | | | | **Note**: Premium is based on $1,500,000 total annual receipts ($500,000 for show production and $1,000,000 in royalties from toy product sales) |
| Each Occurrence | $1,000,000 | | | | |
| General Aggregate | 2,000,000 | | | | |
| Products Liability and Completed Operations | 2,000,000 | | | | $15,000 minimum premium applies |
| Damage to Rented Premises | 100,000 | | | | |
| Deductible – Per Claim | 2,500 | | | | |
| Terrorism Coverage | Included | | | | |

2

Prepared For: Word World, LLC
40 West 23rd Street, 6th Floor
New York, NY 10010

Date Prepared: 1/5/11

| COVERAGE | AMOUNT INSURED | TERM | COMPANY/ POLICY # | POLICY PREMIUM | COMMENTS |
|---|---|---|---|---|---|
| **III. MEDIA LIABILITY** | | 8/21/10 8/21/11 | Axis #MCN63820 | $3,222 | Occurrence Policy Form |
| Each Claim Annual Aggregate | $1,000,000 3,000,000 | | | | The following additional Insureds are included: Alliance Entertainment Corp. PBS New Video Group, Inc. |
| Deductible Per Claim | 25,000 | | | | Media Schedule: Season 3 – 10-11 minute long episodes and DVD release of Word World and merchandising of educational materials. |
| **IV. MANAGEMENT LIABILITY** | | 8/21/08 8/21/09 | National Union Insurance Co. #023106370 | $6,979 | Claims Made Policy Form 8/21/08 Pending Prior Litigation Date. |
| Directors & Officers Liability Per Claim/Aggregate Deductible – Per Claim | 2,000000 10,000 | | | | The following matters are specifically excluded: Morris etal v. Moody etal and Schneider v. Word World |
| Employment Practices Liability, Including Third Party Coverage Per Claim/Aggregate Deductible-Per Claim | 2,000,000 10,000 | | | | |

3

**Schedule 2.1(o): Subsidiaries**


ToonsTunes, LLC, a Delaware limited liability company

.

**Schedule 2.1(r): Other Listed Assets**

**TBD**

**Schedule 2.2(d): Excluded Executory Contracts and Unexpired Leases**

**TBD**

**Schedule 2.5(c): Allocation of Purchase Price**

**TBD**

**Schedule 6.1(c): Consents**

**TBD**

.

**Schedule 6.1(h): Additional Documents**

**TBD**

# **EXHIBIT B**

Copyright Assignment Agreement

# COPYRIGHT ASSIGNMENT

For good and sufficient consideration, receipt of which is hereby acknowledged, WORD WORLD, LLC, a New York limited liability company ("Assignor") hereby sells, assigns, transfers, and quitclaims to STANDARD GENERAL FUND L.P., a Delaware limited partnership ("Assignee"), all Assignor's right, title and interest of every kind and nature in and to all copyrights and author's rights, whether published or unpublished, including rights to prepare, reproduce and distribute copies, compilations, and derivative works, and all copyright licenses and copyright interests of every kind and nature, and any and all renewals and extensions thereof that may be secured under all laws now or hereafter in force and any and all causes of action heretofore accrued in Assignor's favor for infringement of such copyrights, author's rights, copyright licenses and copyright interests, and any and all copyright registrations therefor, whether currently in force or obtained hereafter, including but not limited to, all copyrights listed on Schedule A hereto, which are owned, possessed and/or controlled by Assignor, in all countries throughout the world wherein Assignor owns, possesses or controls the rights herein being transferred to Assignee, to the full extent of such rights.

At any time and from time to time hereafter, at Assignee's request, Assignor shall take any and all steps and execute, acknowledge and deliver to Assignee any and all future instruments and assurances necessary or expedient in order to vest the aforesaid copyrights, author's rights, copyright licenses and copyright interests more effectively in Assignee.

Assignor hereby constitutes and appoints Assignee, its true and lawful attorney-in-fact, with full power of substitution in Assignor's name and stead but for Assignee's benefit to take any and all steps including proceedings at law, in equity or otherwise, and to execute, acknowledge and deliver any and all instruments and assurances necessary or expedient in order to vest the aforesaid copyrights, author's rights, copyright licenses and copyright interests and causes of action more effectively in Assignee or to protect the same, or to enforce any claim or right of any kind with respect thereto (at Assignor's cost and expense).

IN WITNESS WHEREOF, Assignor has caused this Assignment to be signed in its corporate name by its duly authorized officer, this ___ day of _____, 2011.

WORD WORLD, LLC

By:_____
Name:
Title:

STANDARD GENERAL FUND L.P.

By:_____
Name:
Title:

## <u>CERTIFICATE OF ACKNOWLEDGEMENT</u>

STATE OF _____ )
                                  )SS.
COUNTY OF _____ )

                I, _____, a Notary Public in and for the County and State aforesaid, do hereby certify that _____, personally known to me to be the same person(s) whose name(s) is (are) subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that they signed, sealed and delivered the said instrument as a free act and deed on behalf of the identified company, WORD WORLD, LLC, a New York limited liability company, with authority to do so.

                IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal, this _____ day of _____, 2011.


                                         _____
                                         Notary Public

                                         Commission Expires: _____

STATE OF _____ )
                                   )SS.
COUNTY OF _____ )

                I, _____, a Notary Public in and for the County and State aforesaid, do hereby certify that _____, personally known to me to be the same person(s) whose name(s) is (are) subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that they signed, sealed and delivered the said instrument as a free act and deed on behalf of the identified limited partnership, STANDARD GENERAL FUND L.P., having a place of business at 650 Madison Avenue, 23rd Floor, New York, NY 10022, with authority to do so.

                IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal, this _____ day of _____, 2011.


                                         _____
                                         Notary Public

                                         Commission Expires: _____

**<u>SCHEDULE A TO COPYRIGHT ASSIGNMENT</u>**

**<u>COPYRIGHT REGISTRATIONS</u>**

| <u>NAME OF WORK</u> | <u>REGISTRATION NO.</u> | <u>REGISTRATION DATE</u> |
| --- | --- | --- |

## EXHIBIT C

Patent Assignment Agreement

# PATENT ASSIGNMENT

WHEREAS, the undersigned, Word World, LLC, a New York limited liability company, owns or has ownership rights in the inventions, applications and patents described in <u>Exhibit 1</u> attached hereto (together, the "<u>Patents</u>");

WHEREAS, Standard General Fund L.P. (hereinafter "<u>Assignee</u>"), a limited partnership organized and existing under the laws of the State of Delaware, and having a usual place of business at 650 Madison Avenue, 23rd Floor, New York, NY 10022, desires to acquire an interest therein, in accordance with agreements duly entered into with us;

NOW, THEREFORE, to all whom it may concern be it known that for and in consideration of said agreements and of other good and valuable consideration, the receipt of which is hereby acknowledged, the undersigned has sold, assigned and transferred and by these presents does hereby sell, assign and transfer unto said Assignee, its successors, assigns, and legal representatives, its entire right, title and interest in and throughout the United States of America, its territories and all foreign countries, in and to the invention(s) described in said Patents, together with its entire right, title and interest in and to said applications and such patents as may issue thereon or claim priority under the laws of the United States or any foreign country or international convention, including but not limited to non-provisionals, continuations, divisionals, reissues, reexaminations, extensions, and substitutions of said Patents, and any right, title and interest it may have in provisional applications to which any application claims priority; said invention(s), applications and Patents to be held and enjoyed by said Assignee for its own use and behalf and for its successors, assigns and legal representatives, to the full end of the term for which said Patents may be granted as fully and entirely as the same would have been held by the undersigned had this assignment and sale not been made; the undersigned hereby conveys all of its rights arising under or pursuant to any and all laws of the United States and any foreign country and international agreements, treaties or laws relating to the protection of industrial property by filing any such applications for Patents, including but not limited to any cause(s) of action and damages accruing prior to this assignment. The undersigned hereby acknowledges that this assignment, being of the entire right, title and interest in and to said invention(s), carries with it the right in Assignee to apply for and obtain from competent authorities in all countries of the world any and all Patents by attorneys and agents of Assignee's selection and the right to procure the grant of all Patents to Assignee in its own name as assignee of our entire right, title and interest therein; and

AND, the undersigned hereby further agrees for itself and its executors and administrators to execute upon request any other lawful documents and likewise to perform any other lawful acts which may be deemed necessary to secure fully the aforesaid invention(s) to said Assignee, its successors, assigns, and legal representatives, but at its or their expense and charges, including the execution of non-provisional, substitution, continuation, divisional, reissue, reexamination, or corresponding foreign or international patent applications;

AND, the undersigned hereby further agrees, at the Assignee's expense, to provide statements or testimony in any interference or other proceeding in which said invention(s) or any application or patent directed thereto may be involved;

AND, the undersigned hereby authorizes Assignee or its attorneys or agents to insert the correct serial number and filing date into this assignment, if none is indicated on the date of its execution of this assignment;

AND, the undersigned hereby authorizes and requests the Director of the United States Patent and Trademark Office and the empowered officials of all other governments to issue such Patents as shall be granted upon said application, or applications based thereon, to said Assignee, its successors, assigns, or legal representatives.

*[Remainder of Page Intentionally Left Blank]*

.

**IN TESTIMONY WHEREOF**, we have hereunto set our hands and affixed our seals on the date(s) set forth below.

ASSIGNEE:                              ASSIGNOR:

STANDARD GENERAL FUND L.P.            WORD WORLD, LLC

By: _____         By: _____
Name:                                  Name:
Title:                                 Title:


State of New York                    )

County of                            ) ss

    On this _____ day of _____, 2011, before me, the undersigned Notary Public, personally appeared _____, who acknowledged that he was the _____ of Word World, LLC and that being duly authorized he signed such instrument as a free act on behalf of said company proved to me through satisfactory evidence of identification, which was/were _____, to be the person whose name is signed on the preceding or attached document, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his/her knowledge and belief.


_____                    (Seal)

Signature of Notary

My Commission Expires: _____


State of New York                    )

County of                            ) ss

    On this _____ day of _____, 2011, before me, the undersigned Notary Public, personally appeared _____, who acknowledged that he was the _____ of Standard General Fund L.P. and that being duly authorized he signed such instrument as a free act on behalf of said limited partnership proved to me through satisfactory evidence of identification, which was/were _____, to be the person whose name is signed on the preceding or attached document, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his/her knowledge and belief.


_____                    (Seal)

Signature of Notary

My Commission Expires: _____

# EXHIBIT 1 TO PATENT ASSIGNMENT

## PATENT APPLICATIONS

| Docket No. | Serial No. | Filing Date | Status |
|---|---|---|---|
| WWI001 | 10/850,186 | 5/19/2004 | Pending |
| WWI001-AUSTRALIA | 2005262732 | 5/18/2005 | Abandoned |
| WWI001-BRAZIL | PI 0511436-5 | 11/21/2006 | Pending |
| WWI001-CANADA | 2,567,367 | 5/18/2005 | Abandoned |
| WWI001-CHINA | 200580020452.5 | 1/19/2007 | Abandoned |
| WWI001-EPO | 05752284.9 | 3/26/2007 | Abandoned |
| WWI001-ISREAL | 179396 | 5/18/2005 | Abandoned |
| WWI001-JAPAN | 2007-527376 | 11/20/2006 | Pending |
| WWI001-MEXICO | PA/A/2006/013521 | 11/21/2006 | Pending |
| WWI001-NORWAY | 20065877 | 12/19/2006 | Pending |

## **EXHIBIT D**

Trademark Assignment Agreement

# **TRADEMARK ASSIGNMENT**

This TRADEMARK ASSIGNMENT (this "Assignment") is entered into by Word World, LLC, a New York limited liability company, having a place of business located at 40 W. 23rd Street, 6th Floor, New York, NY 10010 ("Assignor"), as assignor, in favor of Standard General Fund L.P., a Delaware limited partnership having a place of business at 650 Madison Avenue, 23rd Floor, New York, NY 10022 (the "Assignee"), as assignee, with reference to the following facts and circumstances:

Assignor and Assignee have entered into that certain Amended Asset Purchase Agreement dated as of March 8, 2011 (the "Asset Purchase Agreement"), which, along with the promises contained herein, constitute mutual consideration for the promises herein;

Assignor is the owner of the trademark registrations and applications for registration (the "Trademarks") as shown on the attached Exhibit 1.

WHEREAS, Assignee desires to acquire all right, title and interest in and to the Trademarks and related rights as provided in the Asset Purchase Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor does hereby assign and transfer unto Assignee all right, title and interest of Assignor in and to the Trademarks, together with (i) the registrations of the Trademarks, (ii) the goodwill of the business symbolized by the Trademarks, as well as its entire right, title and interest in and to any and all common law rights to the Trademarks in the United States or any foreign country, and (iii) any and all claims and demands it may have either at law or in equity arising out of or in connection with any past, present or future infringements or dilution of or damage or injury to the Trademarks or the registrations thereof or such associated goodwill.

Assignor does hereby expressly agree that Assignee may singly, and without assistance or consent from Assignor, undertake procedures to record the transfer of the Trademarks to Assignee in the United States Patent and Trademark Office.

In testimony whereof, Assignor has caused this Assignment to be executed by its officer(s) thereunto duly authorized.

**ASSIGNEE:**                                        **ASSIGNOR:**

**STANDARD GENERAL FUND L.P.**                        **WORD WORLD, LLC**

By: _____                  By: _____
Name:                                                 Name:
Title:                                                Title:


**State of New York**                         )

**County of**                                 ) ss

On this ____ day of _____, 2011, before me, the undersigned Notary Public, personally appeared _____, who acknowledged that he was the _____ of Word World, LLC and that being duly authorized he signed such instrument as a free act on behalf of said company proved to me through satisfactory evidence of identification, which was/were _____, to be the person whose name is signed on the preceding or attached document, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his/her knowledge and belief.

_____                       (Seal)

Signature of Notary

My Commission Expires: _____


**State of New York**                         )

**County of**                                 ) ss

On this ____ day of _____, 2011, before me, the undersigned Notary Public, personally appeared _____, who acknowledged that he was the _____ of Standard General Fund L.P., a Delaware limited partnership and that being duly authorized he signed such instrument as a free act on behalf of said limited partnership proved to me through satisfactory evidence of identification, which was/were _____, to be the person whose name is signed on the preceding or attached document, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his/her knowledge and belief.

_____                       (Seal)

Signature of Notary

My Commission Expires: _____

## EXHIBIT 1 TO TRADEMARK ASSIGNMENT

### Trademarks

| Mark | Reg. or Serial Number | Class | Country/State |
|------|----------------------|-------|---------------|
|      |                      |       |               |

## **EXHIBIT E**

Bill of Sale

<u>Bill of Sale</u>

THIS BILL OF SALE (this "***Bill of Sale***") is made as of this _____ day of _____, 2011, by Word World, LLC, a New York limited liability Company ("<u>Seller</u>"), in favor of Standard General Fund L.P., a Delaware limited partnership ("<u>Purchaser</u>"). Unless otherwise defined herein, capitalized terms shall be used herein as defined in the Asset Purchase Agreement (as such term is defined below).

## W I T N E S S E T H:

**WHEREAS**, Seller and Purchaser are parties to an Amended Asset Purchase Agreement, dated as of March 8, 2011 (the "***Asset Purchase Agreement***"), pursuant to which Purchaser is purchasing all of Seller's tangible and intangible assets; and

**WHEREAS**, the execution and delivery of this Bill of Sale by Seller is a condition to the obligations of Purchaser to consummate the transactions contemplated by the Asset Purchase Agreement.

**NOW, THEREFORE**, for good and valuable consideration, receipt of which is hereby acknowledged, and pursuant to the Asset Purchase Agreement, Seller, intending to be legally bound hereby, hereby agrees as follows:

1.      <u>Conveyance of Purchased Assets</u>.  Seller hereby sells, transfers, conveys, assigns and delivers to Purchaser, its successors and assigns, to have and to hold forever, all right, title and interest in, to and under all of the Purchased Assets.  Notwithstanding anything in this Bill of Sale or the Asset Purchase Agreement to the contrary, it is understood that none of the Excluded Assets are being transferred or assigned to Purchaser.  Seller warrants that, upon delivery to Purchaser of the Purchased Assets sold, assigned, transferred, conveyed, granted, bargained, set over, released, delivered, vested and confirmed from Seller to Purchaser pursuant to this Bill of Sale, Purchaser will own, with good and marketable title and free and clear of all Encumbrances, the Purchased Assets.

2.      <u>Obligations and Liabilities Not Assumed</u>.  Nothing expressed or implied in this Bill of Sale shall be deemed to be an assumption by Purchaser of any liabilities of Seller.  Purchaser does not by this Bill of Sale assume or agree to pay, perform or discharge any liabilities of Seller of any nature, kind or description whatsoever.

3.      <u>No Third Party Beneficiaries</u>.  This Bill of Sale shall be binding upon and inure solely to the benefit of the parties hereto and their permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person any legal or equitable right, benefit or remedy of any nature whatsoever, under or by reason of this Bill of Sale.

4.      <u>Assignment</u>.  This Bill of Sale may not be assigned by operation of law or otherwise without the express written consent of Seller and Purchaser (which consent may be granted or withheld in the sole discretion of Seller or Purchaser); <u>provided</u>, <u>however</u>, that Purchaser may assign this Bill of Sale to an affiliate of Purchaser without the consent of Seller.

5.	Binding Nature.  This Bill of Sale shall be binding upon and inure to the benefit of the parties hereto without limitation, and their successors and assigns.

6.	Counterparts.  This Bill of Sale may be executed in several counterparts, each of which shall be deemed an original, and all such counterparts shall constitute one and the same instrument.

7.	Governing Law.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, applicable to contracts executed in and to be performed entirely within that state.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed as of the date first written above by its officer thereunto duly authorized.

WORD WORLD, LLC

By:_____
Name:
Title:

ACKNOWLEDGED AND AGREED:

STANDARD GENERAL FUND L.P.

By:_____
Name:
Title:

## **EXHIBIT F**

Assignment and Assumption Agreement

# ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT, (this "Agreement") is made as of this ___ day of _____, 2011 by and between Word World, LLC, a New York limited liability company ("Seller"), and Standard General Fund L.P., a Delaware limited partnership ("Purchaser"), pursuant to that certain Amended Asset Purchase Agreement dated as of March 8, 2011 by and between Seller and Purchaser (the "Purchase Agreement"). Unless otherwise defined herein, capitalized terms used herein shall be as defined in the Purchase Agreement.

## W I T N E S S E T H:

WHEREAS, Subject to Bankruptcy Court approval, Seller has agreed to assign all of its rights under certain contracts, leases, agreements and licenses (as more particularly described in the Purchase Agreement, the "Assumed Contracts") to Purchaser;

WHEREAS, Purchaser has agreed to assume Seller's liabilities and obligations with respect to the Assumed Contracts arising after the Closing Date (the "Assumed Liabilities"); and

WHEREAS, the execution and delivery of this Agreement by Purchaser and Seller is a condition to the obligations of both parties to consummate the transactions contemplated by the Purchase Agreement.

NOW, THEREFORE, in consideration of the promises and the mutual agreements and covenants set forth herein and in the Purchase Agreement, and intending to be legally bound hereby, Purchaser and Seller hereby agree as follows:

1.      Assignment of Rights under Assumed Contracts.  Seller hereby sells, transfers, conveys, assigns and delivers and agrees to sell, transfer, convey and deliver to Purchaser, its successors and assigns, to have and to hold forever, all of Seller's right, title and interest in, to and under the Assumed Contracts.

2.      Assumption.  Purchaser hereby assumes and agrees to pay, perform and discharge when due the Assumed Liabilities.

3.      Excluded Liabilities.  Notwithstanding anything in this Agreement or the Purchase Agreement to the contrary, Seller shall retain, and shall be responsible for paying, performing and discharging when due, and Purchaser shall not assume or have any responsibility for, all liabilities of Seller as of the Closing other than the Assumed Liabilities.

4.      No Third Party Beneficiaries.  This Agreement shall be binding upon and inure solely to the benefit of the parties hereto and their permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or

equitable right, benefit or remedy of any nature whatsoever, under or by reason of this Agreement.

5.  <u>Assignment</u>.  Neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any of the parties hereto (whether by operation of law or otherwise) without the prior written consent of Seller and Purchaser; provided, however, that Purchaser may assign (without consent) any of its rights under this Agreement to any successor to all or substantially all of its business (whether by sale of ownership interests or assets, merger, consolidation or otherwise).  Subject to the preceding sentence, this Agreement will be binding upon, inure to the benefit of and be enforceable by the parties and their respective successors and permitted assigns.

6.  <u>Governing Law</u>.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, applicable to contracts executed in and to be performed entirely within that state.

7.  <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, and by the different parties hereto in separate counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, Purchase and Seller have caused this Assignment and Assumption Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**PURCHASER:**

STANDARD GENERAL FUND L.P.

By: _____
Name:
Title:

**SELLER:**

WORD WORLD, LLC

By: _____
Name:
Title:

# **EXHIBIT G**

Power of Attorney

## Power of Attorney

Word World, LLC, a New York limited liability company, with a business address of 40 W. 23rd Street, 6th Floor, New York, NY 10010 ("Seller") hereby constitutes and appoints Standard General Fund L.P., a Delaware limited partnership having a place of business at 650 Madison Avenue, 23rd Floor, New York, NY 10022, and its successors and assigns ("Purchaser"), the true and lawful attorney and attorneys of Seller, with full power of substitution, in the name of Purchaser or in the name and stead of Seller, but on behalf of, for the benefit and at the expense of Purchaser, its successors and assigns:

        (i)      to collect, demand and receive any and all Purchased Assets hereby sold and assigned to Purchaser or intended so to be;

        (ii)      to institute and prosecute any and all actions, suits or proceedings, at law, in equity or otherwise, which Purchaser may deem proper in order to collect, assert or enforce any claim, right or title of any kind in or to the Purchased Assets hereby sold and assigned to Purchaser or intended so to be, to defend or compromise any and all actions, suits or proceedings in respect of any of the Purchased Assets, and to do all such acts and things in relation thereto as Purchaser shall deem advisable; and

        (iii)      to take any and all other reasonable action designed to vest more fully in Purchaser the Purchased Assets hereby sold and assigned to Purchaser or intended so to be and in order to provide for Purchaser the benefit, use, enjoyment and possession of such Purchased Assets.

        Seller acknowledges that the foregoing powers are coupled with an interest and shall be irrevocable by it or upon its subsequent dissolution or in any manner or for any reason.

WORD WORLD, LLC

Dated: _____ \_\_\_, 2011          _____

## EXHIBIT H

INTENTIONALLY OMITTED

# **EXHIBIT I**

Sale Approval Order

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| WORD WORLD, LLC, | Case No. 11-10543 (SHL) |
| Debtor. | |

### ORDER PURSUANT TO SECTIONS 105, 363, 365 AND 1146 OF THE BANKRUPTCY CODE (A) APPROVING THE TERMS AND CONDITIONS OF AN AGREEMENT FOR THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR AND THE ASSUMPTION AND ASSIGNMENT OF RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (B) AUTHORIZING THE CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED THEREIN AND (C) GRANTING RELATED RELIEF

Upon consideration of the motion, dated February 14, 2011 (the "**Sale Motion**"), of

Word World, LLC, as debtor in possession (the "**Debtor**"), pursuant to sections 105, 363, 365,

and 1146 of title 11 of chapter 11 of the United States Code (the "**Bankruptcy Code**") and Rules

2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

for entry of an order (the "**Bidding Procedures Order**") (I) authorizing and approving (A) the

Debtor's execution of the asset purchase agreement by and between the Debtor and Standard

General Fund L.P. (the "**Purchaser**") for (1) the sale of substantially all of the Debtor's assets,

free and clear of all liens, claims, encumbrances and other interests, and (2) the assumption and

assignment of certain executory contracts and unexpired leases, (B) the bidding procedures for

submission and acceptance of competing bids and conduct at the Auction (including a break-up

fee and other bid protections), (C) the form and manner of notice of the sale of such assets, and

(D) scheduling a sale approval hearing (the "**Sale Hearing**"), and an order (the "**Sale Approval**

**Order**") (II) authorizing and approving (A) the sale of substantially all of the Debtor's assets,

free and clear of all liens, claims, encumbrances and other interests, (B) the assumption and

assignment of certain executory contracts and unexpired leases, (C) the Debtor's consummation

of the transactions contemplated in the Agreement, and (D) an exemption from transfer taxes pursuant to section 1146(a) of the Bankruptcy Code; and this Court having entered the Bidding Procedures Order on March __, 2011; and it appearing that due and proper notice of the Sale Hearing has been provided pursuant to Bankruptcy Rules 2002, 6004 and 6006; and it appearing that such notice constitutes good and sufficient notice of the relief requested in the Sale Approval Order (the "**Sale Relief**") and that no other or further notice need be provided; and it further appearing that this Court has jurisdiction to consider the Sale Relief pursuant to 28 U.S.C. §§ 157 and 1334; and after considering all objections, if any, to the Sale Relief; and the Court having reviewed the Sale Motion and the Amended Asset Purchase Agreement attached hereto as **Exhibit A** (as may be amended, modified, replaced, or restated from time to time, the "**Agreement**"), and the Court having heard the statements of counsel in support of the Sale Motion at the Sale Hearing on April __, 2011; and upon the Sale Motion and the record of the Sale Hearing and all other proceedings had before the Court; and the Court being fully advised in the premises and having determined that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief herein granted;

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue of this case and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief sought in the Sale Motion are Sections 105(a), 363, 365, and 1146(a) of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Bankruptcy Rules.

C.     Proper, timely, adequate and sufficient notice of the Sale Motion, the auction conducted in connection with the Sale Motion (the "**Auction**"), the Sale Hearing, the sale and assignment transactions described in the Agreement (the "**Sale Transaction**"), and the assumption and assignment of the executory contracts and unexpired leases listed on **Exhibit B** attached hereto, subject to the Purchaser's addition or removal of any such contract prior to the Closing pursuant to the provisions of the Bidding Procedures Order (the "**Assumed Contracts**"), has been provided in accordance with Sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014 and in compliance with the Bidding Procedures (as defined in the Bidding Procedures Order), such notice was due, timely, good, sufficient and appropriate under the particular circumstances, and no other or further notice of the Sale Motion, the Auction, the Sale Hearing, the Sale Transaction, the assumption and assignment of the Assumed Contracts, or the Bidding Procedures is or shall be required.

D.     As demonstrated by (1) the testimony and/or other evidence proffered or adduced at the Sale Hearing and (2) the representations of counsel made on the record at the Sale Hearing, the Debtor has marketed the Assets[1] and conducted the sale process in compliance with the Bidding Procedures Order and the Bidding Procedures.

E.     Creditors, parties-in-interest and other entities have been afforded a reasonable and fair opportunity to bid for the Assets.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Agreement

F.   No consents or approvals, other than those expressly provided for in the Agreement, are required for the Debtor to consummate the Sale Transaction or the assumption and assignment of the Assumed Contracts.

G.   Approval of the Agreement and consummation of the proposed sale and purchase of the Assets are in the best interests of the Debtor, its creditors, its estate, and other parties-in-interest.

H.   The Debtor has demonstrated both (1) good, sufficient, and sound business purpose and justification and (2) compelling circumstances for the sale pursuant to Section 363(b) of the Bankruptcy Code prior to, and outside of, a plan.

I    A reasonable and fair opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities.

J    The Agreement was negotiated, proposed and entered into by and between the Debtor and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the avoidance of the Agreement, the consummation of the Sale Transaction or the assumption and assignment of the Assumed Contracts, or the imposition of costs or damages under Section 363(n) of the Bankruptcy Code.

K.   The Purchaser is a good faith purchaser under Section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. The

Purchaser has at all times acted in good faith within the meaning of Section 363(m) of the Bankruptcy Code.

L.  The Purchaser submitted the highest and best offer for the Assets at the Auction.

M.  The Purchase Price represents fair value for the Assets. The consideration provided by the Purchaser for the Assets pursuant to the Agreement (1) is fair and reasonable, (2) is the highest and best offer for the Assets, (3) will provide a greater recovery for the Debtor's creditors than would be provided by any other practical available alternative, and (4) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

N.  Based on amounts advanced to the Debtor under the Secured Super-Priority Debtor-In-Possession Loan Agreement dated as of February 10, 2011 (as amended on March __, 2011), the Purchaser is deemed to have provided the Debtor with a $50,000 deposit (the "**Deposit**") in accordance with the Agreement.

0.  The Sale Transaction must be approved and consummated promptly in order to preserve the value of the Assets.

P.  The Assets all constitute property of the Debtor's estate. The transfer of the Assets to the Purchaser will be a legal, valid, and effective transfer of the Assets, and will vest the Purchaser with all right, title, and interest of the Debtor in and to the subject Assets free and clear of all liens, claims, interests, obligations and Encumbrances. The Purchaser shall have no liability for any claims against the Debtor or its estate or any liabilities or obligations of the

Debtor or its estate including, without limitation, any taxes arising under or out of, in connection with, or in any way relating to the operation of the Debtor's business prior to the Closing Date (other than those expressly assumed by the Purchaser in the Agreement (the "**Assumed Liabilities**")).

Q.     The Purchaser would not have entered into the Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate, and its creditors, if the sale of the Assets to the Purchaser and the assignment of the Assumed Contracts to the Purchaser were not free and clear of all liens, claims, interests, obligations, and Encumbrances of any kind or nature whatsoever under Section 363 of the Bankruptcy Code and any other applicable sections of the Bankruptcy Code, or if the Purchaser would, or in the future could be, liable for any of such liens, claims, interests, obligations, or Encumbrances (other than the Assumed Liabilities).

R.     The Debtor may sell the Assets and assume and assign the Assumed Contracts free and clear of all interests, claims, liens, obligations, and Encumbrances of any kind or nature whatsoever because, in each case, one or more of the standards set forth in Sections 363(f)(1)-(5) and 365 of the Bankruptcy Code has been satisfied. Those non debtor parties with interests, liens, claims, obligations, and/or Encumbrances in the Assets or the Assumed Contracts who did not object, or who withdrew their objections, to the proposed sale and purchase of Assets or the Sale Motion are deemed to have consented pursuant to Sections 363(f)(2) and 365 of the Bankruptcy Code. Those non-debtor parties with interests, liens, claims, obligations, and/or Encumbrances in the Assets or Assumed Contracts who did object fall within one or more of the other subsections of Sections 363(f) and 365 of the Bankruptcy Code and are adequately protected by having their interests, liens, claims, obligations, and/or Encumbrances, if any, attach

to the cash proceeds of the proposed sale and purchase of the Assets, which constitute the property against or in which they claim an interest, lien, claim, obligation, and/or Encumbrance, or by having the Purchaser assume their claim or obligation.

S.    Except for the Assumed Liabilities, the transfer of the Assets to the Purchaser and the assumption and assignment to the Purchaser of the Assumed Contracts will not subject the Purchaser, its affiliates, designees, assignees, or successors, to any liability whatsoever with respect to the operation of the Debtor's business prior to the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity including, without limitation, any theory of equitable law, antitrust, or successor or transferee liability.

T.    The sale of the Assets to the Purchaser is a prerequisite to the Debtor's ability to confirm and consummate a plan. The Sale Transaction is a sale in contemplation of a plan to be confirmed in this Chapter 11 case and, accordingly, shall not be taxed under any law imposing a stamp tax or similar tax to the fullest extent authorized under Section 1146(a) of the Bankruptcy Code.

U.    The Debtor has demonstrated that it is an exercise of its sound business judgment to assume and assign the Assumed Contracts to the Purchaser in connection with the consummation of the Sale Transaction, and the assumption and assignment of the Assumed Contracts is in the best interests of the Debtor, its estate, and its creditors. The Assumed Contracts being assigned to the Purchaser are an integral part of the business being purchased by the Purchaser and, accordingly, such assumption and assignment of the Assumed Contracts is

reasonable, enhances the value of the Debtor's estate, and does not constitute unfair discrimination.

V.    Non debtor parties to the Assumed Contracts have received adequate notice of, and opportunity to be heard on, the Debtor's request for authority to assume and assign each of the Assumed Contracts and for the Purchaser to assign, sublicense, sublease, or otherwise transfer or dispose of rights in, to or under all Assumed Contracts to any of its affiliates, designees, assignees, and/or successors, which is done in connection with consummating the Agreement and the Sale Transaction.

W.    The Debtor (or the Purchaser, as the case may be) has provided adequate assurance of payment of amounts necessary to cure defaults (within the meaning of Section 365(b)(1)(A) of the Bankruptcy Code) under any of the Assumed Contracts, by virtue of (1) the provisions of the Agreement and this Order that provide for the payment by the Debtor (or the Purchaser, as the case may be) of certain liabilities under the Assumed Contracts, and (2) the assumption by the Purchaser, on the terms provided in the Agreement and this Order, of certain cure obligations under the Assumed Contracts.

X.    Adequate assurance of future performance (within the meaning of Section 365(b)(1)(C) of the Bankruptcy Code) has been demonstrated for each of the Assumed Contracts, by virtue of the assumption on the Closing Date by the Purchaser on the terms provided in the Agreement of the post Closing Date liabilities under such Assumed Contracts.

Y.    Any and all provisions of the Assumed Contracts that purport or attempt to prohibit an assignment (or reassignment, sublicense, sublease or other transfer or disposition as between the Purchaser and any of its affiliates, designees, assignees, and/or successors in

connection with consummating the Agreement and the Sale Transaction) or purport or attempt to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtor's or the Purchaser's interests or rights in any of the Assets and/or Assumed Contracts, or any similar rights, all constitute impermissible restrictions on the assignment of the Assumed Contracts and are void and unenforceable pursuant to Section 365(f)(1) of the Bankruptcy Code. Each of the Assumed Contracts is in full force and effect and each constitutes an executory contract or unexpired lease pursuant to Section 365 of the Bankruptcy Code.

Z.  Brokers were not involved in consummating the Sale Transaction. Therefore, no agent, broker, person or firm acting or purporting to act on behalf of either the Debtor or the Purchaser is or will be entitled to any commission, broker's fee or finder's fee from any of the parties to the Agreement or any other person respecting the Sale Transaction.

AA. There is a need to consummate the Agreement and the Sale Transaction as rapidly as possible due to the need to preserve the value of the Assets. Accordingly, there is cause to lift the stays of execution of this Order contemplated by Bankruptcy Rules 6004(g) and 6006(d).

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

<u>General Provisions</u>

1.  The Sale Relief, as requested in the Sale Motion, is granted as further described herein.

2.      The findings of fact set forth above and conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3.      All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled on the merits with prejudice.

<u>Approval of the Agreement</u>

4.      The Agreement, and all of the terms and conditions thereof, are hereby approved.

5.      Pursuant to Section 363(b) of the Bankruptcy Code, the Debtor is authorized to consummate the Sale Transaction and the assumption and assignment of the Assumed Contracts, pursuant to and in accordance with the terms and conditions of the Agreement, effective immediately upon the signing of this Order.

6.      The Debtor is authorized and directed to execute and deliver, and empowered to perform under, consummate, and implement the Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or

reducing to possession, the Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

Transfer of the Assets

7.  Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code upon consummation of the Agreement (the "**Closing**"), the Assets (and good and marketable title to the Assets) shall be transferred to the Purchaser, free and clear of all liens, claims, interests, obligations, and Encumbrances of any kind or nature whatsoever, with all such interests, liens, claims, obligations, and Encumbrances of any kind or nature whatsoever to attach to the proceeds of the Sale Transaction and the assumption and assignment of the Assumed Contracts in the order of their priority, with the same validity, force and effect which they now have as against the respective Assets, subject to any claims and defenses the Debtor may possess with respect thereto.

8.  Except as expressly permitted or otherwise specifically provided by the Agreement or this Order, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, employees, authors, inventors, trade and other creditors, holding any interests, liens, claims, obligations, and/or Encumbrances of any kind or nature whatsoever against or in the Debtor or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, the Assets, the Excluded Assets, the Excluded Liabilities, the operation of the Debtor's business prior to the Closing Date, or the transfer of the Assets to the Purchaser, hereby are forever barred, estopped,

and permanently enjoined from asserting such persons' or entities' interests, liens, claims, obligations, or Encumbrances against the Purchaser, its affiliates, designees, assignees, and/or successors, their respective properties or assets. Effective upon the Closing Date, the Purchaser, its affiliates, designees, assignees, and/or successors shall have no liability for any Claims (as defined in Section 101(5) of the Bankruptcy Code) or Encumbrances against the Debtor or its estate or interests or Encumbrances in the Debtor or its estate, except as expressly provided in the Agreement.

9.     The transfer of the Assets to the Purchaser pursuant to the Agreement constitutes a legal, valid, and effective transfer of the Assets, and shall vest the Purchaser with all right, title, and interest of the Debtor in and to the Assets free and clear of all liens, claims, interests, obligations and Encumbrances of any kind or nature whatsoever.

10.     To the fullest extent authorized under applicable law, including Section 1146(a) of the Bankruptcy Code, the transfer of the Assets to the Purchaser shall not be taxed and/or shall not be subject to any tax under any federal, state, local, municipal or other law imposing or claiming to impose a stamp tax or a sale, use, transfer, or any other similar tax on the Debtor's transfers or sales of real estate, personal property, or other Assets owned or possessed by the Debtor.

Assumption and Assignment to
Purchaser of the Assumed Contracts

11.     Pursuant to Sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing, the Debtor's assumption and assignment

to the Purchaser of the Assumed Contracts is hereby approved, and the requirements of Section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

12.     The Debtor is hereby authorized and directed in accordance with Sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser, effective upon the Closing, the Assumed Contracts free and clear of all liens, claims, interests, obligations, and Encumbrances of any kind or nature whatsoever, and (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to the Purchaser. The Purchaser is authorized to assign, sublicense, or otherwise transfer or dispose of rights in, to or under all such Assumed Contracts to its affiliates, designees, assignees, or successors which is done in connection with consummating the Agreement.

13.     The Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in Sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to Section 365(k) of the Bankruptcy Code, the Debtor shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to the Purchaser.

14.     All defaults or other obligations of the Debtor under the Assumed Contracts arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in Section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by the Debtor upon payment by the Debtor at the Closing or as soon as practicable thereafter of the cure amounts set forth on **Exhibit B** annexed hereto (the

"**Cure Amounts**"). The Cure Amounts are hereby fixed at the amounts set forth on **Exhibit B** annexed hereto and the non-debtor parties to such Assumed Contracts are hereby forever bound by such Cure Amounts. Except for the Cure Amounts set forth on **Exhibit B** annexed hereto, there are no other defaults existing under the Assumed Contracts.

15.    Except for the obligations of the Debtor to pay the Cure Amounts as set forth in the Agreement, each non-debtor party to an Assumed Contract is hereby forever barred, estopped, and permanently enjoined from asserting against the Debtor and/or the Purchaser, or any of their respective properties or assets, any default or additional amounts existing as of the Closing Date, whether declared or undeclared or known or unknown; and such parties are also forever barred, estopped, and permanently enjoined from asserting against the Purchaser, any counterclaim, defense, setoff, right of recoupment, or any other claim asserted or assertable against the Debtor.

16.    Pursuant to Section 365(b)(2) of the Bankruptcy Code, any default under the Assumed Contracts arising from the insolvency or financial condition of the Debtor prior to the commencement of this Chapter 11 case, or from the commencement by the Debtor of this Chapter 11 case, is of no force and effect, null and void, and unenforceable.

17.    Pursuant to Section 365(f)(1) of the Bankruptcy Code, any defaults under the Assumed Contracts arising from the assignment thereof by the Debtor to the Purchaser (or the Purchaser to its affiliates, designees, assignees, or successors by way of reassignment, sublicense, sublease or other transfer or disposition which is done in connection with consummating the Agreement) are of no force and effect, null and void, and unenforceable.

18.     Pursuant to Section 365(f)(3) of the Bankruptcy Code, any provision of an Assumed Contract or applicable law that terminates or modifies, or permits a party other than the Debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation shall not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the Debtor (or by the Purchaser to any of its affiliates, designees, assignees, or successors by way of reassignment, sublicense, sublease or other transfer or disposition which is done in connection with consummating the Agreement).

19.     The failure of the Debtor or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such teams or conditions, or of the Debtor's and Purchaser's rights to enforce every term and condition of the Assumed Contracts.

<u>Additional Provisions</u>

20.     On the Closing Date, each of the Debtor's creditors (including any person or entity that may allege to have an rights or interest in the Debtor's intellectual property assets) is authorized and directed to execute such documents and take all other actions as may be necessary to release their interests in the Assets, if any, as such interests may have been recorded or may otherwise exist.

21.     The Purchaser is hereby authorized to allocate the Assets and the Assumed Contracts among its affiliates, designees, assignees, and/or successors in a manner as it in its sole discretion deems appropriate and to assign, sublease, sublicense, transfer or otherwise dispose of any of the Assets or the rights under any Assumed Contract to its affiliates, designees, assignees,

and/or successors with all of the rights and protections accorded under this Order and the Agreement, and the Debtor shall cooperate with and take all actions reasonably requested by the Purchaser to effectuate any of the foregoing.

22.     This Order (a) shall be effective as a determination that, on the Closing Date, all liens, claims, interests, obligations, and Encumbrances of any kind or nature whatsoever existing with respect to the Debtor or the Assets prior to the Closing (other than the Assumed Liabilities) have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.

23.     Each and every federal, state, and local governmental agency or department or office is hereby directed to accept this Order and any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

24.     The Debtor is hereby authorized and directed to execute and deliver to the Purchaser all of the ancillary documents and instruments required under the Agreement and any other good and sufficient documents and/or instruments of conveyance or transfer as are

reasonably necessary to vest in the Purchaser good and valid title to the Assets, free and clear of all interests, liens, claims, obligations, and Encumbrances.

25.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing interests with respect to the Debtor or the Assets shall not have delivered to the Debtor prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to the Debtor or the Assets or otherwise, then (a) the Debtor is hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Assets and (b) the Purchaser and/or the Debtor is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all interests, liens, claims, obligations, and/or Encumbrances in or related to the Assets of any kind or nature whatsoever. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, and local governmental agency, department, or office.

26.    All entities who are presently, or on the Closing Date may be, in possession of some or all of the Assets are hereby directed to surrender possession of the Assets to the Purchaser on the Closing Date.

27.    Except for the Assumed Liabilities, the Purchaser shall have no liability or responsibility for any liability or other obligations of the Debtor arising under or related to the Assets. Without limiting the generality of the foregoing, and except for the Assumed Liabilities,

the Purchaser, its affiliates, designees, assignees, and/or successors shall not be liable for any claims against the Debtor or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtor or any obligations of the Debtor arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the business prior to the Closing Date or the sale of the Assets to the Purchaser.

28. Under no circumstances shall the Purchaser or any of its affiliates, designees, assignees, or successors be deemed successors of or to the Debtor for any interests, liens, claims, obligations, or Encumbrances of any kind or nature whatsoever against or in the Debtor or the Assets. Except for the Assumed Liabilities, the sale, transfer, assignment, and delivery of the Assets shall not be subject to any liens, claims, interests, obligations, and/or Encumbrances of any kind or nature whatsoever and any such liens, claims, interests, obligations, and/or Encumbrances of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtor. Except with respect to the Assumed Liabilities, all persons holding interests, liens, claims, obligations, or Encumbrances of any kind or nature whatsoever against or in the Debtor or the Assets shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such interests, liens, claims, obligations, or Encumbrances of any kind or nature whatsoever against the Purchaser, its affiliates, designees, assignees, and/or successors, their respective properties or assets, or the Assets with respect to any interests, liens, claims, obligations, or Encumbrances of any kind or nature whatsoever that such person or entity had, has, or may have against or in the

Debtor, its estate, officers, directors, members, managers, shareholders, or the Assets. Following the Closing Date, no holder of any interests, liens, claims, obligations, or Encumbrances of any kind or nature whatsoever in or against the Debtor shall interfere with the Purchaser's title to or use and enjoyment of the Assets based on or related to such interests, liens, claims, obligations, or Encumbrances of any kind or nature whatsoever, or any actions that the Debtor may have taken or may take in its Chapter 11 case.

29.     Any amounts that become payable by the Debtor pursuant to the Agreement or any of the documents delivered by the Debtor pursuant to or in connection with the Agreement shall (a) constitute administrative expenses of the Debtor's estate and (b) be paid by the Debtor in the time and manner as provided in the Agreement, without further order of this Court.

30.     The Debtor is hereby authorized and directed to execute and deliver such closing and other confirmatory documents and to do such things as are necessary and appropriate, and as are reasonably requested by the Purchaser, to implement and effectuate the provisions of this Order and the transactions approved hereby.

31.     No bulk sales law, or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Agreement, the Sale Motion, and/or this Order.

32.     This Court hereby retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets

to the Purchaser, (b) resolve any disputes arising under or related to the Agreement, except as otherwise provided therein, (c) interpret, implement, and enforce the provisions of this Order and resolve any disputes related thereto, (d) protect the Purchaser against any interests, liens, claims, obligations, or Encumbrances against or in the Debtor or the Assets, of any kind or nature whatsoever, whether or not such interests, liens, claims, obligations, or Encumbrances attach to the proceeds of the sale of the Assets, and (e) determine any disputes raised by non-debtor parties concerning the assumption and assignment of the Assumed Contracts to the Purchaser.

33.     Nothing contained in any plan confirmed in this Chapter 11 case or any order of this Court confirming such plan shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

34.     Except as expressly provided in the Agreement, the sale and transfer of the Assets to the Purchaser shall not subject the Purchaser, its affiliates, designees, assignees, and/or successors to any liability with respect to the operation of the business prior to the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity including, without limitation, any theory of equitable subordination, antitrust, or successor or transferee liability.

35.     The transactions contemplated by the Agreement are undertaken by the Purchaser in good faith, as that term is used in Section 363(m) of the Bankruptcy Code. Accordingly, any reversal or modification on appeal of the authorization provided herein to consummate the sale and transfer of the Assets shall not affect the validity of the sale and transfer of the Assets to the Purchaser, unless such authorization is duly stayed pending such

appeal. The Purchaser is a purchaser in good faith of the Assets, and is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

36.     The terms and provisions of the Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, its estate, its creditors, its equity holders, the Purchaser, any committees appointed in this Chapter 11 case and any of such parties' respective affiliates, designees, successors, and assigns, and shall be binding in all respects upon any affected third parties, including, but not limited to, all persons asserting any interests, liens, claims, obligations, and/or Encumbrances in or on the Assets to be sold to the Purchaser pursuant to the Agreement, notwithstanding any subsequent appointment of any trustee(s), examiner(s), or receiver(s) under any Chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee(s), examiner(s), or receiver(s).

37.     The failure specifically to include any particular provision of the Agreement and any document ancillary to the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement and any document ancillary to the Agreement be authorized and approved in their entirety.

38.     The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

39.     Neither the Debtor nor the Purchaser shall be required to pay any commissions to any brokers in connection with the sale of the Assets.

40.     As provided by Bankruptcy Rule 7062, and notwithstanding Bankruptcy Rules 6004(g) and 6006(d), this Order shall not be automatically stayed, but shall be effective and enforceable immediately upon the signing of this Order. Time is of the essence in the occurrence of the Closing and the Debtor and the Purchaser are authorized to close the Sale Transaction and the assumption and assignment of the Assumed Contracts immediately upon the execution of this Order. Any party objecting to this Order thereby must exercise due diligence in filing an appeal and pursuing a stay or risk their appeal being foreclosed as moot.

41.     Any appeal seeking to enjoin or stay consummation of the Sale Transaction and/or the assumption and assignment of the Assumed Contracts shall be subject to the appellant depositing or posting a bond in an amount equal to the then aggregate purchase price, and applicable damages, pending the outcome of any such appeal.

Dated: _____, 2011
        New York, New York


_____
HON.
UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

Amended Asset Purchase Agreement

[To be provided in final form prior to Sale Hearing]

## Exhibit B

Assumed Contracts and Cure Amounts

[To be provided in final form prior to Sale Hearing]

## Exhibit B to Bidding Procedures Order

### Sale Notice

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 11-10543 (SHL) |
| WORD WORLD, LLC, | Chapter 11 |
| Debtor and Debtor-in-Possession. | |

**NOTICE OF INTENDED SALE OF SUBSTANTIALLY ALL ASSETS OF THE
DEBTOR'S ESTATE; DEADLINE FOR SUBMITTING
OBJECTIONS AND HIGHER OFFERS AND HEARING DATE**

To Creditors and Parties in Interest:

Notice is hereby given, pursuant to 11 U.S.C. Section 363 and Fed. R. Banks. P. 2002(a)(2) and 6004, that Word World, LLC (the "Debtor" or the "Seller"), intends to sell substantially all of its assets (the "Assets") free and clear of all liens, claims, interests, obligations, and Encumbrances of any kind or nature whatsoever, save for certain permitted encumbrances and assumed liabilities, all as set forth in an amended asset purchase agreement (the "Agreement") by and between the Debtor and Standard General Fund L.P., a Delaware limited partnership (the "Purchaser").

The proposed purchase price is $1,750,000 in cash, plus the assumption of certain liabilities not to exceed $500,000. In addition, the Purchaser has made a debtor-in-possession loan to the Debtor (the "DIP Loan").

A hearing to approve the sale as it pertains to the Assets to the highest and/or best bidder will be held on April 13, 2011, at ___:00 __.m. (Eastern) which hearing may be continued from time to time without further notice, before the Hon. Sean H. Lane, Judge of the U.S. Bankruptcy Court for the Southern District of New York, 1 Bowling Green, New York, NY 10004. The proposed Purchaser has provided a $50,000 deposit. The terms of the proposed sale are more particularly described in a Motion for Entry of Orders (I) Authorizing and Approving (A) Execution of Asset Purchase Agreement, (B) Bidding Procedures, (C) Form and Manner of Notice, and (4) Break-Up Fee and Other Bid Protections; and (II) Authorizing and Approving (A) Sale of Assets Free and Clear of Liens, Claims and Encumbrances, (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, (C) Consummation of Transactions Related to Sale, and (D) Exemption from Transfer Taxes (the "Motion to Approve Sale") filed with the Court on or about February 14, 2011, and the written Agreement dated as of March 8, 2011.

The Purchased Assets will be sold free and clear of all liens, claims, interests, obligations, and Encumbrances of any kind or nature whatsoever. Any other perfected, enforceable valid liens shall attach to the proceeds of the sale according to priorities established under applicable law.

1

Any objections to the sale and/or higher offers shall be filed in writing, in accordance with the Electronic Filing Rules, with the Clerk, United States Bankruptcy Court for the Southern District of New York, 1 Bowling Green, New York, NY 10004 (the "Court") on or before April 6, 2011, at 4:00 PM (Eastern) (the "Objection Deadline"), and actually received by (i) the Debtors' investment bank, BDO Capital, Attn: Jeffrey R. Manning, 100 Park Avenue, 10th fl, New York, New York 10017, email jrmanning@bdocap.com, (ii) counsel to the Debtor, at Wollmuth Maher & Deutsch LLP, One Gateway Center, 9th Floor, Newark, New Jersey 07102, Attn: James N. Lawlor, Esq., Fax: (973) 733-9292, Email: jlawlor@wmd-law.com, (iii) counsel to the Official Committee of Unsecured Creditors, Klestadt & Winters LLP, Attn: Tracy Klestadt, Esq. and Fred Stevens, Esq., 570 Seventh Avenue, 17th Floor, New York, New York, 10018, Fax: (212) (212) 972-2245, Email: fstevens@klestadt.com, and (iv) counsel to the Purchaser, at Moses & Singer LLP, The Chrysler Building, 405 Lexington Avenue, New York, New York 10174-1299, Attn: James M. Sullivan, Esq.; Fax: (212) 377-6053, Email: jsullivan@mosessinger.com, no later than April 6, 2011, at 4:00 p.m. (Eastern Time).

Any objection to the sale must state with particularity the grounds for the objection and why the intended sale should not be authorized. Any objection to the sale shall be governed by Fed. R. Bankr. P. 9014.

Through this Notice, higher offers for the Assets are hereby solicited. Any higher offer must be accompanied by an offer of a purchase price that is greater than Purchaser's Purchase Price as set forth in the Agreement by an amount not less than $200,000 and provides no less cash consideration than is provided under the Agreement, uses the Agreement as the form of its agreement (subject solely to adjustments relating to the purchase price, identity of the parties, and variations intended to present a higher and better offer than Purchaser's offer), does not include any right to receive a break-up fee or expense reimbursement, and does not contain contingencies for further due diligence, financing or any corporate approval. Pursuant to the bidding procedures approved by the Bankruptcy Court (the "Bidding Procedures"), the Seller will conduct an auction for the Assets (the "Auction") beginning on April 12, 2011, at 10:00 a.m. (Eastern), at Wollmuth Maher & Deutsch LLP, 500 Fifth Avenue, New York, New York.

Participation at the Auction is subject to the Bidding Procedures and the Bidding Procedures Order. The Agreement and the Bidding Procedures Order, which sets forth the Bidding Procedures, are enclosed herein.

A hearing on the Motion to Approve Sale and objections or higher offers is scheduled to take place on April 13, 2011 at _____ AM/PM before the Hon. Sean H. Lane, Judge of the United States Bankruptcy Court for the Southern District of New York, 1 Bowling Green, New York, NY 10004. Any party who has filed an objection or higher offer is expected to be present at the hearing, failing which the objection will be overruled or the higher offer stricken.

At the hearing on the sale the Court may 1) consider any requests to strike a higher offer, 2) determine further terms and conditions of the sale, 3) determine the requirements for further competitive bidding, and 4) require one or more rounds of open bids from the original offeror and any other qualifying offeror. If the sale is not completed by the Purchaser approved by the Court, the Court, without further hearing, may approve the sale of the Assets to the next highest bidder.

Any questions concerning the intended sale should be addressed to the undersigned.

Dated: March __, 2011

By its attorneys,

Respectfully submitted,

/s/ James N. Lawlor
James N. Lawlor
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Email: jlawlor@wmd-law.com

Attorneys for Word World, LLC

## Exhibit C to Bidding Procedures Order

## Cure Notice

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 11-10543 (SHL) |
| WORD WORLD, LLC, | Chapter 11 |
| Debtor and Debtor-in-Possession. | |

## NOTICE OF CURE COSTS FOR ASSUMED CONTRACTS

PLEASE TAKE NOTICE that pursuant to the Order Pursuant to Sections 105, 363, 365, and 1146 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006 (I) Authorizing and Approving (A) Execution of Amended Asset Purchase Agreement with Standard General Fund L.P., for (1) Sale of Substantially All of the Assets of the Debtor, Free and Clear of all Liens, Claims, Encumbrances and Other Interests and (2) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (B) Bidding Procedures (Including a Break-Up Fee and Other Bid Protections), And (C) Form and Manner of Notice, and (II) Scheduling Sale Approval Hearing, dated as of March __, 2011 [Docket No. __] (the "**Bidding Procedures Order**"), the above-captioned debtor and debtor-in-possession (the "**Debtor**") submits this notice and related exhibits (collectively, the "**Notice of Cure Costs**") with respect to the proposed assumption and sale/assignment of certain unexpired leases and executory contracts (collectively, the "**Assumed Contracts**") and procedures for the determination of the proposed costs to cure monetary defaults under such Assumed Contracts.[2] The following exhibits are annexed hereto:

- Exhibit A: A list of all Assumed Contracts, including, for each Assumed Contract (i) the title of the Assumed Contract, (ii) the name of the counterparty to the Assumed Contract, (iii) any applicable cure amounts (the "**Cure Costs**"), (iv) that the Debtor intends to assume and assign the Assumed Contract, (v) if the Assumed Contract is to be assumed and assigned, the identity of the assignee, if known, and (vi) the deadline by which any such Assumed Contract counterparty must object, which is to be the Sale Objection Deadline (as defined below).

PLEASE TAKE FURTHER NOTICE that any response or objection to the assumption and assignment of an Assumed Contract or the Cure Costs related thereto (an "**Objection**") must be in writing, filed with the Clerk of the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton U.S. Custom House, One Bowling Green, New York, NY 10004-1408, and served upon:

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Amended Asset Purchase Agreement, by and between the Debtor and Standard General Fund L.P., attached as Exhibit A to the Bidding Procedures Order.

(a)  Counsel to the Debtor, at Wollmuth Maher & Deutsch LLP, One Gateway Center, 9th Floor, Newark, New Jersey 07102, Attn: James N. Lawlor, Esq., Fax: (973) 733-9292, Email: jlawlor@wmd-law.com,

(b)  Counsel to the Official Committee of Unsecured Creditors, Klestadt & Winters LLP, Attn: Tracy Klestadt, Esq. and Fred Stevens, Esq., 570 Seventh Avenue, 17th Floor, New York, New York, 10018, Fax: (212) 972-2245, Email: fstevens@klestadt.com, And

(c)  Counsel to Standard General Fund L.P. at Moses & Singer LLP, The Chrysler Building, 405 Lexington Avenue, New York, New York 10174-1299, Attn: James M. Sullivan, Esq.; Fax: (212) 377-6053, Email: jsullivan@mosessinger.com (collectively, the "**Objection Notice Parties**").

on or before **April 6, 2011 at 4:00 p.m. (prevailing Eastern time)** (the "**Sales Objection Deadline**").

PLEASE TAKE FURTHER NOTICE THAT IF NO RESPONSE OR OBJECTION IS TIMLEY FILED, SERVED AND RECEIVED IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY APPROVE AND ORDER THE ASSUMPTION AND ASSIGNMENT OF THE AGREEMENT AND FIX THE CURE COSTS AT THE AMOUNT SET FORTH ON EXHIBIT A WITHOUT FURTHER NOTICE OR A HEARING.  IN ADDITION, THE DEBTORS RESERVE THE RIGHT TO PROCEED WITH THE SALE OF THE ASSETS AND THE ASSUMPTION AND ASSIGNMENT OF ALL ASSUMED CONTRACTS AND ADJOURN ANY OBJECTION AS TO CURE COSTS TO A SUBSEQUENT HEARING DATE.

Dated: March __, 2011

/s/ James N. Lawlor
James N. Lawlor
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Email: jlawlor@wmd-law.com

Attorneys for Word World, LLC

## Exhibit D to Bidding Procedures Order

### Notice of Change

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 11-10543 (SHL) |
| WORD WORLD, LLC, | Chapter 11 |
| Debtor and Debtor-in-Possession. | |

## NOTICE OF CHANGE OF ASSUMED CONTRACTS

PLEASE TAKE NOTICE that on March 8, 2011 the Court entered an order (the "Procedures Order") (i) scheduling a hearing to approve an agreement by and between the above captioned debtor ("Debtor") and Standard General Fund L.P., a Delaware limited partnership ("Purchaser") for (a) sale of substantially all assets of the Debtor, free and clear of all liens, claims, encumbrances and other interests and (b) assumption and assignment of certain executory contracts and unexpired leases, subject to higher and better offers, (ii) approving bidding procedures in connection with the submission and acceptance of competing bids (including a break-up fee and expense reimbursement), (iii) approving the form and manner of notice, and (iv) scheduling a sale approval hearing. In doing so, the Court ordered that the Debtors were authorized to assume and assign to Purchaser certain executory contracts and unexpired leases identified in a list filed with the Court on _____ __, 2011 [Re: Docket Entry No. __] (the "Assumed Contracts").

PLEASE TAKE FURTHER NOTICE that, pursuant to the terms of the Procedures Order; the following executory contract(s) and/or unexpired lease(s) [is/are] being [added/removed] from the list of Assumed Contracts.

[Insert Lease/Contract Information]

[Cure Obligation if adding to list]

[PLEASE TAKE FURTHER NOTICE that objections to the assumption and assignment and/or the Cure Obligation stated above must be filed and served so as to be received by the following parties within thirteen (13) days from the date of service of this notice: (i) counsel to the Debtor, at Wollmuth Maher & Deutsch LLP, One Gateway Center, 9th Floor, Newark, New Jersey 07102, Attn: James N. Lawlor, Esq., Fax: (973) 733-9292, Email: jlawlor@wmd-law.com, (ii) counsel to the Official Committee of Unsecured Creditors, Klestadt & Winters LLP, Attn: Tracy Klestadt, Esq. and Fred Stevens, Esq., 570 Seventh Avenue, 17th Floor, New York, New York, 10018, Fax: (212) 972-2245, Email: fstevens@klestadt.com, and (iii) counsel to the Purchaser, at Moses & Singer LLP, The Chrysler Building, 405 Lexington Avenue, New York, New York 10174-1299, Attn: James M. Sullivan, Esq.; Fax: (212) 377-6053, Email:

jsullivan@mosessinger.com.  In the event that no objection to the Cure Obligation is filed and served within such period, the Cure Obligation shall be fixed and the executory contracts or unexpired leases referenced above shall be assumed and assigned to Purchaser and you shall be deemed to have waived your rights to object on account of the same.]

[PLEASE TAKE FURTHER NOTICE, that your executory contract or unexpired lease referenced above has not been assumed by the Debtor nor assigned to Purchaser and your rights under such agreement with respect to the Debtor remains unaltered.]

Dated: March  , 2011

/s/ James N. Lawlor
James N. Lawlor
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Email: jlawlor@wmd-law.com

Attorneys for Word World, LLC