Alan D. Halperin, Esq.
Debra J. Cohen, Esq.
**HALPERIN BATTAGLIA RAICHT, LLP**
555 Madison Avenue, 9th Floor
New York, New York 10022
Phone: (212) 765-9100; Fax: (212) 765-0964
ahalperin@halperinlaw.net
dcohen@halperinlaw.net

*Proposed Counsel to the Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                              Chapter 11

**WORD WORLD, LLC,**                                Case No. 11-10543 (SHL)

                              Debtor.
------------------------------------------------------------x

## THE DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING KEY EMPLOYEE INCENTIVE BONUS PURSUANT TO 11 U.S.C. §§ 105(a), 363(b)(1), 503(b)(1)(A)(i) and 503(c)(3)

Word World, LLC, debtor and debtor-in-possession (the "Debtor"), submits this Motion (this "Motion") for entry of an order substantially in the form attached hereto as Exhibit "A" (the "Proposed Order"), authorizing the Debtor to pay to a key employee of the Debtor an incentive bonus, and in support of this Motion, the Debtor respectfully states as follows:

**Jurisdiction**

1. The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue of this proceeding and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief sought herein are §§ 105(a), 363(b)(1), 503(b)(1)(A)(i) and 503(c)(3) of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

**Background**

3.  On February 10, 2011 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and has continued in the management and operation of its business and property as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

4.  On February 23, 2011, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in this case, which consists of the following three (3) members: (i) PCEP II WW Holdings, Inc., c/o Palisade Capital Management, LLC (ii) Crest Animation Holdings (US), and (iii) Bardel Entertainment, Inc. [Docket #23]. The Committee retained the law firm of Klestadt & Winters, LLP as its counsel, whose retention application is pending before this Court [Docket #73].

5.  The Debtor is a privately held limited liability company headquartered in New York City and is the owner of the WordWorld children's animated television series, as well as all of the intellectual property associated with the WordWorld brand. WordWorld is broadcasted all over the United States and airs globally in approximately 90 countries in ten (10) languages. WordWorld is an innovative, award winning and multiplatform children's entertainment and education property based upon a proprietary concept developed to teach pre-readers between the ages of two and six. Funded in part by a grant by the United States Department of Education, the Debtor produces a global television series, a complementary pre-school interactive website, and related consumer products that target a gap in the literacy marketplace between letter acquisition and advanced reading products. This gap, called "wordbuilding" represents a major milestone in a child's journey to become an early reader.

6.  Prior to the Petition Date, the Debtor struggled to maintain liquidity and serviced unsustainable debt levels in connection with its operations. The Debtor pursued a variety of

restructuring initiatives, including the sale of its business and assets. In connection therewith, the Debtor negotiated a financing package to fund its operations during the administration of a Chapter 11 case as a bridge to a sale and hired financial advisors to work with Debtor's management to intensively market its material assets to maximize value for all of its constituencies, preserve jobs for its employees, and offer its contractual counterparties the best possibility of continued performance under their respective agreements with the Debtor.

7. After the Petition Date, on March 10, 2011, the Court entered an *Order Pursuant to Sections 105, 363, 365, and 1146 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 And 6006 (I) Authorizing and Approving (A) Execution of Amended Asset Purchase Agreement with Standard General Fund L.P. for (1) Sale of Substantially all Assets of the Debtor, Free and Clear of all Liens, Claims, Encumbrances and Other Interests and (2) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (B) Bidding Procedures (Including a Break-Up Fee and Other Bid Protections), and (C) Form and Manner Of Notice, and (Ii) Scheduling Sale Approval Hearing* [Docket No. 72] (the "Bid Procedures Order") pursuant to which, the Debtor will be conducting an auction on April 12, 2011 (the "Auction") for the sale (the "Sale") of substantially all of its assets (the "Assets"), and the Court scheduled a sale hearing for April 13, 2011 (the "Sale Hearing").

**Requested Relief**

8. By this Motion, the Debtor seeks entry of an order, pursuant to §§ 105(a), 363(b)(1), 503(b)(1)(A)(i) and 503(c)(3) of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure, authorizing the Debtor to make an incentive bonus payment (the "Incentive Bonus") to Arielle Basch a/k/a Arielle Hart ("Basch").[1] Basch is the Debtor's Senior Vice President of Global Strategy with 20 years of experience and knowledge in the Debtor's

---
[1] At present, the Debtor does not expect to offer any incentive bonus to any of their other employees.

industry and related areas. She holds a BA from Tufts University in Child Study and Education, an MPH from the Columbia University School of Public Health and an MBA from Columbia University Business School, where she received a full-tuition merit-based Bronfman fellowship. Basch has held a variety of leadership positions in strategic planning, marketing, branding and business development for companies in the retail, consumer products, and media industries.

9. Basch has unique knowledge of the Debtor's business and operations and serves key functions, including marketing/branding, communications, negotiations, business development and oversight of critical licensing partnerships. Basch successfully assisted the Debtor in producing an Emmy Award-winning global television series and related consumer products, securing grant monies from the U.S. Department of Education for such media productions, and procuring broad and valuable business contacts in the industry that have translated into revenue streams with great upside potential.

10. Basch is vital to the Debtor's business operations, the administration of the Debtor's Chapter 11 case and the Sale process. Her responsibilities have metamorphasized well beyond the scope of her original employment that have, and will continue to, place extreme demands on her time. She is currently overseeing the Debtor's day-to-day operations, revenue growth opportunities, and taking a strategic, lead role in the Sale to enable the Debtor to maximize value for all stakeholders. Indeed, Basch was instrumental in identifying key strategic potential buyers for the Assets and articulating to them most clearly the value of the Assets. In addition, Basch is responsible for creating, compiling and disseminating all financials documents, summarizing contracts and making essential management presentations to facilitate the due diligence process in connection with the Sale.

11. Basch also plays a key role in the Debtor's domestic and international business. She is the primary contact for all of the Debtor's global consumer and digital products, home

{00139990.3 / 0835-002}

4

video and broadcast partners, as well as for the present and future English Language Learning ("ELL") licensees in Korea, China, Japan and other Asian countries. In fact, Basch lived and worked in Asia for 6 months in 2009-2010 developing and nurturing the Asian contacts that will represent key drivers of future ELL revenue. She has consistently identified new business opportunities with long-term revenue potential and executed effectively on these initiatives. She has delivered grant revenue both from the private and public sectors that have expanded reach, content and technology capabilities.

12. Basch is the key person responsible for negotiating and managing new, global licenses in consumer products, broadcast, home video and ELL, which will generate revenue that will attract prospective bidders and drive Asset value for the benefit of the Debtor's creditors. Indeed, despite the recent Chapter 11 filing, two key broadcasters are currently negotiating contracts with Basch due to their trusted, longstanding relationship. Furthermore, Basch is the primary contact of France Televisions/FTD, Discovery Kids Latin America, PBS, key broadcasters and licensees across Asia, and digital partners, including Samsung, Netflix, iTunes and Qualcomm among others. Moreover, in the past quarter, despite the rigorous demands from the Sale process and ongoing operational needs of the Debtor, Basch procured new contracts with Russia One, Israel Educational Television, Qualcomm, Netflix, and New Video. She has also taken over management of all licenses, agents and corporate partners, will be spearheading new licenses in the US, Latin America, and Europe as a result of the recent conclusion of an Agency agreement with 4Kids Entertainment and leads all internal and external communications, including quarterly reports, public relations, consumer and trade outreach and social media.

13. It is, therefore, imperative that Basch continue her increased role in strengthening the Debtor's business, vigorously marketing the Assets, soliciting competing bids, assisting bidders with due diligence (including management presentations and answering strategic

questions for bidders) to consummate a Sale that would maximize value for the Debtor, its estate and creditors.

### Proposed Incentive Bonus

14. Basch's compensation per annum is approximately $200,000, which is below market given her seniority, level of experience and industry knowledge. The Debtor seeks to make an Incentive Bonus to Basch equal to the sum of $50,000 plus 3.0% of the gross proceeds from a Sale that exceed the stalking horse bid amount of $1.75 million, provided that the maximum total Incentive Bonus shall not exceed $100,000.[1] The Debtor's Board of Directors approved the terms of the Incentive Bonus in recognition of the Basch's importance to the Debtor, the administration of its bankruptcy case and the Sale process. However, as a condition for the Incentive Bonus, Basch must continue to work in her expanded capacity for the Debtor through the closing of a Sale. In the event Basch's employment is terminated for any reason (either voluntarily or involuntarily with "cause"), or if a Sale is not consummated and the Debtor ceases operations or liquidates, she would forfeit any right to the Incentive Bonus.

### Basis For Relief

15. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). The use, sale or lease of property of the estate, other than in the ordinary course of business, is authorized when a "sound business purpose" justifies such action. Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983); accord In re Chateaugay Corp., 973 F.2d 141, 143 (2d Cir. 1992); In re Martin,

---

[1] Basch held an aggregate claim of $43,718 against the Debtor for prepetition wages, salaries and other compensation, of which $11,470 was paid by the Debtor under this Court's *Interim Order Authorizing Payment of Prepetition Wages, Salaries, and Employee Benefits and Reimbursable Employee Expenses* dated February 18, 2011 [Docket #27]. The remaining $32,248 is a general unsecured claim that, to the extent valid,will be paid *pari passu* with other general unsecured claims under a plan confirmed in this case.

91 F.3d 389, 395 (3d Cir. 1996) (citing Fulton State Bank v. Schipper (In Re Schipper), 933 F.2d 513, 515 (7th Cir. 1991)); Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.), 780 F.2d 1223, 1226 (5th Cir. 1986).

16.     It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." In re Johns-Manville Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). If a valid business justification exists, there is a strong presumption that "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)), appeal dismissed, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. Id. (citing Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984)).

17.     Courts have approved employee compensation programs outside the ordinary course of business under the "sound business purpose" standard of § 363(b) of the Bankruptcy Code. See e.g., In re Mesa Air Group, Inc., 2010 WL 3810899, *2 (Bankr.S.D.N.Y. 2010) (authorizing an incentive program intended to motivate the employees to achieve performance goals); In re Global Home Products, LLC, 369 B.R. 778 (Bankr.D.Del. 2007) (authorizing an incentive program pursuant to § 363 of the Bankruptcy Code and finding that the "reasonable use of incentives and performance bonuses are considered the proper exercise of a debtor's business judgment."); In re Dana Corporation, 358 B.R. 567 (Bankr.S.D.N.Y. 2006) (authorizing an incentive program pursuant to § 363 of the Bankruptcy Code that paid employees if the business achieved certain benchmarks); In re America West Airlines, Inc., 171 B.R. 674 (Bankr.D.Ariz.

1994) (holding that it was proper use of debtors' business judgment to propose bonuses for employees who helped propel the debtor successfully through the bankruptcy process).

18. In this case, approval of the Incentive Bonus is a proper exercise of the Debtor's business judgment under § 363(b)(1) of the Bankruptcy Code. The Incentive Bonus is intended to incentivize Basch to produce and increase the value of Debtor's estate. As described above, Basch has played and will continue to play a critical role in the operation of the Debtor's business, the administration of this case and the Sale process and her unique skills, knowledge, and experience regarding the Debtor's business and operations will propel the Debtor towards a successful Auction and Sale.

19. The amount of the Incentive Bonus is justified in this case. Basch has been working literally seven days a week, overtime and is on call at all times over the past several months and, as described in detail above, has undertaken substantial responsibility well above and beyond what she had contracted for even though she received no additional compensation for such additional work. Therefore, the Debtor respectfully submits that the proposed Incentive Bonus is a proper exercise of the Debtor's business judgment because it will appropriately compensate and reward Basch for her extraordinary efforts on behalf of the Debtor's estate.

**The Incentive Bonus is Not Prohibited by § 503(c) of the Bankruptcy Code**

20. The Incentive Bonus does not conflict with § 503(c) of the Bankruptcy Code, which restricts administration payments to insiders. Section 503(c)(1) only applies to payments that are meant to induce insiders to "remain with the [debtors'] business" by requiring, among other things, that a debtor demonstrates that the insider (a) has a bona fide job offer from another business and (b) is "essential to the survival of the business." 11 U.S.C. §503(c)(1)(A) and (B). Here, the Incentive Bonus is not intended to "induce" Basch to remain with the Debtor but to

motivate her to maximize the value of the Assets and facilitate the Sale process and compensate her for extraordinary additional work for the Debtor and its estate.

21. Section 503(c)(2) only applies to severance payments to an insider. 11 U.S.C. §503(c)(2). The Incentive Bonus is not a severance payment given that it is not triggered by her termination. Indeed, Basch is explicitly precluded from receiving the Incentive Bonus in the event her employment with the Debtor is terminated for any reason.

22. Section 503(c)(3) of the Bankruptcy Code applies where the proposed incentive plan is not primarily motivated by retention or in the nature of severance but also not justified by the facts and circumstances of the case.[1] In re Dana Corp., 358 B.R. at 576 (holding that "section 503(c)(3) gives the court discretion as to bonus and incentive plans, which are not primarily motivated by retention or in the nature of severance"). In determining whether proposed payments are "justified by the facts and circumstances of the case" under § 503(c)(3), courts have identified the "sound business judgment" test as the proper standard. In re Dana Corp., 358 B.R. at 576, citing In re Nobex Corp., 2006 WL 4063024 (noting that the standard under §503(c)(3) is no more stringent than the one applied in approving any administrative expense under § 503(b)(1)(A) and is substantially similar to the "sound business justification" standard under § 363; see also In re Viking Offshore (USA), Inc., 2008 WL 1930056, *2, n1 (Bankr.S.D.Tex.). Courts generally take a "holistic" approach in analyzing employee payment plans under the "sound business judgment" test. In re Dana Corp., 358 B.R. at 571.

---

[1] Section 503(c)(3) of the Bankruptcy Code provides that

> Notwithstanding subsection (b), there shall neither be allowed, nor paid –
>
> (3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

11 U.S.C. § 503(c)(3).

23. Again, in this case, the Debtor has demonstrated a sound business purpose for establishing the Incentive Bonus. As set forth above, it is designed to reward Basch for her extraordinary work on behalf of the Debtor and its estate and motivate her to propel the Debtor toward a successful Sale. The amount of the proposed Incentive Bonus is reasonable in light of the countless hours sacrificed and the extraordinary efforts put forth by the Basch on behalf of the Debtor's estate. And the fact that Basch will not receive the Incentive Bonus if her employment is terminated for any reason or if a Sale is not consummated and the Debtor ceases operations or liquidates, reflects that the Incentive Bonus is directly tied to achieving a successful outcome in this case. Consequently, management believes that Basch will be properly incentivized to perform her job to the best of her abilities with the goal of consummating a Sale for the benefit of the estate and creditors. Moreover, the Incentive Bonus is limited to Basch, who the Debtor determined has played an integral role in the operation of its business during this chapter 11 case and who will continue to be instrumental in the successful sale of the business.

24. Based on the foregoing, the Debtor submits that the Incentive Bonus is a proper exercise of the Debtor's business judgment, is justified by the facts and circumstances of the chapter 11 case and, therefore, is not prohibited by § 503(c)(3) of the Bankruptcy Code.

### Notice

25. Notice of this Motion has been given to (i) the United States Trustee, (ii) counsel for the Committee, (iii) all secured creditors known to the Debtor, and (iv) all other parties who have timely filed requests for notice under Rule 2002. The Debtor submits that, under the circumstances, due and sufficient notice of this Motion has been provided and that no other or further notice need be given. Moreover, the Debtor has discussed the Motion with the Committee, which consents to the relief requested.

### Waiver of Memorandum of Law

26. The Debtor submits that this Motion does not present novel issues of law requiring the citation to any authority other than the authority cited herein and, accordingly, no brief is necessary.

### No Prior Request

27. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that this Court enter the Proposed Order granting the relief requested herein and grant to the Debtor such other further relief as it deems just and proper.

Dated: New York, New York
      March 18, 2011

    WORD WORLD, LLC
    By its Proposed Counsel,
    HALPERIN BATTAGLIA RAICHT, LLP

By:   */s/ Alan D. Halperin*
     Alan D. Halperin
     Debra J. Cohen
     555 Madison Avenue-9th Floor
     New York, NY 10022-3301
     Telephone (212) 765-9100
     Facsimile (212) 765-0964
     ahalperin@halperinlaw.net
     dcohen@halperinlaw.net